**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SHAWN COREY CARTER, | |
| *Plaintiff*, | Case No. 1:26-cv-02775-DEH |
| v. | |
| ANTHONY BUZBEE, DAVID FORTNEY, ANTHONY G. BUZBEE LP (d/b/a THE BUZBEE LAW FIRM), ANTIGONE CURIS, CURIS LAW, PLLC and JANE DOE, | |
| *Defendants*. | |

**PLAINTIFF SHAWN COREY CARTER'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT**

Jordan W. Siev
Casey D. Laffey
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
jsiev@reedsmith.com
claffey@reedsmith.com
212-205-6085

Roberta A. Kaplan
Ellen V. Holloman
Christopher R. Le Coney
KAPLAN MARTIN LLP
1133 Avenue of the Americas
New York, New York 10036
rkaplan@kaplanmartin.com
eholloman@kaplanmartin.com
cleconey@kaplanmartin.com
212-316-9500

Alejandro Brito
*(Admitted PHV)*
BRITO PLLC
2121 Ponce de Leon Blvd.
Coral Gables, Florida 33134
abrito@britopllc.com
305-614-4071

**TABLE OF CONTENTS**

**Page**

Preliminary Statement.................................................................................................... 1

Factual & Procedural Background.................................................................................. 4

Applicable Standard........................................................................................................ 8

Argument ........................................................................................................................ 9

    I.      This Motion is Timely and Made in Good Faith ........................................9

    II.    Defendants Will Not Be Prejudiced by the TAC....................................11

          1.     The TAC Does Not Meaningfully Expand the Scope of Discovery......... 12

          2.     Re-Briefing Does Not Constitute Prejudice............................................. 13

    III.   The Proposed Amendments Are Not Futile...........................................16

Conclusion ................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Baton Corp. Ltd.*,
No. 25 Civ. 00880, 2025 WL 3523133 (S.D.N.Y. Dec. 9, 2025)............................................11

*Amalfitano v. Rosenberg*, 428 F. Supp. 2d 196
*aff'd*, 572 F.3d 91 (2d Cir. 2009) ........................................................................................16

*Amalfitano v. Rosenberg*,
12 N.Y.3d 8 (N.Y. 2009) .........................................................................................................4

*Aquino by Convergent Distributors of Tex., LLC v. Alexander Cap., LP*,
632 B.R. 7 (S.D.N.Y. 2021)....................................................................................................15

*Betz v. Blatt*,
160 A.D.3d 696 (2d Dep't 2018) ............................................................................................12

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993)..............................................................................................9, 11

*Carroll v. Trump*,
590 F. Supp. 3d 575 (S.D.N.Y. 2022) (Kaplan, J.)................................................................13

*Carroll v. Trump*,
88 F.4th 418 (2d Cir. 2023) .....................................................................................................3

*Condit v. Dunne*,
317 F. Supp. 2d 344 (S.D.N.Y. 2004).....................................................................................15

*Dominguez v. Walsh*,
No. 22 Civ. 6443, 2023 WL 6199861 (S.D.N.Y. Sept. 22, 2023) .............................................9

*Drivetrain, LLC v. EverStream Solar Infrastructure Fund I LP (In re SunEdison, Inc.)*,
No. 16-10992, 2021 WL 3176070 (Bankr. S.D.N.Y. July 27, 2021) .......................................15

*Duling v. Gristede's Operating Corp.*,
265 F.R.D. 91 (S.D.N.Y. 2010) ..............................................................................................10

*Efam Enters., LLC v. Travelers Indem. Co. of Am.*,
No. 02 Civ. 5360, 2003 WL 1960585 (S.D.N.Y. Apr. 25, 2003) (Kaplan, J.) .........................8

*Elle Lalli v. Warner Bros. Discovery, Inc.*,
No. 24 Civ. 3178, 2024 U.S. Dist. LEXIS 189748 (S.D.N.Y. Oct. 18, 2024) ........................15

*Foman v. Davis*,
   371 U.S. 178 (1962)...................................................................................................9

*Gerena v. Korb*,
   617 F.3d 197 (2d Cir. 2010).....................................................................................14

*Giuffre v. Dershowitz*,
   No. 19 Civ. 3377, 2021 WL 5233551 (S.D.N.Y. Nov. 10, 2021) ..............................2

*Goureau v. Goureau*,
   No. 12 Civ. 6443, 2013 WL 1499404 (S.D.N.Y. Apr. 10, 2013)..............................13

*Hansen v. Miller*,
   52 F.4th 96 (2d Cir. 2022) .......................................................................................17

*In re Invs. Funding Corp. of New York Sec. Litig.*,
   100 F.R.D. 64 (S.D.N.Y. 1983) .................................................................................9

*Kinsey v. N.Y. Times Co.*,
   991 F.3d 171 (2d Cir. 2021)......................................................................................15

*Leo v. Siemens Med. Sols. USA, Inc.*,
   No. 25 Civ. 415, 2025 WL 1591891 (S.D.N.Y. June 5, 2025)............................2, 10

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*,
   LLC, 797 F.3d 160 (2d Cir. 2015) ..............................................................................8

*Michelo v. Nat'l Collegiate Student Loan Tr.*
   *2007-2*, 419 F. Supp. 3d 668 (S.D.N.Y. 2019) .......................................................16

*Middle Atlantic Utils. Co. v. S.M.W. Dev. Corp.*,
   392 F.2d 380 (2d Cir. 1968)......................................................................................11

*Molo Design, Ltd. v. Chanel, Inc.*,
   21 Civ. 1578, 2024 WL 2982924 (S.D.N.Y. June 12, 2024).......................................9

*Multi Access Ltd. v. Guangzhou Baiyunshan Pharm. Holdings Co.*,
   20 Civ. 7397, 2021 WL 5647790 (S.D.N.Y. Nov. 30, 2021) ...............................9, 14

*Parker v. Columbia Pictures Indus.*,
   204 F.3d 326 (2d Cir. 2000).......................................................................................9

*Pasternack v. Shrader*,
   863 F.3d 162 (2d Cir. 2017).................................................................................13, 14

*Pettaway v. Nat'l Recovery Sols., LLC*,
   955 F.3d 299 (2d Cir. 2020).......................................................................................15

*Pineda v. Does 1-2,*
    No. 25 Civ. 4552, 2025 WL 3172416 (S.D.N.Y. Nov. 13, 2025) ............................................3

*Renergy, Inc. v. Mt. Hawley Ins. Co.,*
    No. 25 Civ. 5073, 2026 WL 1192415 (S.D.N.Y. May 1, 2026)...............................................16

*Sacerdote v. N.Y. Univ.,*
    9 F.4th 95 (2d Cir. 2021) ........................................................................................................8

*Schaeffer v. Vill. of Ossining,*
    58 F.3d 48 (2d Cir. 1995)........................................................................................................14

*Scott v. E. Hope Greenberg,*
    No. 15 Civ. 05527, 2017 WL 1214441 (E.D.N.Y. Mar. 31, 2017) .........................................16

*Sealed Plaintiff v. Sealed Defendant,*
    537 F.3d 185 (2d Cir. 2008).....................................................................................................14

*Skarzynski v. ABM Mgmt. Corp.,*
    217 A.D.3d 983 (2d Dep't 2023) .............................................................................................12

*Stewart v. Fein, Such & Crain, LLP,*
    236 A.D.3d 959 (2d Dep't 2025).............................................................................................12

*Sykes v. Mel Harris & Assocs., LLC,*
    757 F. Supp. 2d 413 (S.D.N.Y. 2010).......................................................................................16

*Thompson v. City of N.Y.,*
    No. 1:21-cv-8202 (MKV), 2022 WL 562358 (S.D.N.Y. Feb. 24, 2022) .................................14

*Vinci Brands LLC v. Coach Servs., Inc.,*
    No. 23 Civ. 5138, 2024 WL 4370841 (S.D.N.Y. Oct. 2, 2024) ................................................9

*Waite v. UMG Recordings, Inc.,*
    477 F. Supp. 3d 265 (S.D.N.Y. 2020).........................................................................................2

*Wilson v. Selip & Stylianou, LLP,*
    24 Civ. 4108, 2026 WL 851338 (S.D.N.Y. Mar. 27, 2026) ....................................................16

**Rules**

Fed. R. Civ. P. 15(a)(2)...................................................................................................................1, 8, 9

N.Y. Jud. L. § 487...............................................................................................................................16

S.D.N.Y. Judge Ho Individual Civ. Prac. R. 2.a..................................................................................1

S.D.N.Y. Local Civ. R. 15.1 .................................................................................................................1

Plaintiff Shawn Corey Carter p/k/a JAŸ-Z ("Plaintiff" or "Carter") moves for leave to file a Third Amended Complaint ("TAC"), attached as Exhibit 1 to the Declaration of Jordan Siev, dated May 22, 2026 (the "Siev Decl."), pursuant to Fed. R. Civ. P. 15(a)(2), Local Civ. R. 15.1, and Rule 2.a of this Court's Individual Rules of Practice. A comparison of the TAC to Carter's Second Amended Complaint ("SAC"), dated May 7, 2025, is attached to the Siev Declaration as Exhibit 2.

### Preliminary Statement

Defendants manufactured and spread false allegations of child sexual assault against one of the most recognizable public figures in the world, the recording artist and businessman Shawn "JAŸ-Z" Carter, in a failed attempt to extort him. They weaponized those malicious lies by naming Carter as one of the "Doe" defendants in a high-profile federal lawsuit filed before Judge Torres in this Court, *Doe v. Combs, et al.*, No. 24 Civ. 7975, ECF No. 1 (the "Underlying Action"), and then demanded that Carter pay them to make it go away. When Carter refused, they detonated those lies by naming Carter publicly in the Underlying Action and by making false and malicious allegations of even more egregious conduct in a televised NBC News interview. Later, Doe (a woman with a criminal record and pronounced history of mental illness) admitted—on tape—that none of her allegations against Carter were true and that her lawyer—Defendant Anthony Buzbee—had manipulated her into accusing Carter.

Unable to survive the scrutiny of discovery and Carter's powerful defenses, and having filed the case in violation of basic rules regarding admission to the SDNY, Defendants soon folded, voluntarily dismissing with prejudice the Underlying Action against Carter. But in the "instant news," high-tech world in which we all now live, that dismissal was both too little and too late. Defendants' conduct had already inflicted many millions of dollars in damage to Carter, as well as damage to his reputation, his businesses, and his family. These damages continue to this day.

Carter originally filed this lawsuit in the Southern District of Alabama, where Doe resides and where Defendants Anthony Buzbee, David Fortney, and Anthony G. Buzbee LP (collectively, "Buzbee Defendants") solicited Doe and began their scheme, along with their New York co-counsel, Antigone Curis and Curis Law, PLLC (collectively, "Curis Defendants"). Carter asserted claims for malicious prosecution, abuse of process, and conspiracy against all defendants, and defamation against Doe. The Alabama court held that it had personal jurisdiction over Doe and the Buzbee Defendants, but transferred the case here as the preferred venue, because this Court is where Defendants had filed the Underlying Action.

Carter now seeks leave to file the TAC, which will streamline the case by withdrawing two claims (abuse of process and civil conspiracy) against all defendants, while adding one claim under New York Judiciary Law § 487 ("Section 487") against the defendants who are attorneys.

Leave to amend should be granted for the following reasons:

*First*, this motion is both timely and made in good faith. After this case was transferred to the Southern District of New York from the Southern District of Alabama, Carter promptly made clear his intention to amend. And his proposed amendment will serve to focus the case by removing two causes of action, while adding one cause of action against the same Defendants arising from the same facts and circumstances. As discussed below, courts in this District routinely grant leave to amend in analogous situations. *See, e.g.*, *Giuffre v. Dershowitz*, No. 19 Civ. 3377, 2021 WL 5233551, at *2 (S.D.N.Y. Nov. 10, 2021) (Preska, J.); *Leo v. Siemens Med. Sols. USA, Inc.*, No. 25 Civ. 415, 2025 WL 1591891, at *4 (S.D.N.Y. June 5, 2025); *Waite v. UMG Recordings, Inc.*, 477 F. Supp. 3d 265, 270 (S.D.N.Y. 2020) (Kaplan, J.).

*Second*, permitting the amendment will not prejudice Defendants since (unfortunately) this case remains in its earliest stages. Discovery has not yet commenced, and no trial date has been

set. In fact, Carter's withdrawal of two claims will narrow the scope of this litigation. Likewise, because the new Section 487 claim against the defendants who are attorneys arises from the same facts as the malicious prosecution claim, it will require no additional discovery. There is no undue prejudice to Defendants because the TAC will not "require [them] to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Pineda v. Does 1-2*, No. 25 Civ. 4552, 2025 WL 3172416, at *2 (S.D.N.Y. Nov. 13, 2025) (quoting *Carroll v. Trump*, 88 F.4th 418, 431 (2d Cir. 2023)).

Defendants' arguments about having to re-brief their motions to dismiss don't work either since briefing costs do not constitute prejudice in this Circuit, and the transfer to New York requires the parties to re-brief their motions to dismiss (at least with respect to the defamation claim) anyway. More specifically, Doe's current motion relies on Alabama choice of law rules to argue that California law governs the defamation claim. But this Court must now apply New York choice of law rules, which use a "most significant interest" test rather than Alabama's *lex loci delicti* framework. Re-briefing is therefore required regardless of whether Carter files the TAC or not. Presumably for this reason, Defendants themselves have acknowledged the utility of re-briefing, stating that they will do so "to the extent the Court believes additional briefing would be helpful." *Carter v. Buzbee, et al.* No. 26 Civ. 2775 (S.D.N.Y.), ECF No. 105 at 5.

*Third*, adding the Section 487 claim is hardly an exercise in futility. The TAC plausibly alleges that the defendants who are attorneys engaged in multiple acts of deceit, including filing pleadings containing knowingly false allegations in the Underlying Action, fabricating statements to Doe in connection with the Underlying Action, and, as to Buzbee, practicing here in SDNY using the Curis Defendants' credentials without being authorized to do so. *See* Order, *Doe v. Combs, et al.*, No. 24 Civ. 7973 (S.D.N.Y.), ECF No. 57 at 1. Indeed, Defendant Fortney falsely

(and outrageously) even told Doe that Carter had threatened to kill her in order to convince her to dismiss the Underlying Action, so that he and Buzbee could avoid sanctions for their unauthorized practice of law. All of this is exactly the type of conduct that the Judiciary Law was designed to prevent, a principle that has been part of New York law since 1787. *See Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 14 (N.Y. 2009) (explaining that Section 487 serves to enforce attorneys' "special obligation to protect the integrity of the courts and foster their truth-seeking function").

## Factual & Procedural Background

*The Defendants' Scheme:* In the fall of 2024, the federal criminal indictment of Sean "Diddy" Combs for racketeering, sex trafficking, and transportation to engage in prostitution predictably led to a huge media spectacle. *United States v. Combs*, No. 24 Cr. 542 (S.D.N.Y. Sept. 12, 2024), ECF No. 1. In order to take maximum advantage of this development, Buzbee and his law firm, partnering with AVA Law Group and a legal marketing firm, launched an aggressive nationwide campaign looking for "clients" who were victims of Combs or any other famous figure who attended the same event as him. This campaign included press conferences, national media appearances, Instagram ads, Facebook ads, and even a 1-800 hotline.

In October 2024, the defendants who are attorneys found a willing accomplice for their scheme. Doe at the time was desperate: she had recently been in jail, had lost custody of her children, and her parents—on whom she relied financially—had just filed for bankruptcy. Defendants exploited her unfortunate circumstances to convince Doe to manufacture a claim against Carter with the goal of seeking much-needed funds for Doe and a windfall for themselves.

Public records that were available to or could have easily been obtained by the Defendants at the time clearly showed that Doe was hardly a reliable witness or plaintiff. Her psychiatrist had testified in a prior criminal proceeding that Doe suffers from several mental health disorders, takes multiple prescription medications, and has a documented history of hallucinations. Just months

before connecting with the other Defendants, Doe was charged with assault in the second degree. Even more concerning, on at least three prior occasions, Doe had made unrelated false allegations of sexual assault against others, each of which was either dropped by her or dismissed by the courts. In other words, anyone running a simple Google search of Doe's real name would have quickly uncovered these facts. These circumstances called for careful, independent corroboration of Doe's allegations before any attorney could responsibly rely on her in accusing Carter of one of the most serious crimes imaginable. But the Defendants nevertheless proceeded to file the Underlying Action against Combs, his business entities, and "Does 1-10," with "Celebrity A" (later revealed to be Carter) sticking out like a sore thumb as a provocative, as-yet unnamed defendant on October 20, 2024.[1]

Once the Underlying Action had been filed, but with Carter still unnamed, Defendants zeroed in on Carter as their target. On November 5, 2024, Doe's attorneys sent Carter's counsel an extortionate demand letter falsely accusing Carter of criminal sexual conduct with respect to Doe and threatening to name him publicly unless he agreed to pay a substantial settlement. The demand itself was brazen: agree to a "confidential mediation" within two weeks, or face the destruction of everything Carter had spent his whole life building—his company, his family, and his reputation. Buzbee knew or should have known that the allegations against Carter were false *before* the demand letter went out, but he simply didn't care. Instead, he "pushed [Doe] to go[] forward" with the false story in order "to make the case better" and "get [the lawyers and Doe] more money." In other words, as Doe explained, "Buzbee brought Jay-Z into it."

---

[1] As Defendants' subsequent conduct made clear, preserving Carter's anonymity at the outset allowed Defendants to retain the threat of publicly identifying him later if he refused to resolve the matter by submitting to their demands privately.

Carter, however, refused to pay a penny to make these egregious allegations against him go away. As a result, on December 8, 2024, Defendants amended the complaint to publicly name Carter, accusing him and Combs of sexually assaulting Doe, then a thirteen-year-old girl, at an afterparty following the MTV Video Music Awards in 2000. These allegations were monstrous, demonstrable lies.

While Defendants' conduct up to that point was shocking, Defendants were just getting started. In mid-December 2024, the Buzbee Defendants paid for Doe to travel from Alabama to Houston for a televised interview with NBC News designed to pressure Carter to capitulate. During that interview, Doe made new accusations that she had been "trying to get away" from Carter, but that "he put his hand over my mouth." She also manufactured a corroborating witness, claiming she spoke to the musician Benji Madden of the band Good Charlotte at the VMAs afterparty.

Basic journalism and common sense, however, demolished Doe's narrative. Doe, for example, claimed that the assault occurred at "a large white residence with a gated U-shaped driveway," but contemporaneous photographs showed that Carter had spent the evening after the VMAs at Lotus, a nightclub in lower Manhattan. Although Doe claimed she spoke to musician Benji Madden at the afterparty, his representative confirmed to NBC News that he and his brother were on tour in Chicago that night. Despite claiming her father picked her up from a gas station after the assault (a drive of more than five and a half hours each way), her father told NBC News he had no recollection of any such trip, calling it "something that would definitely stick in my mind." And despite claiming she watched the VMAs on a jumbotron outside Radio City Music Hall that night and "approached limousine drivers" while outside, no jumbotron existed that night because New York City had denied the permit for one, and publicly available video shows that the limousine area was cordoned off by police barricades making it wholly inaccessible to fans. In

- 6 -

other words, nothing about Doe's story made sense, added up, or was corroborated by a shred of evidence. It was all a complete fabrication.

*Defendants' Retreat*: On January 28, 2025, Judge Analisa Torres, who presided over the Underlying Action, ordered Buzbee to file proof of his admission to SDNY by February 14, 2025. *Doe v. Combs*, *et al.*, No. 24 Civ. 7975 (S.D.N.Y.), ECF No. 80. Buzbee scrambled to apply for such admission the very next day, but it was too late. On February 13, 2025, one day before Judge Torres's deadline, Buzbee received word that the Committee on Grievances had denied his application because he had already appeared in other SDNY cases involving Combs without seeking admission and had filed pleadings in more than twenty cases using the ECF credentials of Defendant Curis. *See McCrary v. Combs et al.*, No. 24 Civ. 8054 (S.D.N.Y.), ECF No. 49-6.

On February 14, 2025—the same day Judge Torres ordered Buzbee to file proof of his admission to SDNY, which he could not do—Doe filed a voluntary dismissal with prejudice of her claims against Carter. *Doe v. Combs, et al.*, No. 24 Civ. 7975 (S.D.N.Y.), ECF No. 91. The Underlying Action ended not because the parties reached any "settlement," but because Defendants' conspiracy to extort and defame Carter collapsed under the weight of its own lies. A week later, on February 21, 2025, during an interview with investigators, Doe admitted that none of her allegations against Carter were true and that Buzbee had pushed her into accusing Carter of sexually assaulting her. *Id.* at ECF Nos. 34-3, 34-4.

*This Case*: On March 3, 2025, Carter filed his original Complaint in this case against the Buzbee Defendants and Doe in the Southern District of Alabama, asserting claims for malicious prosecution, abuse of process, and civil conspiracy against the defendants who are attorneys, and a defamation claim against Doe. Complaint, *Carter v. Buzbee*, No. 1:25-cv-00086-TFM-MU (S.D. Ala. Mar. 3, 2025), ECF No. 1.

On April 25, 2025, Buzbee and Doe consented to Carter amending his complaint in Alabama. *Id.* at ECF No. 28. On May 5, 2025, Carter filed his first amended complaint, adding Antigone Curis and Curis Law, PLLC as defendants, and updating the allegations with new facts. *Id.* at ECF No. 29. On May 6, 2025, Alabama district court judge Terry F. Moorer *sua sponte* ordered Carter to file a second amended complaint limited to clarifying the allegations regarding the Defendants' citizenship for purposes of establishing diversity jurisdiction. *Id.* at ECF No. 31. One day later, Carter filed his SAC, the currently operative pleading, amending only the jurisdictional allegations, as directed by the Alabama court. *Id.* at ECF No. 32.

Defendants then moved to dismiss the SAC for lack of personal jurisdiction and improper venue, and for failure to state a claim. *Id.* at ECF No. 43-44, 56. With respect to those motions, Judge Moorer issued an Order on March 31, 2026 holding that while the Alabama federal court had personal jurisdiction over Doe and Buzbee, he was deciding to transfer the case to the Southern District of New York as the more appropriate venue. *Id.* at ECF No. 91. Defendants' Rule 12(b)(6) motions, and procedural motion regarding pseudonymity, were transferred to and remain pending before this Court. Defendants have acknowledged that, because of the transfer, renewed briefing may now be appropriate. *Carter v. Buzbee, et al.*, No. 26 Civ. 2775 (S.D.N.Y.), ECF No. 105 at 5.

**Applicable Standard**

Leave to amend a complaint should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This is a 'liberal' and 'permissive' standard, and the only 'grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'" *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)). In this District, leave to amend is routinely granted. *Efam Enters., LLC v. Travelers Indem. Co. of Am.*, No. 02 Civ. 5360, 2003 WL 1960585, at *2 (S.D.N.Y. Apr. 25, 2003) (Kaplan, J.)

(even though plaintiff seeking leave to amend to make an untimely jury demand and add a party which destroyed diversity, court still exercised its discretion to allow amendment); *In re Invs. Funding Corp. of New York Sec. Litig.*, 100 F.R.D. 64, 65 (S.D.N.Y. 1983).

As the Second Circuit has held, however, "[m]ere delay … absent a showing of bad faith or undue prejudice[] does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *see also Vinci Brands LLC v. Coach Servs., Inc.*, No. 23 Civ. 5138, 2024 WL 4370841, at *1 (S.D.N.Y. Oct. 2, 2024) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000)).

In this case, discovery has not begun, the case has just been transferred to this District, and Defendants acknowledge that renewed motion-to-dismiss briefing is appropriate. *See Multi Access Ltd. v. Guangzhou Baiyunshan Pharm. Holdings Co.*, 20 Civ. 7397, 2021 WL 5647790, at *1 (S.D.N.Y. Nov. 30, 2021); *Dominguez v. Walsh*, No. 22 Civ. 6443, 2023 WL 6199861, at *2 (S.D.N.Y. Sept. 22, 2023) (finding amendment would not cause undue prejudice where, although the plaintiff sought to add new factual allegations, no discovery had been conducted and the defendants' motion to dismiss "represents the entirety of the motion practice in this Action thus far"); *Molo Design, Ltd. v. Chanel, Inc.*, 21 Civ. 1578, 2024 WL 2982924, at *5 (S.D.N.Y. June 12, 2024) (Ho, J.) (finding no prejudice where "[p]laintiff seeks amendment before discovery has been completed.").

Leave to amend should therefore be granted here because the TAC easily satisfies the Rule 15 standard.

## Argument

### I.    This Motion is Timely and Made in Good Faith

As noted above, under Fed. R. Civ. P. 15(a)(2), courts should generally grant leave to amend in the absence of "bad faith or dilatory motive on the part of the movant." *Foman v. Davis*,

371 U.S. 178, 182 (1962). Here, there is no basis for Defendants to argue bad faith or dilatory conduct on Carter's part.

Given the recent transfer of this case from federal district court in Alabama to this Court in New York, Carter seeks leave to file the TAC to reflect the new procedural posture and to avail himself of a new claim available under New York law. The TAC streamlines the claims by removing the abuse of process and civil conspiracy claims, while adding a single Section 487 claim against the defendants who are attorneys. This claim arises from the same facts and circumstances as the malicious prosecution claim and would not expand discovery—which has not yet even taken place—or the factual issues to be tried before a jury. Far from acting in bad faith, the point of the TAC is to make discovery and the prosecution of this case more efficient. In other words, this is precisely the type of amendment that Rule 15 was designed to permit. *See Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97 (S.D.N.Y. 2010) ("A change in litigation strategy is a legitimate reason for seeking to amend a pleading under the liberal standard of Rule 15(a)."); *Leo*, 2025 WL 1591891, at *4 ("The Court finds no bad faith, undue delay or undue prejudice. To the contrary, Plaintiff's new counsel acted promptly in filing the motion for leave to amend once he made an appearance, and the [amended complaint] simplifies the lawsuit with a single claim against an already-named Defendant who had notice of [the claim] through the original complaint.").

The timing of this motion further underscores Carter's good faith and diligence. On April 14, 2026, following the transfer, the Court ordered the parties to provide a status update. *Carter v. Buzbee, et al.*, No. 26 Civ. 2775 (S.D.N.Y.), ECF No. 95. In his response dated April 28, 2026, Carter signaled his intention to amend, explaining that amendment was warranted "given the change in jurisdiction, lack of any prejudice, and principle that leave to amend should be freely

- 10 -

granted." *Id.* at ECF No. 105 at 5. Then, on May 13, 2026, Carter confirmed he would seek leave to amend and outlined his contemplated amendments. *Id.* at ECF No. 117. Accordingly, in the Case Management and Scheduling Order, adopted on May 18, 2026, this Court permitted Carter to seek leave to further amend by May 22, 2026—the date of this filing. *Id.* at ECF No. 119.

Because this case was just transferred and Carter moved to amend promptly, leave to amend is appropriate. *See, e.g., Block*, 988 F.2d at 350-51 (holding that leave to amend was proper even with a four-year delay where the non-movant could not show prejudice); *Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 384-86 (2d Cir. 1968) (holding that a three-year delay was insufficient to deny amendment where the motion was made prior to trial, even if amendment would necessitate further discovery).

## II.    Defendants Will Not Be Prejudiced by the TAC

Leave to amend may be denied only where amendment would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." *Block*, 988 F.2d at 350 (cleaned up). Defendants cannot meet that standard here.

Despite its commencement a year ago, this case remains at the very beginning due to prolonged briefing periods on Defendants' motions to dismiss in the Southern District of Alabama. The parties have not yet begun discovery, no document requests have been served, and no depositions have been taken. Defendants cannot credibly claim prejudice, where, as here, discovery has not even begun. *See Aguilar v. Baton Corp. Ltd.*, No. 25 Civ. 00880, 2025 WL 3523133, at *5 (S.D.N.Y. Dec. 9, 2025) (McMahon, J.) (granting leave to amend a complaint where the case "remains at an early stage" and "[d]iscovery ha[d] not commenced.").

Nor will the TAC delay resolution of this case. Under the current Scheduling Order, discovery will proceed in parallel with motions to dismiss briefing. *Carter v. Buzbee, et al.*, 26.

- 11 -

Civ. 2775, ECF No. 119 (Civil Case Management Plan and Scheduling Order). Initial disclosures are due June 3, 2026; document requests are due July 3, 2026; interrogatories are due October 30, 2026; all fact discovery must be completed by December 31, 2026. *Id*. The TAC, of course, will not impact or delay anything in connection with the current schedule ordered by this Court. *Id*.

We expect Defendants to argue that they would be prejudiced for two reasons: (1) Carter's Section 487 claim will expand discovery; and (2) they will have to re-brief their motions to dismiss. As discussed below, however, neither argument holds water.

### 1.        The TAC Does Not Meaningfully Expand the Scope of Discovery

Carter's Section 487 claim does nothing to expand discovery. All of Carter's claims concern a single basic question: whether Defendants acted unlawfully when they knowingly and falsely accused Carter of sexual abuse. This issue will be tried before a jury regardless of whether Carter is granted leave to amend.

Although the elements of a cause of action under Section 487 are different than the elements for malicious prosecution, there is substantial—if not complete—overlap in the underlying conduct giving rise to both claims, meaning that the parties will not need to engage in additional discovery. More specifically, Section 487 creates "civil and criminal liability on any attorney who is guilty of any deceit or collusion, or consents to any deceit or collusion with intent to deceive the court or any party[.]" *Betz v. Blatt*, 160 A.D.3d 696, 698 (2d Dep't 2018) (cleaned up). Malicious prosecution, in turn, requires proof of: "(1) prosecution of a civil action against the plaintiff, (2) by or at the instance of the defendant, (3) without probable cause, (4) with malice, (5) which terminated in favor of the plaintiff, and (6) causing special injury." *Stewart v. Fein, Such & Crain, LLP*, 236 A.D.3d 959, 962 (2d Dep't 2025) (quoting *Skarzynski v. ABM Mgmt. Corp.*, 217 A.D.3d 983, 984 (2d Dep't 2023)). Both claims turn on the conduct of the defendants who are attorneys in prosecuting false accusations against Carter. Both require inquiry into their intent. Not

- 12 -

a single additional document will need to be produced nor witness deposed. Not surprisingly, courts in this District consistently grant leave where, as here, new claims are "substantially similar" to existing claims and require no additional discovery. *See Goureau v. Goureau*, No. 12 Civ. 6443, 2013 WL 1499404, at *3 (S.D.N.Y. Apr. 10, 2013) (Engelmayer, J.) (granting leave to amend the pleadings where plaintiffs' proposed revisions did not appear to broaden the scope of the factual issues and therefore likely did not "necessitate any change in the scope, nature, or timing of discovery."); *cf. Carroll v. Trump*, 590 F. Supp. 3d 575, 588-90 (S.D.N.Y. 2022) (Kaplan, J.) (denying leave where defendant waited fourteen months to amend and sought to add an anti-SLAPP counterclaim when fact discovery was complete, that would create additional motion practice, stay discovery, and further delay the case).[2]

Because Carter's Section 487 claim arises from the same core conduct—Defendants' knowing prosecution of false accusations—and substantially overlaps factually with the existing malicious prosecution claim, no additional discovery is required and Defendants cannot demonstrate prejudice on this basis.

### 2.    Re-Briefing Does Not Constitute Prejudice

Defendants' argument that they will be prejudiced by amendment because they "prepare[d] and file[d] two motions to dismiss already" (*Carter v. Buzbee, et al.*, No. 26 Civ. 2775 (S.D.N.Y.), ECF No. 117 at 4) lacks merit too.

Because it is an ordinary part of civil litigation, the cost of briefing a motion to dismiss does not constitute cognizable prejudice in this Circuit. In *Pasternack v. Shrader*, for example, the Second Circuit held that the district court had abused its discretion in denying leave to amend even

---

[2] Even if the Section 487 claim were to expand discovery minimally, any such change would be offset by Carter's withdrawal of the Abuse of Process and Civil Conspiracy claims. The net effect is to add one claim based on substantially similar facts as the remaining malicious prosecution claim, but delete two.

though defendants had "spent a vast amount of money litigating the sufficiency of various complaints." 863 F.3d 162, 174 (2d Cir. 2017). *See Multi Access Ltd.*, 2021 WL 5647790, at *1 ("Defendants identify no prejudice they would suffer from having to rebrief the motion to dismiss currently before the Court. It is more prudent, more efficient, and fairer to consider a motion to dismiss on the basis of all of the facts alleged in an amended complaint[.]"); *Thompson v. City of N.Y.*, No. 1:21-cv-8202 (MKV), 2022 WL 562358, at *1 (S.D.N.Y. Feb. 24, 2022) ("Where the proposed amended complaint requires leave of court, 'the preferred course is to grant leave to amend even if doing so renders moot the motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave.'").[3]

But that is not all. Here, Doe and Carter must re-brief Doe's pending motion to dismiss no matter what.[4] That is because Doe's motion relies on Alabama choice of law rules to argue that California law governs the defamation claim. Carter's opposition likewise applies Alabama's framework. ECF No. 65 at 5-10.  But after transfer under 28 U.S.C. § 1406(a), this Court applies the law it would have applied had Carter filed here in SDNY in the first instance. *Schaeffer v. Vill. of Ossining*, 58 F.3d 48, 50 (2d Cir. 1995). As a result, New York, not Alabama, choice of law rules now govern. *See Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010).

This change renders Doe's and Carter's existing briefing inapposite. Unlike Alabama, which follows the *lex loci delicti* principle, New York applies a different framework. Under New York law, the state with the most significant interest in the litigation supplies the governing law.

---

[3] In any event, Defendants have arguably waived any objections to re-briefing given that they have expressed a willingness to do so "to the extent that the Court believes additional briefing would be helpful." *Carter,* No. 26 Civ. 2775 (S.D.N.Y.), ECF No. 105 at 5.

[4] The same, of course, is true for Doe's motion to remain under pseudonymity which now would be governed by the Second Circuit's decision in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008).

*See Kinsey v. New York Times Co.*, 991 F.3d 171, 176-77 (2d Cir. 2021). The relevant factors include: (1) where the plaintiff suffered the greatest injury; (2) where the challenged statements emanated and were broadcast; (3) where the activities to which the defamatory statements relate took place; and (4) the policy interests of the states whose law might apply. *Id.* at 177 (citing *Condit v. Dunne*, 317 F. Supp. 2d 344, 353-54 (S.D.N.Y. 2004)). This multi-factor analysis requires a reexamination of the choice of law question and quite possibly the application of a different state's law.

Even if the cost of renewed briefing could properly be considered (and it cannot be, as discussed above), any financial burden of re-briefing now that the case is pending here does not justify denying leave to amend. After all, the changes to the choice of law analysis in Doe's motion are necessitated by the transfer to this Court, not by anything in the proposed TAC.

Nor must Defendants start from scratch. Where, as here, a plaintiff is permitted to amend while a motion to dismiss is pending, courts can treat the existing motion as directed to the amended pleading where the same arguments still apply. *See Aquino by Convergent Distributors of Tex., LLC v. Alexander Cap.*, *LP*, 632 B.R. 7, 17 (S.D.N.Y. 2021) (citing *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303-04 (2d Cir. 2020)). Thus, a defendant in this posture may rely on arguments already made, incorporate them by reference, or "simply 'copy and paste' those arguments." *Elle Lalli v. Warner Bros. Discovery, Inc.*, No. 24 Civ. 3178, 2024 U.S. Dist. LEXIS 189748, at *2-3 (S.D.N.Y. Oct. 18, 2024); *Drivetrain, LLC v. EverStream Solar Infrastructure Fund I LP (In re SunEdison, Inc.)*, No. 16-10992, 2021 WL 3176070, at *9 (Bankr. S.D.N.Y. July 27, 2021) (granting leave to amend where "Defendants' asserted prejudice—that they would be required to re-brief their motion to dismiss—is limited" and defendants "can simply file a supplemental memorandum in support of their existing motion to the extent they think

appropriate…."). There is no good reason for Defendants to have to reinvent the wheel. Thus, Defendants' anticipated "prejudice" arguments fall flat.

### III.    The Proposed Amendments Are Not Futile

A proposed amendment is futile if it would be subject to dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Renergy, Inc. v. Mt. Hawley Ins. Co.*, No. 25 Civ. 5073, 2026 WL 1192415, at *2 (S.D.N.Y. May 1, 2026). Here, Section 487 provides that an attorney "guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party" is responsible to pay "the party injured treble damages, to be recovered in a civil action." N.Y. Jud. L. § 487. The TAC alleges precisely the kind of deceit on the Court by the defendants who are attorneys, with respect to the Underlying Action, that is precisely the "deceit . . . upon . . . the court" that Section 487 proscribes. *See Amalfitano v. Rosenberg*, 428 F. Supp. 2d 196, 211 (S.D.N.Y. 2006) (finding attorney who "brought suit against plaintiffs despite knowing that it was entirely baseless" was liable under Section 487), *aff'd*, 572 F.3d 91 (2d Cir. 2009); *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 709-13 (S.D.N.Y. 2019) (Section 487 claim sufficiently pled where attorneys operated a "widespread scheme to fraudulently obtain default judgments in debt collection proceedings" by filing complaints with false representations and submitting "robosigned" affidavits without meaningful review); *Wilson v. Selip & Stylianou, LLP*, 24 Civ. 4108, 2026 WL 851338, at *7-8 (S.D.N.Y. Mar. 27, 2026) (denying dismissal of Section 487 claim alleging deception by law firm that filed false affidavit of service and then proceeded to prosecute action); *Scott v. E. Hope Greenberg*, No. 15 Civ. 05527, 2017 WL 1214441, at *15 (E.D.N.Y. Mar. 31, 2017) (denying dismissal of Section 487 claim where attorney "orchestrated a scheme to obtain a default judgment" through intentional deceit of plaintiff and the court); *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 428-29 (S.D.N.Y. 2010) (denying motion to dismiss Section 487 claim

- 16 -

where "[p]laintiffs' allegations regarding the fraudulent affidavits and other filings provide[d] adequate support for th[e] claim").

*First*, Defendants' pleadings in the Underlying Action contained knowingly false allegations that Carter sexually assaulted a minor. According to Doe, she did not independently identify Carter as an alleged perpetrator. Instead, Buzbee "asked if Jay-Z was there," "brought Jay-Z into it," and "pushed" Doe to "go[] forward" with the false allegations against Carter "to make the case better." *See Hansen v. Miller*, 52 F.4th 96, 102 (2d Cir. 2022) (recognizing that Section 487 applies to "coaching" a client to make "allegedly false statements"). Having coached Doe to make the accusation, Defendants then filed a complaint against Carter that public records easily disproved. Even after NBC News confronted Defendants with a mountain of evidence contradicting Doe's account—and even after Doe herself conceded that she "made some mistakes" and was just "guessing" about basic details—Defendants continued to prosecute the Underlying Action and their extortionate pressure campaign.

Indeed, Defendants worked to paper over the gaps in Doe's narrative. For example, their original Complaint alleged that Doe spoke with a limousine driver who told her to return for the afterparty "around 9:30 or 10 p.m." Underlying Action, ECF No. 1, ¶ 38. That allegation was facially untrue—the 2000 VMAs did not even end until 11:11 p.m. TAC ¶ 189. But rather than withdraw the complaint or correct the record, Defendants amended the pleading to remove the offending time references altogether, alleging only that "[l]ater that evening," Doe "waited for what seemed to her a long time" before being driven to the party. Underlying Action, ECF No. 29, ¶ 43; TAC ¶ 190. Either the defendants who are attorneys knowingly lied in their filings from the start, or they discovered that key parts of Doe's story were false and attempted to hide that fact from the Court. That is attorney deceit at the heart of Section 487.

*Second*, the defendants who are attorneys deceived the Court by presenting Doe's allegations as if they had conducted a reasonable pre-suit investigation. By signing, approving, and filing the Complaint and Amended Complaint in the Underlying Action, defendants who are attorneys represented that Doe's allegations had evidentiary support after a reasonable inquiry. But they could not have possibly conducted a reasonable inquiry. Doe retained AVA Law around October 14, 2024; Defendants filed the original complaint just six days later; and, during that same period, Defendants supposedly vetted more than a dozen other Combs-related cases involving decades-old allegations. Indeed, basic checks would have exposed fatal problems with Doe's story: Carter was at a different venue, no jumbotron existed, police barricades blocked the limousine area, Benji Madden was on tour in a different state, another supposed corroborating witness was dead, and Doe's father had no recollection of the supposed pickup. Defendants nevertheless signed, approved, and filed the complaints, falsely representing that Doe's allegations had factual support. Defendants chose not to look—or looked and filed anyway. That is actionable deceit under Section 487.

*Third*, Buzbee's unauthorized practice in this Court independently serves as a violation of Section 487. Buzbee knew he was not admitted to practice here. Yet he signed pleadings, motions, and letters in the Underlying Action and filed them through Curis's ECF credentials. Each filing falsely conveyed that Buzbee could appear before this Court. This was not a technical foot-fault. By bypassing the admission process, Buzbee avoided disclosing the misconduct and professional improprieties that threatened any *pro hac vice* application he might file, and he deprived the Court of information bearing directly on his fitness to appear. He also evaded this Court's admission rules, Rule 11 accountability, and inherent disciplinary authority. That conduct deceived the Court and compounded Defendants' broader scheme to weaponize this Court's docket against Carter.

*Finally*, Defendants Buzbee and Fortney engaged in further deceit by fabricating threats from Carter to manipulate Doe into dismissing the Underlying Action. After Judge Torres ordered Buzbee to file proof of admission to this District, and after Buzbee learned that his admission application had been denied, Buzbee sent Fortney to meet with Doe. At that meeting, Fortney falsely told Doe that Carter had threatened her life and that continuing with the Underlying Action was too dangerous—even though Fortney knew no such threats had ever been made. That lie concealed the real reason the attorney Defendants wanted the case dismissed: to avoid scrutiny for filing and prosecuting a false action in this District, where Buzbee was not admitted to practice. It also deprived Carter of the opportunity to clear his name in the Underlying Action and seek relief against the false accusers who had invoked this Court's processes to destroy his reputation. Buzbee's direction of that meeting and Fortney's knowing lie to Doe, a party to the Underlying Action, independently state deceit under Section 487.

Defendants' deceit injured Carter by placing false allegations of child sexual assault on this Court's public docket, forcing him to defend a fraudulently filed action, and causing severe reputational, business, and personal harm. Those injuries are recoverable, subject to trebling, under Section 487. Carter's Section 487 claim therefore is not futile and the Court should grant Carter leave to assert it.

## Conclusion

For the above reasons, Carter respectfully requests that this Court grant leave to file the TAC, attached as Exhibit 1 to the Siev Decl., and for such other and further relief as the Court may deem just and proper.

Dated: May 22, 2026

By:    */s/ Jordan W. Siev*

Jordan W. Siev
Casey D. Laffey
REED SMITH LLP
599 Lexington Ave., 22nd Floor
New York, New York 10022
jsiev@reedsmith.com
claffey@reedsmith.com
212-205-6085

By:    */s/ Roberta A. Kaplan*

Roberta A. Kaplan
Ellen V. Holloman
Christopher R. Le Coney
KAPLAN MARTIN LLP
1133 Avenue of the Americas,
Suite 1500
New York, New York 10036
rkaplan@kaplanmartin.com
eholloman@kaplanmartin.com
cleconey@kaplanmartin.com
212-316-9500

By:    */s/ Alejandro Brito*

Alejandro Brito
*(Admitted PHV)*
BRITO PLLC
2121 Ponce de Leon Blvd,
Suite 650
Coral Gables, Florida 33134
abrito@britopllc.com
305-614-4071

*Attorneys for Plaintiff*
*Shawn Corey Carter*