**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------X
SHAWN COREY CARTER,

Plaintiff,

v.

Case No.: 1:26-cv-02775-DEH

ANTHONY BUZBEE, DAVID FORTNEY,
ANTHONY G. BUZBEE, LLP
(d/b/a THE BUZBEE LAW FIRM),
ANTIGONE CURIS, CURIS LAW, PLLC
and JANE DOE,

Defendants.

---------------------------------------------------------X

**DEFENDANT JANE DOE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF SHAWN COREY CARTER'S THIRD AMENDED COMPLAINT**

## TABLE OF CONTENTS


I. Introduction ..... 1

II. Legal Standard ..... 1

A. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction ..... 1

B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim ..... 2

III. Argument ..... 2

A. The Court lacks personal jurisdiction over Doe. ..... 2

B. Carter fails to state a claim for defamation. ..... 5

1. California law applies to Carter's defamation claim. ..... 5

2. Doe's statements are absolutely privileged pursuant to California's fair report privilege. ..... 9

C. Carter fails to state a claim for malicious prosecution. ..... 17

1. Carter does not allege a "special injury." ..... 17

2. Doe's lawsuit was dismissed pursuant to a compromise. ..... 23

IV. Conclusion ..... 24

# TABLE OF AUTHORITIES

## Cases

*Aprahamian v. Sandoz, Inc.*, No. 24 CV 9045 (NSR), 2026 WL 221286 (S.D.N.Y. Jan. 28, 2026) ....4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....2, 21

*Brancaleone v. Mesagna*, 290 A.D.2d 467 (2d Dep't 2002) ....8

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ....2

*Bond v. Lilly*, D082738, 2024 WL 4879324 (Cal. Ct. App. Nov. 25, 2024) ....9, 10, 11, 13

*Brooks v. San Francisco Chronicle*, No. A125046, 2010 WL 3594489 (Cal. Ct. App. 2010) ....15, 16

*Brown v. Brown*, 343 F. Supp. 2d 195, 198 (E.D.N.Y. 2004) ....20

*Campion Funeral Home, Inc. v. State of New York*, 569 N.Y.S.2d 518 (N.Y. 1991) ....19

*Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152 (2d Cir. 1996) ....3

*Carter v. Buzbee et al.*, Case No. 24-SM-CV-05637, in the Superior Court of the State of California ....6, 7

*Carver v. Bonds*, 37 Cal. Rptr. 3d 480 (Cal. Ct. App. 2005) ....16

*Catalanello v. Kramer*, 18 F. Supp. 3d 504 (S.D.N.Y. 2014) ....6, 7, 8

*Colt v. Freedom Communications, Inc.*, 1 Cal. Rptr. 3d 245 (Cal. Ct. App. 2003) ....14

*Dababneh v. Lopez*, No. C088848, 2021 WL 4487407 (Cal. Ct. App. Oct. 1, 2021) ....9, 10, 11, 13

*Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641 (S.D.N.Y. 2025) ....2

*DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81 (2d Cir. 2001) ....2

*Doe v. Combs et al.*, No. 24-CV-07975, in the United States District Court for the Southern District of New York ....15

*Doe #1 v. Syracuse Univ.*, 468 F. Supp. 3d 489 (N.D.N.Y. 2020) ....2

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81 (2d Cir. 2013) ....................................2

*Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214 (9th Cir. 2003)....................10

*Engel v. CBS, Inc.*, 182 F.3d 124 (2d Cir. 1999) .......................................................18, 19, 20, 23

*Harrison v. Gilligan*, No. F082516, 2022 WL 2901252
(Cal. Ct. App. July 22, 2022)...............................................................................................9, 10, 13

*Healthsmart Pac., Inc. v. Kabateck*, 212 Cal. Rptr. 3d 589
(Cal. Ct. App. 2016), *as modified* (Jan. 10, 2017) .........................................6, 9, 10, 11, 12, 13,16

*Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892 (2d Cir. 2012).........................................3

*In re Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936 (N.Y. 1993) .......................................................6

*In re Eerie World Ent., L.L.C.*, No. 00-13708 (ALG),
2006 WL 1288578 (Bankr. S.D.N.Y. Apr. 28, 2006)............................................................20, 21

*Jennings v. Telegram-Tribune Co.*, 210 Cal. Rptr. 485 (Cal. Ct. App. 1985)...............................15

*Kanciper v. Lato*, 989 F. Supp. 2d 216 (E.D.N.Y. 2013) ............................................................22

*Katz v. Travelers*, 241 F. Supp. 3d 397 (E.D.N.Y. 2017)..............................................................3

*Kidder, Peabody & Co. v. IAG Intern. Acceptance, Group N.V.*,
No. 94-civ-4725, 1997 WL 539772 (S.D.N.Y. Aug. 28, 1997) ....................................................19

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ..........................................................6

*Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*,
No. 11 Civ. 3327(ER), 2013 WL 417406 (S.D.N.Y. Feb. 4, 2013) ..............................................23

*La Luna Enterprises, Inc. v. CBS Corp.*, 74 F. Supp. 2d 384 (S.D.N.Y. 1999) .............................7

*Lesesne v. Brimecome*, 918 F. Supp. 2d 221 (S.D.N.Y. 2013).......................................................3

*Liberty Synergistics, Inc. v. Microflo, Ltd.*, 50 F. Supp. 3d 267 (E.D.N.Y 2014) .........................22

*Lively v. Wayfarer Studios LLC*, 810 F. Supp. 3d 421 (S.D.N.Y. 2025)..................................3, 10

*Mahoney v. Meta Platforms, Inc.*, 710 F. Supp. 3d 771 (N.D. Cal. 2024) ...................................17

*McCaul v. Ardsley Union Free School Dist.*, 514 F. App'x. 1 (2d Cir. 2013) .............................20

*McClatchy Newspapers, Inc. v. Superior Court*, 234 Cal. Rptr. 702

(Cal. Ct. App. 1987).....10

*Sparrow Fund Mgmt., LP v. Mimedx Grp., Inc.*, No. 1:18-CV-04921 (PGG) (KHP), 2019 WL 8955307 (S.D.N.Y. Nov. 7, 2019) *report and recommendation adopted*, No. 18 Civ. 4921 (PGG) (KHP), 2020 WL 1330283 (S.D.N.Y. Mar. 22, 2020).....3, 4

*Mobile Training & Educ., Inc. v. Aviation Ground Sch. of Am.*, No. 602342/08, 2010 WL 3310257 (N.Y. Sup. Ct. June 23, 2010).....23

*Mohinani v. Charney*, 173 N.Y.S.3d 1 (N.Y. App. Div. 2022).....21

*Molinoff v. Sassower*, 471 N.Y.S.2d 312 (N.Y. App. Div. 1984).....20

*New Castle Siding Co. v. Wolfson*, 97 A.D.2d 501 (Sup. Ct. N.Y. 1983).....21

*O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996).....18

*Rubin v. Lufty*, No. 110510/09, 2009 WL 4878425 (N.Y. Sup. Ct. Nov. 23, 2009).....19

*Schinella v. Salem*, No. 19 Civ. 008931, 2024 WL 643169 (S.D.N.Y. Feb. 15, 2024).....19, 20

*Sacerdote v. New York Univ.*, 9 F.4th 95 (2d Cir. 2021).....2

*SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955 (9th Cir. 2008).....17

*Sole Energy Co. v. Petrominerals Corp.*, 26 Cal. Rptr. 3d 798 (Cal. Ct. App. 2006).....8

*Tiwari v. NBC Universal, Inc.*, No. C-08-3988, 2011 WL 5079505 (N.D. Cal. Oct. 25, 2011).....16

*Wright-Upshaw v. Nelson*, No. 13-CV-3367, 2014 WL 692870 (E.D.N.Y. Feb. 19, 2014).....21

**<u>Rules</u>**

Rule 12(b)(2) of the Federal Rules of Civil Procedure.....1, 24

Rule 12(b)(6) of the Federal Rules of Civil Procedure.....1, 2, 21

**<u>Statues</u>**

Cal. Civ. Code § 47.....9

N.Y. C.P.L.R. § 302.....1, 2, 3, 5

N.Y. Ltd. Liab. Co. Law § 601 ....................................................................................................21

Defendant Jane Doe ("Doe") moves the Court to dismiss Plaintiff Shawn Corey Carter's ("Carter") Third Amended Complaint (Dkt. 145) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction over Doe. In the alternative, Doe moves the Court to dismiss the Third Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. In addition to this Memorandum of Law, Doe's Motion to Dismiss is supported by Exhibits A through F, which are attached to the Declaration of J. Blair Newman, Jr.

## I. INTRODUCTION

Carter has asserted two claims against Doe: malicious prosecution and defamation. Both claims sound in defamation because Carter alleges that he has been injured as a result of Doe's false accusations and statements. Claims sounding in defamation, regardless of how they are labeled, fall within an exception to New York's long-arm statute, N.Y. C.P.L.R. § 302. Since the long-arm statute does not apply to Carter's claims against Doe, the Court lacks personal jurisdiction over her.

If the Court determines that it has personal jurisdiction over Doe, the Third Amended Complaint should be dismissed as to Doe for failure to state a claim. The defamation claim fails because California's fair report privilege provides absolute protection for Doe's statements to the media regarding a judicial proceeding. The malicious prosecution claim fails because there is no "special injury" under New York law and Doe's lawsuit was dismissed pursuant to a compromise.

## II. LEGAL STANDARD

### A. RULE 12(B)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant.

*DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). When no discovery has been conducted, the plaintiff's burden is to make a *prima facie* showing of personal jurisdiction through good faith, legally sufficient allegations. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).

### B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. New York Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While the court draws reasonable inferences in the plaintiff's favor, any conclusory allegations are disregarded. *Id.* at 106-07 (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

When deciding a Rule 12(b)(6) motion, the court considers the facts stated in the complaint, matters of which judicial notice may be taken, and documents attached as exhibits, incorporated by reference, or relied upon heavily in the complaint. *Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 661 (S.D.N.Y. 2025). The same principle applies to a video referenced in a complaint, particularly one for which a link has been provided in the pleading. *Doe #1 v. Syracuse Univ.*, 468 F. Supp. 3d 489, 503 n.11 (N.D.N.Y. 2020).

## III. ARGUMENT

### A. The Court lacks personal jurisdiction over Doe.

Doe, a domiciliary of Alabama, is only subject to personal jurisdiction if the Court has specific personal jurisdiction over her. (Dkt. 145, ¶ 32.) To assess whether there is specific personal jurisdiction, the court first looks to the state's long-arm statute, N.Y. C.P.L.R. § 302. Section 302(a)(2) and (3) provide for personal jurisdiction over a non-domiciliary of New York, such as Doe, based on torts committed in or causing injury in New York, but "causes of action for

defamation of character" are expressly excluded from the reach of the statute. N.Y. C.P.L.R. § 302.[1]

This exception applies not only to those claims labeled "defamation," but also to claims "sounding in defamation." *Lively v. Wayfarer Studios LLC*, 810 F. Supp. 3d 421, 434 (S.D.N.Y. 2025) (citing *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996)). "Otherwise, parties would be permitted 'to evade the statutory exception' simply 'by recasting their cause of action as something other than defamation.'" *Id.* (quoting *Cantor*, 88 F.3d at 157).

"New York law considers claims sounding in tort to be defamation claims . . . where those causes of action seek damages only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation." *Id.* at 435 (quoting *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012)). "Indeed, even where a plaintiff alleges business and other economic harms, so long as those harms all 'flow[] from the effect on [one's] reputation,' the claim sounds in defamation." *Id.* (quoting *Katz v. Travelers*, 241 F. Supp. 3d 397, 407 (E.D.N.Y. 2017)). For example, if alleged "loss of contracts and business relationships" flow from reputational harms, the claims are "in truth defamation claims." *Id.* (quoting *Katz*, 241 F. Supp. 3d at 407).[2]

Like his defamation claim, Carter's malicious prosecution claim against Doe clearly sounds in defamation because he alleges reputational harm "set in motion" by the defendants and resulting in "some economic loss." *See Lively*, 810 F. Supp. 3d at 436-37 (quoting *Lesesne*, 918 F. Supp. 2d at 226). This rule was applied to a malicious prosecution claim in *Sparrow Fund*

---

[1] Sections 302(a)(1) and (4) require that the non-domiciliary transact business, supply goods or services, or own, use, or possess real property in New York. Neither section is applicable to Doe.
[2] *See also Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 225 (S.D.N.Y. 2013) (noting examples of claims sounding in defamation because the alleged economic harm stemmed from reputational damage).

*Mgmt., LP v. Mimedx Grp., Inc.*, No. 1:18-CV-04921 (PGG) (KHP), 2019 WL 8955307 (S.D.N.Y. Nov. 7, 2019), *report and recommendation adopted*, No. 18 Civ. 4921 (PGG) (KHP), 2020 WL 1330283 (S.D.N.Y. Mar. 22, 2020). Sparrow, the plaintiff, alleged that the defendants, a company known as MiMedx and its former CEO, Parker Petit, conspired to file a sham lawsuit in New York against Sparrow and made defamatory statements regarding Sparrow. *Id.* at *1-2. Sparrow asserted claims of defamation and malicious prosecution against MiMedx and Petit. *Id.* For reasons applicable to the claims against Doe, the malicious prosecution claim sounded in defamation:

> To assess whether a claim sounds in defamation, the court should determine whether the cause of action is premised on the allegation that the defendant [said] untruthful things about plaintiff. Thus, although it is possible for a New York court to obtain specific jurisdiction over a defendant accused of malicious prosecution, the cause of the plaintiff's damages must be something other than purportedly defamatory statements.
>
> . . .
>
> This Court . . . lacks jurisdiction under Sections 302(a)(2) and (3). Sparrow contends that the Underlying Action is sufficient to invoke specific jurisdiction over Petit under Sections 302(a)(2) and (3) because, Petit, acting through his agent, MiMedx, committed a tort against Sparrow by orchestrating the filing of the Underlying Action. Here, the Court need not reach the issue of whether MiMedx was acting as Petit's agent when it commenced the Underlying Action because Sparrow's malicious prosecution claim is premised on the allegation that MiMedx/Petit falsely accused Sparrow of market manipulation and, thus, sounds in defamation.

*Id.* at *16-17 (internal citations and quotation marks omitted); *see also Aprahamian v. Sandoz, Inc.*, No. 24 CV 9045 (NSR), 2026 WL 221286, at *5, 6 (S.D.N.Y. Jan. 28, 2026) (holding that malicious prosecution claim sounded in defamation because it arose from allegedly false statements and the "downstream consequences" of those statements).

Likewise, Carter's malicious prosecution claim is based on reputational harm and the economic consequences of false accusations. Thus, under New York law, the claim sounds in defamation and falls within the exception to the long-arm statute. Carter alleges:

> 185. . . . . Defendants filed a Complaint in federal court. Defendants alleged facts that they knew were false.
>
> . . .
>
> 192. The lawsuit filed by Defendants, and its demonstrably false allegations that Carter raped Doe when she was a minor, caused Carter to suffer actual and special damages, including, but not limited to, harm to his personal and professional reputation, harm to his business entity, Roc Nation—which resulted in his business suffering $20 million in losses, representing a minimum fee guarantee, which would have been many millions of dollars higher had the contract been performed—out-of-pocket loss, and emotional harm, humiliation, and harassment. Moreover, as a result of Defendant's filing of the false lawsuit and other false public statements against Carter, Carter's 50% owned consumer brand business, with which Carter is publicly closely associated, was also denied a $115 million loan. In addition, Roc Nation would have paid Carter a substantial fee for his services associated with the deal.

(Dkt. 145, ¶¶ 185, 192.)

Carter's malicious prosecution claim, like his defamation claim, is based on harm to his reputation as a result of false accusations. His alleged damages stem from Doe's "false allegations," "false lawsuit," and "other false public statements." Thus, his malicious prosecution claim sounds in defamation and falls squarely within the exceptions of §§ 302(a)(2) and (a)(3).

For the foregoing reasons, New York's long-arm statute does not apply to the claims against Doe, and the Court lacks personal jurisdiction over her.

### B. CARTER FAILS TO STATE A CLAIM FOR DEFAMATION.

#### 1. Under New York's choice-of-law rules, the substantive law of California applies to Carter's defamation claim.

In his briefing of Doe's Motion to Dismiss the Second Amended Complaint, Carter argued that Texas or New York law applies to his defamation claim. (Dkt. 65, p. 5.) In doing so, Carter reversed course from the position taken in his related defamation case filed in California against The Buzbee Law Firm and Anthony G. Buzbee. (Exhibit A – Plaintiff's Opposition to Defendants'

Special Motions to Strike, filed in *Carter v. Buzbee et al.*, Case No. 24-SM-CV-05637, in the Superior Court of the State of California, pp. 10-15.) In the California case, Carter claimed that Buzbee's public statements and social media posts amounted to false and defamatory statements that Carter raped Doe. (*Id.*, pp. 3-4.) Carter maintained that California law applied to his defamation claim. (*Id.*, pp. 10-14.) California law also applies to Carter's defamation claim against Doe concerning her allegedly defamatory statements about the same alleged rape.

Federal courts sitting in diversity jurisdiction apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under New York choice-of-law rules, the first step is to determine whether there is a conflict between the laws of the jurisdictions involved. *In re Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936, 937 (N.Y. 1993). Here, California has a stronger fair report privilege, discussed in Section III.B.2, than New York and Texas. *See Healthsmart Pac., Inc. v. Kabateck*, 212 Cal. Rptr. 3d 589, 600 (Cal. Ct. App. 2016), *as modified* (Jan. 10, 2017). Thus, there is an actual conflict between the laws of the jurisdictions.

In the defamation context, the injury resulting from defamation is to a plaintiff's reputation, and New York courts would thus generally look to the law of the state of the plaintiff's domicile, which is where he will most likely be damaged. *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 511-12 (S.D.N.Y. 2014). When the alleged defamation is broadcast to multiple states at the same time, as is the case here, there is a rebuttable presumption that the law of the plaintiff's domicile applies. *Id.* at 512. This presumption applies unless, with respect to the defamation claim, another state has a more significant relationship to the issue or the parties. *Id.*

To determine whether the presumption in favor of the plaintiff's domicile is overcome, New York courts "weigh all the factors that might impact on the interests of various states in the litigation . . . includ[ing,] where [the] plaintiff suffered the greatest injury; where the statements

emanated and were broadcast; where the activities to which the allegedly defamatory statements refer took place; and the policy interests of the states whose law might apply." *Id.*

Carter was a citizen of California at the time of the alleged defamation in December 2024 and when he filed his Complaint, First Amended Complaint, and Second Amended Complaint.[3] (Exhibit B - First Am. Compl. in *Carter v. Buzbee et al.*, Case No. 24SMCV05637, in the Superior Court of the State of California, ¶¶ 6, 9-10; Dkt. 1, ¶ 11, Dkt. 29, ¶ 14, Dkt. 32, ¶ 14.) New York courts recognize that a plaintiff's home state is generally where his reputation is most damaged. *See, e.g., La Luna Enterprises, Inc. v. CBS Corp.*, 74 F. Supp. 2d 384, 389-90 (S.D.N.Y. 1999) (selecting the law of plaintiff's domicile over New York law even though the media defendant was a citizen of New York, which has an interest in protecting free speech rights of publishers within its borders).

Further, Carter has acknowledged that his injury was greatest in California. In his defamation case against Anthony Buzbee and others, Carter alleged:

> Defendants defamed Mr. Carter, a resident of Los Angeles. Defendants purposefully directed their conduct at Mr. Carter in Los Angeles, knowing that Mr. Carter would suffer the brunt of the harm in this jurisdiction. . . . Defendants caused substantial harm to Plaintiff's personal and professional reputation in Los Angeles.

(Ex. B, ¶¶ 9-10.) As discussed above, the alleged defamation by Buzbee and others arises out of the same accusations as the alleged defamation by Doe. According to Carter, the "brunt of the harm" to his reputation occurred in California.

California has an interest in protecting its citizens from defamatory conduct. *See Catalanello*, 18 F. Supp. 3d at 512 (noting that New Jersey, as the plaintiff's domicile, has a strong

[3] According to his Third Amended Complaint, Carter is now a citizen of New York. However, the tort occurred when Carter's alleged injury to reputation occurred, and he has acknowledged he was a citizen of California at that time.

policy interest in having its defamation laws applied to its resident's claim regarding the allegedly defamatory statements of outsiders). Here, California has an interest in protecting Carter, its citizen at the time of the defamation and the filing of this case, from defamatory conduct.

The statements at issue "emanated" from Texas. According to Carter, Doe travelled from her home in Alabama to Texas for the interview with NBC News at the Buzbee Firm's offices. (Dkt. 145, ¶ 130.) Texas's interest is limited to this fact.

The statements were broadcast by NBC News simultaneously to all 50 states. NBC News published the interview excerpts online, making them available in all 50 states. Thus, "where the statements were broadcast" does not weigh in favor of any particular state. In addition, NBC News is not a party, and there is no media party at all in this case.

The only factor in favor of New York law is that the statements refer to events that were alleged to have taken place in New York. However, neither the speaker nor the subject of the statements was a New York citizen, the statements were not made in New York, there is no New York media defendant, and the statements did not emanate from New York.[4] *See Catalanello*, 18 F. Supp. 3d at 512-13 (holding that even though statements referred to conduct that occurred in New York and plaintiff worked in New York, New Jersey law applied because of its strong interest in protecting its citizens from the allegedly defamatory statements of outsiders).

Not only does the presumptive rule point to California, California has the more significant relationship to the issue and the parties. Therefore, the substantive law of California applies.

---

[4] Doe resides in and is domiciled in Alabama. (Dkt. 145, ¶ 32.) Further, any statements made in connection with Doe's lawsuit filed in New York are subject to the litigation privilege and cannot be the basis for any defamation claim. Any alleged damages to Roc Nation are also irrelevant. Under New York and California law, an individual plaintiff cannot recover damages based on injury to a company owned by the plaintiff, even if the company is closely held. *Brancaleone v. Mesagna*, 290 A.D.2d 467, 468 (2d Dep't 2002); *Sole Energy Co. v. Petrominerals Corp.*, 26 Cal. Rptr. 3d 798, 813 (Cal. Ct. App. 2006).

### 2. Doe's statements to news media about her lawsuit are absolutely privileged pursuant to California's fair report privilege.

Carter's Third Amended Complaint and the materials incorporated and referenced therein establish that Doe's statements to the media are absolutely privileged pursuant to California's fair report privilege. The average viewer of the NBC News piece would understand Doe's statements to be associated with her then-ongoing civil lawsuit.

Under California law, "[a] privileged publication or broadcast is one made . . . [b]y a fair and true report in, or a communication to, a public journal, of (A) a judicial, (B) legislative, or (C) other public official proceeding, or (D) of anything said in the course thereof. . . ." Cal. Civ. Code § 47(d). When the fair report privilege applies, "the reported statements are absolutely privileged regardless of the defendants' motive for reporting them." *Kabateck*, 212 Cal. Rptr. 3d at 600 (internal quotation marks and citations omitted). Courts have construed the privilege broadly. *Id.*

NBC News qualifies as a "public journal" for purposes of the fair report privilege. *See id.* at 601. Doe's lawsuit against Carter and Combs was a "judicial proceeding." *See id.* (noting that the phrase "judicial proceeding" includes the filing of a complaint).

The fair report privilege protects complainants who communicate information to the media regarding their complaints. *Id.* at 600; *see also Harrison v. Gilligan*, No. F082516, 2022 WL 2901252, at *6 (Cal. Ct. App. July 22, 2022) (applying privilege to individual's statements to press and related news report regarding his allegations of sexual misconduct); *Dababneh v. Lopez*, No. C088848, 2021 WL 4487407, at *12 (Cal. Ct. App. Oct. 1, 2021) (applying privilege to lobbyist's statements in press conference and to newspaper regarding her sexual assault allegations); *Bond v.*

*Lilly*, No. D082738, 2024 WL 4879324, at *2, 8 (Cal. Ct. App. Nov. 25, 2024) (applying privilege to statements by parents to news reporters regarding their complaint).[5]

When viewed as a whole (as the law requires), the NBC News report was a fair and true report of the litigation. The fair report privilege is "not concerned with the merits of [the defendant's] allegations or the truth of the statement contained in the [defendant's statements to the media]." *Harrison*, 2022 WL 2901252, at *8; *see also Kabateck*, 212 Cal. Rptr. 3d at 603. "The privilege applies if the substance of the publication or broadcast captures the gist or sting of the statements made in the official proceedings." *Dababneh*, 2021 WL 4487407, at *11. "The report is not to be judged by the standard of accuracy that would be adopted if it were the report of a professional law reporter or a trained lawyer." *Id.* The defendant "does not have to justify every word of the alleged defamatory material that is published." *McClatchy Newspapers, Inc. v. Superior Court*, 234 Cal. Rptr. 702, 711 (Cal. Ct. App. 1987). Whether the report conveys the substance of the proceeding is measured by its impact on the average reader. *Dababneh*, 2021 WL 4487407, at *11.

"There is thus a critical difference between communicating to the media what is alleged in a complaint and communicating the alleged facts without reference to the complaint." *Kabateck*, 212 Cal. Rptr. 3d at 604. "The issue is whether the average viewer or listener of the media reports would understand the . . . statements as communications about the [underlying] complaint." *Id.*

---

[5] *Harrison*, *Dababneh*, and *Bond* are unpublished opinions. Under the procedural rules of California, their citation is restricted. However, pursuant to the *Erie* doctrine, this Court applies the substantive law of California but applies federal procedural rules, which consider unpublished decisions to have persuasive value. *See, e.g., Lively*, 828 F. Supp. 3d at 455 n.24 (adopting reasoning of unpublished California decision as persuasive); *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214 (9th Cir. 2003) (considering unpublished California state court decision for persuasive value).

Courts consider the entire report as a whole, not each statement in isolation, and the manner in which the statements are presented to the public is significant. *See id.*; *see also Dababneh*, 2021 WL 4487407, at *12 (noting importance of considering media reports in their entirety). For example, in *Bond*, the plaintiff argued that none of the defendants' statements expressly mentioned their underlying complaint or referenced their lawsuit, but the court disagreed that this fact was dispositive, instead holding that the statements were privileged because the news articles in which the statements appeared were replete with references to the lawsuit. *Bond*, 2024 WL 4879324, at *7-8. The "natural and probable effect" the publication would have on the viewer is determined by the entire news piece, not the defendants' statements in isolation. *See id.*

Here, the NBC News report and Doe's statements therein are obviously not "without reference to her complaint."[6] *See Kabateck*, 212 Cal. Rptr. 3d at 604; *Dababneh*, 2021 WL 4487407, at *12; *Bond*, 2024 WL 4879324, at *8. To the contrary, images of Doe's actual Amended Complaint, containing the allegations she discusses, appear as part of the report. The entire NBC News report is 5 minutes 7 seconds (5:07). The report shows actual images of the Amended Complaint from :44-:48, 1:44-49, and 2:31-40:










[6] The NBC News report is hyperlinked in Carter's Third Amended Complaint as follows: https://www.nbcnews.com/news/us-news/jay-z-rape-accuser-comes-forward-nbc-newsacknowledges-inconsistencies-rcna183435. (Dkt. 145, p.36.) The transcript of the interview was attached to Carter's initial Complaint and can be found as Dkt. 1-9.

The NBC News piece quotes directly from the Amended Complaint, with the quote overlaying an image of the Complaint:




These images inform viewers that the report concerns a lawsuit. *See Kabateck*, 212 Cal. Rptr. at 604 (citing "images of the complaint shown in the background" as causing the average person watching to understand the statements refer to a lawsuit).

The language used during the piece further emphasizes that it is a report on a lawsuit. At the beginning of the piece, the NBC News reporter states: "A 38-year-old mother from Alabama who has filed a lawsuit . . . is speaking out to NBC News. . . ." (Dkt. 1-9, p. 2.) The reporter refers to Doe's "allegations" and "claims" throughout the piece. (*Id.*, pp. 2, 4-5.)

The NBC News piece also frequently refers to the attorneys, stating that Doe's attorney provided NBC News with the name of Doe's friend and also quoting "[t]he accuser's attorney, Tony Buzbee." (*Id.*, pp. 3, 5.) As acknowledged by Carter in his Complaint, Doe's attorney was by her side during the interview. (Dkt. 145, ¶ 132.) An image of one of Doe's attorneys, captioned with his identity as her attorney, also appears during the piece:



Also discussed are statements from Carter's attorney, such as his statement that they are "going to ask the court to 'dismiss this frivolous case.'" (Dkt. 1-9, p. 6.) The report also quotes the "legal team" of Carter's co-defendant, Combs. (*Id.*)

The average person watching the report would understand that the statements refer to allegations in the lawsuit. *See Kabateck*, 212 Cal. Rptr. 3d at 604 ("The average person watching the report in its entirety would reasonably understand that Kabateck was referring to the allegations in the lawsuit he filed on Cavalieri's behalf."); *Dababneh*, 2021 WL 4487407, at *12 (determining that the entirety of the report would be understood as referring to the underlying complaint); *Harrison*, 2022 WL 2901250, at *9 ("Given the multiple references to investigations, including police investigations, we conclude that in the totality of the circumstances a viewer would understand appellant's statement to be a fair and true report of information provided in the course of a public official proceeding.").

In *Kabateck*, the "report alternates between scenes of Kabateck speaking to a person off-camera, images of the complaint, video of persons and places referred to in the story . . . and the reporter speaking to the camera." *Kabateck*, 212 Cal. Rptr. 3d at 594. Here, the NBC News piece also alternates between scenes of Doe speaking, images of the complaint, images of persons and places referred to in the story, and the reporter speaking. It is immaterial that the NBC News piece does not preface every statement with a reference to Doe's Amended Complaint. "Although some statements, when viewed in isolation, could be understood to communicate the allegedly defamatory matter as facts, not mere allegations of facts, when the media reports are viewed in the context in which they were made, the only reasonable conclusion is that the statements refer to the allegations made in the . . . complaint." *Id.* at 604. The report uses the words "lawsuit," "claim," "case," and "allegations." *See Bond*, 2024 WL 4879324, at *8 (applying privilege because even

if defendants did not mention their complaint, the reporters referred to the "lawsuit," "allegations," "claims," etc.).

In the Third Amended Complaint, Carter attempts to take the NBC News piece outside of the privilege by pointing out everything said in the news report that is not identically stated in Doe's Amended Complaint. However, the report need only "capture[] the substance, the gist, the sting of the libelous charge." *Colt v. Freedom Communications, Inc.*, 1 Cal. Rptr. 3d 245, 250 (Cal. Ct. App. 2003). It "need not track verbatim the underlying proceeding." *Id.* The question is whether the report "convey[s] the substance of the proceedings on which they report, as measured by their impact on the average reader." *Id.* "Only if the deviation is of such a substantial character that it produces a different effect on the reader will the privilege be suspended." *Id.*

Carter points to statements during the NBC News piece that: Doe was, at the time of the interview, a 38-year old mother; Doe went to the VMAs to see celebrities; a friend drove her from Rochester to Manhattan; the friend who drove her has died; Doe spoke to a limo driver who said she was what Combs was looking for, which she understood to mean she was pretty; she went to a white house and spoke to Benji Madden about his tattoo; she had a drink that made her feel woozy; she was raped by Combs and Carter while an unidentified female celebrity watched, and she tried to fight to get away from Carter, who put his hand over her mouth and told her to "cut the beep"; she ran to a gas station and called her father, who picked her up and drove her home; and she had to seek medical treatment due to stress. (Dkt. 1-9, pp. 2-4; Dkt. 145, ¶¶ 135-37.) Doe made substantially similar allegations in her Amended Complaint, stating that: she wanted to see celebrities at the VMAs; her friend dropped her off at Radio City Music Hall to see the VMAs; a limo driver told her she fit what Diddy was looking for and invited her to an after party; she arrived at a white house and recognized and spoke to celebrities; she drank a portion of a drink that made

her feel woozy and lightheaded; she went into a bedroom and was raped by Combs and Carter; she ran to a gas station and called her father, who picked her up and took her home; and she suffers from post-traumatic distress, depression, seizures, psychological harm, and anxiety. (Exhibit C – Doe's First Amended Complaint in *Doe v. Combs et al.*, No. 24-CV-07975, in the United States District Court for the Southern District of New York, ¶¶ 38, 41, 44, 46, 50, 52, 54-55, 60-61, 71a.) Any difference between the statements in the Amended Complaint and the NBC News piece would not change how a viewer would react to the allegations.

Carter focuses in particular on the statement that Carter put his hand over Doe's mouth and told her to "cut the BEEP." However, whether Carter put his hand over her mouth or told her to "cut the BEEP" is not a distinction from Doe's Amended Complaint that matters for purposes of the fair report privilege. Doe alleged in her Amended Complaint that she was thrown toward a wall and that Carter then took off her clothes, held her down, and raped her while she was drugged. (Ex. C, ¶¶ 1, 50, 52, 54-55.) The information that he covered her mouth and told her to "cut the BEEP" is not inconsistent with the Amended Complaint and does not change how a viewer would react to the rape allegations. Instead, the NBC News report as a whole conveys the substance of the claim made in Doe's Amended Complaint, as measured by the report's impact on the average viewer. *See Jennings v. Telegram-Tribune Co.*, 210 Cal. Rptr. 485, 489 (Cal. Ct. App. 1985) (holding that statements that individual was convicted of felony tax fraud and tax evasion captured the "gist or sting" of proceeding even though individual actually pled guilty to a misdemeanor offense of willfully and knowingly failing to file income tax returns); *Colt*, 1 Cal. Rptr. 3d at 250-51 (determining that factual deviations from the SEC complaint were immaterial for purposes of the privilege because the articles generally characterized the "pump and dump scenario"); *Brooks v. San Francisco Chronicle*, No. A125046, 2010 WL 3594489, at *5-6 (Cal. Ct. App. 2010)

(holding that even if the details of the alleged kickback scheme were inaccurately conveyed, the inaccuracy did not change the overall "gist");[7] *Carver v. Bonds*, 37 Cal. Rptr. 3d 480, 499 (Cal. Ct. App. 2005) (holding that whether there were six or 22 Medical Board complaints filed against the individual was immaterial because the essential point was that there was a large number of complaints); *Tiwari v. NBC Universal, Inc.*, No. C-08-3988, 2011 WL 5079505, at *15 (N.D. Cal. Oct. 25, 2011) (holding that incorrect report that individual was convicted of a felony sex offense rather than misdemeanor which was not a sex offense was nevertheless a fair report given that overall broadcast would have determined average viewer's opinion of the conduct).

Much of the NBC News piece concerns Carter's position in the case and "inconsistencies with [Doe's] allegations." (Dkt. 1-9, p. 2.) Within the first minute of the piece, the reporter refers to "inconsistencies," and the piece concludes with statements from Carter, his attorney, and Combs' attorneys. (*Id.*, pp. 2, 5-6.) According to Carter, NBC "disprove[d]" the allegations through its reporting, emphasizing that the piece is a fair report. (Dkt. 145, ¶ 189.)

Moreover, the applicability of the fair report privilege can be decided at the motion to dismiss stage. When "there is no dispute as to what occurred in the judicial proceeding reported upon or as to what was contained in the report," whether a report is a privileged fair report is a question of law. *Kabateck*, 212 Cal. Rptr. 3d at 600. Here, there is no dispute as to the contents of Doe's Amended Complaint. Nor is there any dispute as to the contents of the NBC News Report. Thus, based on Carter's pleading, the fair report privilege applies, and the defamation claim should be dismissed with prejudice.

Carter also refers to a TikTok post made under an account that is not identifiable as being associated with the "Jane Doe" who filed the lawsuit and appeared on NBC News. (Dkt. 145, ¶

[7] *Brooks* is an unpublished opinion. See footnote 5.

221.) Carter does not allege that he was mentioned in the post (and he was not). Assuming the post referred to Carter (which it does not), no defamation claim would be stated because "the plaintiff must effectively plead that the statement at issue either expressly mentions [him] or refers to [him] by reasonable implication." *Mahoney v. Meta Platforms, Inc.*, 710 F. Supp. 3d 771, 778 (N.D. Cal. 2024). "If there is no express reference to the plaintiff in a defamatory statement, the claim will fail unless the statement refers to the plaintiff by reasonable implication." *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008). "Under reference by reasonable implication, 'a defamatory statement that is ambiguous as to its target not only must be capable of being understood to refer to the plaintiff, but also must be shown actually to have been so understood by a third party.'" *Mahoney*, 710 F. Supp. 3d at 778 (quoting *SDV/ACCI, Inc.*, 522 F.3d at 959). "The issue of whether a statement can be reasonably interpreted as referring to a plaintiff is a question of law for the court." *Id.* at 779. As alleged by Carter, Doe's actual identity, much less her TikTok account name, has not been revealed. She filed the lawsuit as "Jane Doe," and NBC News concealed her identity. (Dkt. 145, ¶ 132.) Carter did not include a citation to the TikTok account for that reason. (Dkt. 145, ¶ 221 n.18.) Given that Doe's actual identity has not been revealed, there is no possibility that anyone would understand the alleged post to refer to Carter. Further, there is no allegation that any third party did understand the post as referring to Carter.

### C. CARTER FAILS TO STATE A CLAIM FOR MALICIOUS PROSECUTION.

Carter fails to state a claim for malicious prosecution for the following separate and independent reasons: (i) he does not allege a "special injury"; and (ii) the underlying lawsuit was dismissed pursuant to a compromise.

#### 1. Carter fails to state a claim for malicious prosecution because he does not allege facts that would constitute a "special injury."

Under New York law, a malicious prosecution claim based on a civil action requires that the plaintiff suffered a "special injury." Carter has not alleged any facts that would satisfy the special injury requirement.

The elements of a malicious criminal prosecution claim are: "(1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other words, terminates in favor of the plaintiff." *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996). When a malicious prosecution claim is based on a civil action, there is an additional element: a "special injury" to the plaintiff. *Id.* The New York Court of Appeals describes the "special injury" requirement as "a grievance akin to the effect of a provisional remedy." *Engel v. CBS, Inc.*, 182 F.3d 124, 131 (2d Cir. 1999) (attaching the New York Court of Appeals' answer to certified question). The significance of a "provisional remedy" is that it causes "some interference with plaintiff's person or property by the use of such provisional remedies as arrest, attachment, replevin or injunction, or other burden imposed on plaintiff beyond the ordinary burden of defending a lawsuit." *O'Brien*, 101 F.3d at 1484.

In describing the necessary grievance as "akin" to a provisional remedy, the New York Court of Appeals held that while "[a]ctual imposition of a provisional remedy need not occur," there must be "a highly substantial and identifiable interference with person, property, or business." *Engel*, 182 F.3d at 130. The New York Court of Appeals further explained as follows:

> Since the role that the special injury requirement fulfills is that of a buffer to insure against retaliatory malicious prosecution claims and unending litigation, we are satisfied that a verifiable burden substantially equivalent to the provisional remedy effect can amount to special injury. Put another way, what is "special" about special injury is that the defendant must abide some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit. . . .

*Id.* at 130-31.

Carter has not alleged that he was subjected to any provisional remedy as a result of Doe's lawsuit. Therefore, Carter must point to "burdens substantially equivalent to those imposed by provisional remedies." *Id.* at 130. The special injury must be "concrete." *Id.* Assuming the truth of Carter's Complaint, he has not alleged a special injury.

Carter attempts to satisfy this requirement through allegations of reputational damage, emotional harm, out-of-pocket loss, and humiliation. (Doc. 145, ¶¶ 170-178.) It is well-established that allegations of reputational loss are insufficient. *Engel*, 182 F.3d at 132; *see also Campion Funeral Home, Inc. v. State of New York*, 569 N.Y.S.2d 518, 521 (N.Y. 1991); *Kidder, Peabody & Co. v. IAG Intern. Acceptance, Group N.V.*, No. 94-civ-4725, 1997 WL 539772, at *3 (S.D.N.Y. Aug. 28, 1997); *Rubin v. Lufty*, No. 110510/09, 2009 WL 4878425, at *9 (N.Y. Sup. Ct. Nov. 23, 2009). Under New York law, "emotional distress, including shame and humiliation, is not a form of special injury. Neither is reputational harm." *Schinella v. Salem*, No. 19 Civ. 008931, 2024 WL 643169, at *7 (S.D.N.Y. Feb. 15, 2024) (citations omitted). Carter's references to evidence of reputational damage on Wikipedia, social media, or his "Net Sentiment Score" are insufficient because they are simply ways of describing alleged reputational damage. *See id.*

The New York Pattern Jury Instructions are instructive on the distinction between "special injury" and damages that may be available if a claim is proven. N.Y. Pattern Jury Instr. Civil 3:50A. The Pattern Jury Instructions state:

> If you find that AB did not [state the facts on which AB's claim of special injury is based], you will decide that AB did not sustain a special injury and will proceed no further. . . . On the other hand, if you find that AB [state the facts on which AB's claim of special injury is based], you will decide that CD caused AB to suffer special injury and will go on to consider AB's damages.
>
> On the question of damages, AB is entitled to recover for all of the actual damages caused by CD's bringing (and, or) continuing the . .

> . lawsuit against (him, her). Those damages are not limited to the damages that resulted from AB's special injury. . . .

*Id.* The official comment to the Pattern Jury Instructions clarifies: "Legal expenses incurred in defending against the defendant's prior lawsuit do not constitute an invasion of personal or property rights, nor does any consequential injury to plaintiff's reputation, although those items may be recoverable as damages once special injury and the other elements of malicious prosecution have been shown." *Id.* at III. Special Injury Requirement. Thus, there is a clear distinction between the harm necessary to plead a special injury, which cannot be done through allegations of reputational damage or emotional harm, and the damages that may be available if a plaintiff succeeds in establishing a special injury and the other elements of a malicious prosecution claim.

Also insufficient are Carter's allegations of emotional harm, humiliation, harassment, or out-of-pocket loss. *See Engel*, 182 F.3d at 131 (There must be "concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit."); *McCaul v. Ardsley Union Free School Dist.*, 514 F. App'x. 1, 5 (2d Cir. 2013) (allegations of distress and anxiety or having been caused to spend money to defend the lawsuit do not constitute a "special injury"); *Brown v. Brown*, 343 F. Supp. 2d 195, 198 (E.D.N.Y. 2004) ("bare allegations of emotional distress, pain, and suffering" are insufficient); *Schinella*, 2024 WL 643169, at *6 ("But emotional distress, including shame and humiliation, is not a form of special injury.").

Carter alleges emotional distress, pain, and suffering that resulted from his family's knowledge of the allegations. (Doc. 145, ¶ 171.) Again, this falls short due to the well-established law that such allegations do not give rise to a "special injury." *See Brown*, 343 F. Supp. 2d at 198 (holding that allegations of emotional distress, pain, and suffering were insufficient); *Molinoff v. Sassower*, 471 N.Y.S.2d 312, 313 (N.Y. App. Div. 1984) (holding that allegations of "psychological burden" were insufficient); *In re Eerie World Ent., L.L.C.*, No. 00-13708 (ALG),

2006 WL 1288578, at *8 n.10 (Bankr. S.D.N.Y. Apr. 28, 2006) (holding that allegations of "mental stress" are insufficient).

It is also insufficient for Carter to allege that Roc Nation suffered economic losses. Assuming the truth of the loss, it is Roc Nation's loss, not Carter's. The law does not allow Carter to recover damages incurred by Roc Nation. Carter alleges he is the "control person" of an entity that is a "50% owner of Roc Nation." (Doc. 145, ¶ 170.) In other words, there are at least two corporate shells between Carter and the alleged losses: Roc Nation LLC and whatever entity is a 50% owner of Roc Nation.

Under the law, Carter is distinct from Roc Nation, despite the allegation that he is an extension of the company or inseparable from it. Legal conclusions are not considered when allegations are tested pursuant to a Rule 12(b)(6) motion.[8] *Iqbal*, 556 U.S. at 678. Because Roc Nation has a legal existence separate and distinct from Carter, he cannot satisfy the requirement of a special injury by alleging that Roc Nation has lost money.[9] *See Mohinani v. Charney*, 173 N.Y.S.3d 1, 1-2 (N.Y. App. Div. 2022) (dismissing claim because plaintiffs' alleged damages

---

[8] Carter is not entitled to recover individually for damages incurred by Roc Nation LLC or any other entity. An LLC, even a single member LLC, is a separate and distinct entity from its owner(s). *See* N.Y. Ltd. Liab. Co. Law § 601 ("A member has no interest in specific property of the limited liability company."); *Wright-Upshaw v. Nelson*, No. 13-CV-3367, 2014 WL 692870, at *3 (E.D.N.Y. Feb. 19, 2014) ("Plaintiff lacks standing as an individual to raise these claims for injury to the organization."); *New Castle Siding Co. v. Wolfson*, 97 A.D.2d 501, 502 (Sup. Ct. N.Y. 1983) ("The fact that an individual closely affiliated with a corporation (for example, a principal shareholder, or even a sole shareholder), is incidentally injured by an injury to the corporation does not confer on the injured individual standing to sue on the basis of either that indirect injury or the direct injury to the corporation.") (citations omitted).

[9] The same goes for Carter's allegation that an unidentified "50% owned consumer brand business" was denied a $115 million loan. (Doc. 145, ¶ 175.) Assuming the truth of the allegation, it fails to allege a special injury to Carter, the individual. This allegation also fails to specify any lost business as a result of not obtaining the loan.

would have been directly suffered by LLCs of which plaintiffs were members rather than plaintiffs as individuals).

Carter alleges that he was denied a $55 million personal credit line. (Doc. 145, ¶ 174.) The denial of a "personal credit line" is clearly neither a provisional remedy nor a specific and verifiable loss of business. Carter alleges that it was a personal line of credit, not one for business. There is no allegation of an actual, concrete injury resulting from Carter not having the personal credit line. Nor does Carter allege that he intended to draw down on that line of credit at all or that he was prevented from taking any action based on the denial of the line of credit. The denial of a line of credit (especially a personal line of credit where there is no alleged resulting harm) is not "akin" or "substantially equivalent" to the burdens imposed by provisional remedies (*i.e*., arrest, attachment, replevin or injunction) and, therefore, cannot constitute a "special injury" for a malicious prosecution claim.

Carter claims that he "will present evidence" of "the loss of business opportunities to him, personally." (*Id.*, ¶ 173.) He alleges that he would have received a fee from Roc Nation for services associated with a deal. However, any alleged lost business must be both "specific" and "measurable" to constitute a special injury. *See Kanciper v. Lato*, 989 F. Supp. 2d 216, 237 (E.D.N.Y. 2013). Thus, Carter must identify specific business lost with "sufficient particularity to identify actual losses and be related causally to the alleged tortious acts." *Id.* Round numbers and general allegations of lost money are insufficient. *Id.* Here, Carter does not commit to a round number or any number at all. There are no allegations as to what these lost business opportunities were, how their loss resulted from the lawsuit, or, notably, how they are distinct from allegations regarding Roc Nation. *See Liberty Synergistics, Inc. v. Microflo, Ltd.*, 50 F. Supp. 3d 267, 295 (E.D.N.Y 2014) (holding that merely alleging lost business opportunities as a result of a lawsuit

absent an explanation of what the losses were and how the underlying litigation caused them does not meet the special injury requirement). Therefore, the allegation does not meet the standard for an alleged "special injury" under New York law. *See, e.g.*, *Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*, No. 11 Civ. 3327(ER), 2013 WL 417406, at *15 (S.D.N.Y. Feb. 4, 2013) (plaintiff business failed to sufficiently assert special injury arising from an eviction proceeding commenced in 2009 where it failed to allege that the eviction proceeding caused it to shut down and only made the general allegation that the proceeding interfered with its lease and, thus, its business); *Engel*, 182 F.3d at 132 (holding that attorney failed to assert special injury where he alleged the loss of a client).

**2. Carter fails to state a claim for malicious prosecution because the underlying lawsuit was dismissed pursuant to a compromise or inducement.**

The voluntary dismissal of a lawsuit is not a "termination in favor of the plaintiff" if the dismissal resulted from an inducement from the defendant or as part of an agreement, compromise, or settlement with the defendant. Here, the underlying lawsuit was voluntarily dismissed in exchange for a commitment by: (i) Carter and his attorneys and agents not to harass or interact with, among others, Doe; and (2) Carter and his attorneys to withdraw a Rule 11 motion.

A termination of the underlying lawsuit in favor of the plaintiff is an essential element of a malicious prosecution claim, without which the plaintiff cannot prevail. Courts have repeatedly held that this element is not satisfied where the allegedly malicious lawsuit was dismissed as the result of an inducement, agreement, compromise, or settlement. *See, e.g.*, *Mobile Training & Educ., Inc. v. Aviation Ground Sch. of Am.*, No. 602342/08, 2010 WL 3310257, at *8 (N.Y. Sup. Ct. June 23, 2010) ("It is settled that if the case was voluntarily dismissed as a result of a settlement or compromise, it would not support a claim for malicious prosecution.").

In the Third Amended Complaint, Carter refers to Buzbee's personal outside counsel's email setting forth the terms of the dismissal of Doe's lawsuit. (Dkt. 145, ¶ 151.) In that email, Buzbee's counsel, Marc Kasowitz, proposed an agreement on February 4, 2025 that: (i) Carter and his attorneys would first withdraw the Rule 11 motion; (ii) Doe would, ten (10) days later, withdraw her complaint with prejudice; and (iii) Carter and his attorneys and agents would not harass or otherwise interact with Doe (along with other Buzbee clients) and certain other individuals. (Exhibit D – Declaration of Marc E. Kasowitz and attached email agreement with Alex Spiro.) Carter accepted the proposal, with his attorney responding "OK" on the same day. (*Id.*) Carter's counsel prepared a letter notifying the Judge that the Rule 11 motion was withdrawn. That letter was dated February 4, 2025 (the same day as the email agreement), and it was filed with the court on the following day. (Exhibit E – Withdrawal of Rule 11 Motion.) Ten days later, as agreed, Doe filed a notice of her voluntary dismissal of the case. (Exhibit F – Notice of Voluntary Dismissal.) The dismissal of the underlying lawsuit pursuant to an inducement, agreement or compromise precludes a claim for malicious prosecution arising out of the underlying lawsuit.

## IV. CONCLUSION

The Third Amended Complaint is due to be dismissed without prejudice as to Doe pursuant to Rule 12(b)(2). The Court lacks personal jurisdiction over Doe because both claims asserted against her sound in defamation and thus are excluded from the scope of New York's long-arm statute. To the extent the Court determines that it does have personal jurisdiction over Doe, Carter fails to state a claim upon which relief can be granted, and the Third Amended Complaint should be dismissed with prejudice. California law applies to the defamation claim, and that state's fair report privilege provides absolute protection for Doe's statements about her case. The malicious

prosecution claim fails due to the absence of a special injury and because the underlying case was dismissed pursuant to a compromise.

Dated: September 1, 2026

Respectfully Submitted,

*/s/ J. Blair Newman, Jr.*

J. Blair Newman, Jr.
McDowell Knight Roedder & Sledge, LLC
11 North Water Street, Ste. 13290
Mobile, AL 36602
Telephone: (251) 432-5300
bnewman@mcdowellknight.com
Attorney for Defendant Jane Doe

Certificate of Compliance

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and the Individual Rules and Practices in Civil Cases for The Honorable Dale E. Ho, the undersigned counsel certifies that the foregoing Memorandum of Law in Support of Defendant's Motion to Dismiss complies with the word-count limitation of Local Civil Rule 7.1(c) and the page limitation of the Individual Rules because it contains 8,629 words and 25 pages, excluding the caption, table of contents, table of authorities, signature block, and this certificate. In making this certification, undersigned counsel has relied on the word count of the word-processing program used to prepare this document, Microsoft Word.

Dated: Sept. 1, 2026

*/s/ J. Blair Newman, Jr.*