**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHAWN COREY CARTER,<br><br>Plaintiff,<br><br>-against-<br><br>ANTHONY BUZBEE, DAVID FORTNEY, ANTHONY G. BUZBEE, LP (d/b/a THE BUZBEE LAW FIRM), ANTIGONE CURIS, CURIS LAW, PLLC, and JANE DOE,<br><br>Defendants. | Case No.: 1:26-cv-02775-DEH |

**DEFENDANT ANTHONY BUZBEE, DAVID FORTNEY, AND ANTHONY G. BUZBEE LP'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF SHAWN CARTER'S THIRD AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1
BACKGROUND ..... 2
ARGUMENT ..... 9
I. LEGAL STANDARD ..... 9
II. CARTER FAILS TO STATE A CLAIM FOR MALICIOUS PROSECUTION ..... 10
A. The Buzbee Parties Had Probable Cause ..... 11
B. Carter Fails To Overcome The Existence Of Probable Cause ..... 13
C. The TAC Fails To Plead Malice ..... 17
D. The TAC Fails To Plead Special Injury ..... 18
III. CARTER'S SECTION 487 CLAIM ALSO FAILS ..... 20
A. Section 487 Does Not Reach Attorney Conduct in Federal Court ..... 20
B. Carter Lacks Standing to Maintain a Section 487 Claim ..... 23
C. Carter Fails to Adequately Plead Intentional Deceit ..... 24
CONCLUSION ..... 25
CERTIFICATE OF COMPLIANCE ..... 27

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Abrams v. Donati*
66 N.Y.2d 951 .......... 19

*Am. Dental Ass'n v. Cigna Corp.*
605 F.3d 1283 (11th Cir. 2010) .......... 18

*Amman v. Sharestates Inc.*
21-cv-2766, 2026 WL 743267 (E.D.N.Y. Mar. 17, 2026) .......... 21

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*
28 F.4th 343 (2d Cir. 2022) .......... 9, 10, 16

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 9, 14

*Bass Oil and Chemicals LLC v. Bass*
43 Misc.3d 1217(A) (N.Y. Sup. Ct., Kings Cnty. 2014) .......... 18

*Black v. Green Harbor Homeowners' Ass'n*
37 A.D.3d 1013 (3d Dep't 2007) .......... 12

*Bongiorno v. Baquet*
No. 20-cv-7288, 2021 WL 4311169 (S.D.N.Y. Sept. 20, 2021) .......... 10

*Brown v. City of New York*
92 A.D.2d 15 (1st Dep't 1983) .......... 15

*Brown v. Daikin Am., Inc.*
756 F.3d 219 (2d Cir. 2014) .......... 9

*Burt v. Smith*
181 N.Y. 1 (1905) .......... 11

*Butler v. Ratner*
210 A.D.2d 691 (3d Dep't 1994) .......... 11

*Calhoun v. Cnty. of Herkimer*
169 A.D.3d 1495 (4th Dep't 2019) .......... 12

*Castro v. E. End Plastic, Reconstructive & Hand Surgery, P.C.*
47 A.D.3d 608 (2d Dep't 2008) .......... 10

*Chambers v. Time Warner, Inc.*
282 F.3d 147 (2d Cir. 2002) .......... 7

*Covert v. County of Westchester*
202 A.D.2d 384 (2d Dep't 1994) ....................15

*Delaney v. HC2, Inc.*
761 F. Supp. 3d 641 (S.D.N.Y. 2025) aff'd 2026 WL 366443 (2d Cir. Feb. 10, 2026)...20, 21, 22

*Diamond v. Strassberg*
751 F.Supp. 1152 (S.D.N.Y. 1990)....................19

*Doe v. Combs*
No. 24-cv-7975 (S.D.N.Y.)......1, 4, 5, 6, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 20, 22, 23, 24, 25

*Eckhart v. Fox News Network, LLC*
No. 20-CV-5593, 2025 WL 786536 (S.D.N.Y. Mar. 12, 2025), *aff'd*, No. 25-1538, 2026 WL 1113472 (2d Cir. Apr. 24, 2026) ....................12

*Engel v. CBS, Inc.*
93 N.Y.2d 195 (1999) ....................17, 18, 20

*Facebook, Inc. v. DLA Piper L.L.P.*
134 A.D.3d 610 (1st Dep't 2015) ....................11, 24, 25

*Fink v. Shawangunk Conservancy, Inc.*
15 A.D.3d 754....................12

*Fisher v. Big Squeeze (NY), Inc.*
349 F.Supp.2d 483 (E.D.N.Y. 2004) ....................19

*Garnett v. RLX Tech. Inc.*
632 F. Supp. 3d 574 (S.D.N.Y. 2022)....................10

*Gunn v. Milani*
No. 20-CV-2681, 2024 WL 4124319 (S.D.N.Y. Sept. 9, 2024)....................12

*Hadges v. Yonkers Racing Corp.*
48 F.3d 1320 (2d Cir. 1995)....................11

*Haggerty v. Ciarelli & Dempsey*
374 Fed. App'x 92 (2d Cir. 2010)....................25

*Hornstein v. Wolf*
109 A.D.2d 129 (2d Dep't 1985) ....................17, 20

*Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*
62 F.3d 69 (2d Cir. 1995) ....................7

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*
146 F.3d 66 (2d Cir. 1998)....................................................................................4

*Jeffreys v. Rossi*
275 F.Supp.2d 463 (S.D.N.Y. 2003)....................................................................14

*Jones v. Niagara Frontier Transp. Authority (NFTA)*
836 F.2d 731 (2d Cir. 1987)................................................................................19

*Jovanovic v. City of New York*
486 Fed. App'x 149 (2d Cir. 2012)......................................................................11

*Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*
494 Fed. App'x 153 (2d Cir. 2012)......................................................................16

*Levin v. Epshteyn*
No. 503842/2012, 43 Misc. 3d 1211(A) (N.Y. Sup. Ct., Kings Cnty. 2014) ..........................18

*Levitin v. Miller*
No. 92 Civ. 0520, 1994 WL 376078 (S.D.N.Y. 1994) ..........................................................16

*Lincoln First Bank of Rochester v. Siegel*
60 A.D.2d 270 (4th Dep't 1977)..............................................................10, 19, 21

*Lipin v. Hunt*
14-cv-1081, 2015 WL 1344406 (S.D.N.Y. Mar. 20, 2015)...............................................23

*O'Callaghan v. Sifre*
537 F. Supp. 2d 594 (S.D.N.Y. 2008)..................................................................24

*Oliveri v. Thompson*
803 F.2d 1265 (2d Cir. 1986)..............................................................................13

*Panetta v. Crowley*
460 F.3d 388 (2d Cir. 2006)................................................................................16

*People v. Spicola*
16 N.Y.3d 441 (2011) ..........................................................................................15

*Rogath v. Koegel*
96-cv-8729, 1998 WL 695668 (S.D.N.Y. Oct. 6, 1998)..................................................23

*Rothstein v. Carriere*
373 F.3d 275 (2d Cir. 2004)................................................................................15

*Rubin v. Lutfy*
25 Misc.3d 1242(A) (N.Y. Sup. Ct., N.Y. Cnty. 2009)..........................................................19

*Samuels v. Wilder*
906 F.2d 272 (7th Cir. 1990) ....................................................................................13

*Sankin v. Abeshouse*
545 F. Supp. 2d 324 (S.D.N.Y. 2008)...........................................................................20

*Savino v. City of New York*
331 F.3d 63 (2d Cir. 2003)...........................................................................................11

*Savitt v. Greenberg Traurig, L.L.P.*
126 A.D.3d 506 (1st Dep't 2015) .................................................................................24

*Wade Park Land Holdings, LLC v. Kalikow*
No. 21-CV-1657, 2023 WL 2614243 (S.D.N.Y. Mar. 23, 2023), *aff'd*, No. 23-591-bk,
2024 WL 3024648 (2d Cir. June 17, 2024) ...................................................................17

*Wilhelmina Models, Inc. v. Fleisher*
19 A.D.3d 267 (1st Dep't 2005) ...................................................................................19

*World Wrestling Entm't, Inc. v. Jakks Pacific, Inc.*
425 F. Supp. 2d 484 (S.D.N.Y. 2006)..............................................................................4

Statutes

28 U.S.C. § 1927 .........................................................................................................21

New York Judiciary Law § 487 ...........................................2, 8, 9, 20, 21, 22, 23, 24, 25

Other Authorities

Rule 11 ....................................................................................9, 13, 21, 22, 23

Rule 12(b)(6)...................................................................................................................9

## PRELIMINARY STATEMENT

The irony of this case is that it is being prosecuted by Shawn "Jay-Z" Carter ("Carter") and his attorneys in the absence of probable cause and for an improper purpose. In other words, this case is itself a malicious prosecution. Furthermore, even as Carter and his attorneys histrionically accuse the Buzbee Parties of dishonesty, they have knowingly misrepresented the factual record in the Third Amended Complaint ("TAC"), including by seriously mischaracterizing and overstating the import of a transcript of an "interview" with Defendant Jane Doe ("Doe") that Carter has filed in other courts and cites as the basis for this action.

The precedent that Carter and his attorneys seek to set with this abusive case would be contrary to basic law and profoundly troubling. Carter, a powerful man accused of sexually abusing a child, seeks to weaponize the court system to harass, intimidate, and abuse not merely the victim whom he allegedly raped, but the lawyers who dared to represent her, simply because he contradicts her version of events. But it takes far more than a mere denial of wrongdoing to establish malicious prosecution. Carter, having now had four opportunities to plead a plausible claim against the Buzbee Parties, has fallen woefully short of doing so.

Underneath the conclusory language, name calling, and unreasonable inferences, Carter's factual allegations boil down to very little: he alleges that the Buzbee Parties are lawyers who had a client (Doe) who asserted that Carter sexually assaulted her decades ago when she was thirteen, and that the Buzbee Parties brought a lawsuit on behalf of Doe against Carter, who claims to be innocent. *See Doe v. Combs*, No. 24-cv-7975 (S.D.N.Y.) (the "Underlying Action"). Filing a lawsuit on behalf of a client who alleges that she was sexually assaulted is not wrongful. There is nothing inherently improbable or legally invalid about such a claim. Carter does his best to argue that Doe is an imperfect victim and that tangential details of her story are contradicted by other evidence, so her case against him was clearly meritless. But, Carter dramatically overstates the

significance of nitpicking Doe's recollection of tangential details from a traumatic night decades ago. After all, it would not be surprising that a woman who was allegedly *drugged and raped twenty-six years ago at the age of thirteen* might not have a perfect recollection of the events. That does not categorically disprove her claims, much less suggest that *her attorneys* lacked probable cause to file an action on her behalf. Even if Carter were correct that Doe's claims are untrue (which has never been established), Carter alleges no *facts* that reasonably support the inference that *the Buzbee Parties* lacked probable cause to prosecute them, much less that they *knew* Doe's claims to be untrue. Nor has Carter adequately alleged special damages. His claim is fatally flawed.

So too is Carter's new claim for violation of the New York Judiciary Law § 487. Such a claim is not viable in the federal context, as it conflicts with the rules governing attorney conduct in federal court. Carter also lacks standing to assert a claim against the Buzbee Parties under Section 487. And, even if Carter could assert a Section 487 claim in this Court, he has failed to sufficiently plead intentionally deceptive conduct that caused him harm with the requisite particularity. This claim too must fail. This case is eminently deserving of dismissal.

## BACKGROUND

The TAC, which is Carter's fourth pleading, asserts two causes of action against the Buzbee Parties, for malicious prosecution and violation of New York Judiciary Law § 487. TAC ¶¶ 184–216. Much of the TAC consists of mere character assassination, as Carter makes various personal attacks on the Buzbee Parties, and tries to portray lawyers soliciting for clients and aggressively litigating on their behalf as something sinister. *E.g.,* TAC ¶¶ 50-78. The language in the TAC is, to say the least, melodramatic. *E.g., id.* ¶¶ 6, 13 ("heinous"), 2 ("unconstrained by the truth or law"), 3 ("web of lies and ethical breaches"), 30 ("vile, extortionate scheme… incomprehensible to

people of decency"). Underneath the TAC's rather hysterical and conclusory rhetoric, however, its *factual* allegations amount to very little.[1]

As alleged in the TAC, "on September 17, 2024, Sean 'Diddy' Combs ("Combs") was arrested and charged in a three-count indictment with racketeering conspiracy, sex trafficking, and transportation to engage in prostitution." TAC ¶ 50. Thereafter, the Buzbee Parties, who are litigation attorneys, began to represent numerous alleged victims of Combs and his associates, including Doe, who was referred to the Buzbee Parties by another law firm, AVA Law. *Id.* ¶¶ 79, 83-84. Carter alleges that the Buzbee Parties, who were representing numerous plaintiffs (*id.* ¶¶ 66, 79), hurried to file before the close of certain statutes of limitations. *Id.* ¶ 88.

The TAC reflects that Carter and his attorneys are aware that a pre-filing investigation into Doe's allegations took place. For instance, the TAC alleges that AVA Law, the law firm that referred Doe to the Buzbee Parties, has testified that Doe "was interviewed and evaluated by an intake specialist as well as at least one attorney." *Id.* ¶ 83. The TAC further alleges that Buzbee has testified that "the Buzbee Law Firm 'also engaged in further rigorous due diligence to investigate the veracity and legal viability of [Doe]'s claim' which included '[a]t least two attorneys [who] interviewed the plaintiff and fact-checked various aspects of her account.'" *Id.* ¶ 85. The TAC pronounces, as a *pure conclusion*, that these statements are "lies," but that bare assertion is not a properly pleaded fact, but rather pure speculation that lacks factual support and is entitled to no weight, particularly since it appears to be based on nothing more than Carter's assertion that an investigation could not have been conducted with sufficient thoroughness over several days. *Id.* ¶

[1] As is usual on a motion to dismiss, the Buzbee Parties will assume the truth of the well-pleaded *factual* allegations (for purposes of this motion only), though not mere conclusions, unreasonable inferences, pure speculation, and editorializing, which, unfortunately and inappropriately, comprise a substantial portion of the TAC.

86. The TAC also concedes that Doe executed *multiple* affidavits about her allegations, which were in the Buzbee Parties' possession (albeit pronouncing, as another *pure conclusion*, that such affidavits were "false"). *Id.* ¶¶ 27, 29, 96.

On or about October 20, 2024, Doe, represented by the Buzbee Parties, filed the Underlying Action in the S.D.N.Y. against Combs and others. *Id.* ¶¶ 97–99. The complaint in the Underlying Action ("Doe Complaint") alleged that Doe, then thirteen years old, was taken to a house after the September 7, 2000 MTV Video Music Awards ("VMAs"), where Combs and Carter (originally identified as "Celebrity A") sexually assaulted her when she was alone in a bedroom. *Id.* ¶¶ 100–101; Declaration of Jessica N. Meyers, dated September 1, 2026 ("Meyers-Decl."), Ex. 1 (the Doe Complaint).[2] The Doe Complaint alleges that Doe accepted a drink before entering the bedroom and "began to feel woozy and lightheaded, making her need to lie down." Doe Compl. ¶¶ 45-57.

On November 5, 2024, Doe and the Buzbee Parties sent Carter a demand letter inviting him to participate in mediation. TAC ¶¶ 105–107. Instead, Carter filed a separate action against Anthony Buzbee and the Buzbee Law Firm in California Superior Court on November 18, 2024 ("California Action"), claiming that the demand letters were extortion. *Id.* ¶ 111. In the TAC, Carter again alleges that Doe's demand letter was extortionate; however, the Superior Court in the California Action ultimately *dismissed the California Action in its entirety and with prejudice* by Order dated June 30, 2025. Meyers-Decl., ¶ 12.[3]

On December 8, 2024, the Buzbee Parties and Doe filed an amended complaint in the

[2] The Court may take judicial notice of the filings and orders in the Underlying Action and California Action. *See, e.g.*, *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998); *World Wrestling Entm't, Inc. v. Jakks Pacific, Inc.*, 425 F. Supp. 2d 484, 508 n.16 (S.D.N.Y. 2006).

[3] Carter appealed. The California Court of Appeal has not yet rendered a decision, but a three-justice panel issued a tentative ruling to affirm the Order at oral argument on August 20, 2026. Meyers-Decl., ¶ 12.

Underlying Action identifying Carter by name as "Celebrity A" and asserting claims against him for allegedly raping Doe at the age of thirteen. TAC ¶¶ 112–113. Carter alleges that, as of December 2024, Doe had executed affidavits for the Buzbee Parties affirming her allegations against him and made allegations of sexual assault against Carter publicly. *Id.* ¶ 27. Specifically, in the second week of December 2024, Doe participated in a televised NBC News interview in which she discussed her allegations. *Id.* ¶ 130. Carter alleges that Doe's statements during the interview had some inconsistencies, but she did not withdraw her allegations and continued to affirm that he had raped her when she was thirteen. *Id.* ¶¶ 135–136. Notably, Carter points to no inconsistencies with respect to the sexual assault itself, and focuses instead on Doe's recollection of tangential details of the evening two decades earlier, such as how many minutes it took her to drive to the house where the rape allegedly occurred.

Once named, Carter launched a barrage of hyperaggressive filings in the Underlying Action. Meyers-Decl., ¶ 6. On December 26, 2024, the Honorable Analisa Torres entered an Order in the Underlying Action allowing Doe to remain anonymous in the early stages of the case, but cautioned: "Plaintiff is advised that… the Court intends to revisit this decision at a future date." Meyers-Decl., Ex. 2 at 4. With respect to Carter's other filings, the Court observed:

> Since Carter's attorney first appeared in this case seventeen days ago, he has submitted a litany of letters and motions attempting to impugn the character of Plaintiff's lawyer, many of them expounding on the purported "urgency" of this case….
>
> Carter's lawyer's relentless filing of combative motions containing inflammatory language and ad hominem attacks is inappropriate, a waste of judicial resources, and a tactic unlikely to benefit his client. The Court will not fast-track the judicial process merely because counsel demands it.

The Court also *denied* Carter's request to strike Doe's Complaint, stating: "On the merits, Carter's motion to strike is denied," and noting that "Carter's motion, which summarily asserts that Plaintiff's claims are 'baseless' and 'salacious,' does not clear that high bar." *Id.*

On January 8, 2025, Carter filed a motion for sanctions, which Buzbee opposed. Meyers-Decl., ¶ 8. On February 4, 2025, Carter filed a letter with the Court in the Underlying Action withdrawing his Motion for Sanctions. *Id.* ¶ 9. Ten days later, on February 14, 2025, Doe filed a voluntary dismissal of the Underlying Action, with prejudice, which was approved by the Court on February 18, 2025. *Id.* The parties dispute whether the dismissal was pursuant to a settlement. Recognizing that the TAC is artfully pleaded to avoid detailing the full circumstances of Doe's dismissal, the Buzbee Parties do not expect this Court to resolve that issue in the context of this Motion, and if necessary will raise the issue later in the context of summary judgment.[4]

Carter alleges that "one week after the voluntary dismissal with prejudice, Doe admitted in a recorded interview that it was all a sham, confessing that Carter 'didn't sexually assault' her and that 'Buzbee brought Jay-Z into it.'" TAC ¶ 4. Throughout his TAC, Carter extensively relies on and quotes excerpts from a transcript of this "interview" with Doe. *E.g.*, *id.* ¶¶ 4 ("Doe admitted in a recorded interview that it was all a sham"), 29 ("One week later, Doe admitted to investigators that her allegations against Carter were false. In a conversation recorded on February 21, 2025, Doe recanted her story…"). Carter submitted the full transcript of this purported "interview" in the California Action, but did not attach it to his TAC. Meyers-Decl., ¶ 11, Ex. 4 (the "Transcript"). Nonetheless, because it is heavily relied upon in the TAC, the Court may properly consider this

[4] However, for context, the Buzbee Parties submitted a declaration from their attorney Marc Kasowitz in the California Action, attaching correspondence with Carter's then-attorney Alex Spiro of Quinn Emanuel. The correspondence reflects that, on February 4, 2025, Mr. Spiro confirmed in writing an understanding with Mr. Kasowitz that the sanctions motion would be withdrawn; the Underlying Action would dismissed ten days thereafter; and Carter would commit not to "harass or otherwise interact" with Buzbee, his family, or his clients, which obviously included Doe. Carter denies that there was a settlement, but cites to a declaration from Mr. Spiro (TAC ¶ 166), in which Mr. Spiro conceded that: "I told Mr. Kasowitz that we would hold in abeyance further pursuit of our motion, without prejudice, pending Mr. Buzbee's dismissal of the lawsuit." Meyers-Decl, Ex. 3 at ¶ 10. The Court may note that Mr. Spiro's declaration admits to an agreed exchange in connection with the withdrawal of the Underlying Action.

transcript in ruling on this Motion. *See, e.g.*, *Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 71-72 (2d Cir. 1995); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153, 154 (2d Cir. 2002) ("where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint…. [W]e reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion").

The Transcript does not support the conclusions stated in the TAC. Carter's transcript reflects that Doe, ambushed, asked at the outset: "Who are you guys?... How did you find out where I am? How did you find out who I am?" Transcript at 2. Notwithstanding the Order from Judge Torres permitting Doe to remain anonymous, Carter's agents began *by threatening to publicly expose her identity* as a woman alleging childhood sexual assault if she failed to cooperate with them: *"if you cooperate and kind of tell us what's going on, everything remains a Jane Doe.* We don't tell anybody who you are or what's going on, nothing." *Id.* at 3 (emphasis added). Even so, when asked, "So something happened? Or did [Buzbee] tell you what happened?", Doe answered: "No, *he didn't tell me what happened, something actually happened when I was 13…. It involved Jay-Z and Diddy…*" *Id.* at 6. And when asked, "So as far as you're concerned, the whole story you gave is accurate," Carter's transcript reflects that Doe responded: "*Yes*." *Id.* at 7. When asked, "I mean Jay-Z, they, honestly, you feel like they raped you?", Doe's response, repeatedly quoted by Carter, was at most ambiguous ("It was more Diddy, but Buzbee brought Jay-Z into it"), and does not come close to suggesting that Buzbee had any reason to doubt the validity of claims against Carter, particularly when juxtaposed with Doe's very next answer: *"He [Buzbee] asked if Jay-Z was there, I said, yes…. "* *Id.* at 8. And when asked "So when you

originally sat down at the coffee shop, you told him [Buzbee] that Diddy did something to you?", Doe again responded: *"Yes, 'cause it started out, it was just Diddy and [redacted], and then Jay-Z came in." Id.* at 8.

In other words, Carter's "interview," which he advances in this Court as truthful statements by Doe and a central basis for this malicious prosecution action, reflects that Doe, who had first been threatened by Carter's agents, nonetheless stated that she had told Buzbee that something *had* actually happened, that it *did* involve Carter (Jay-Z), and that *Carter was there* when she was raped as a thirteen-year-old. Nothing in the Transcript indicates that the Buzbee Parties knew there were no viable claims against Carter. Carter is also forced to acknowledge that despite his best efforts to characterize the "interview" as a "confession" or Doe "recanting" her allegations, she subsequently filed a declaration standing by her allegations. TAC ¶ 29.

As against the Buzbee Parties, Carter asserts claims for malicious prosecution and violation of New York Judiciary Law § 487. With respect to malicious prosecution, Carter alleges that Doe's allegations were inherently improbable and that she is unreliable; that various details of her account of the night when she was allegedly raped are contradicted by other persons' recollections or Internet sources; and that the Buzbee Parties filed too rapidly after being retained to have done adequate diligence. TAC ¶¶ 188-189. For instance, Carter alleges Doe's father later stated that he did not recall picking her up after the alleged rape; that photographs on the internet show that Carter attended a party at a club on the night of the assault; and that Doe mentioned a jumbotron when, according to Internet research, there was no jumbotron at the VMAs. *Id.* Carter alleges in conclusory fashion that the Buzbee Parties acted with "malice," asserting that the underlying Action was filed for the "improper and ulterior purpose of using it to obtain a collateral advantage in their ongoing malicious scheme to blackmail, extort, and intimidate Carter[.]" *Id.* ¶ 190. As for

damages, Carter points to alleged contracts and credit lines that he or companies associated with him did not receive after being sued. *Id.* ¶ 192. With respect to the Section 487 claim, Carter alleges that the Buzbee Parties acted deceptively by (1) signing and filing the Complaint in the Underlying Action, apparently on the theory that it violated Rule 11 to do so (*id.* ¶ 198); (2) having Buzbee sign the complaints in the Underlying Action prior to obtaining pro hac vice admission (*id.* ¶ 201); and (3) by purportedly making a false statement to Doe to urge her to dismiss her claims against Carter (*id.* ¶ 202).

## ARGUMENT

### I. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*[5] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 225 (2d Cir. 2014).

When conducting this analysis, "district courts may 'permissibly consider documents other than the complaint' for the truth of their contents if they 'are attached to the complaint or incorporated in it by reference.'" *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th

[5] Internal citations, quotation marks, and alterations are omitted throughout, unless otherwise noted.

343, 352 n.3 (2d Cir. 2022) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)). Documents "integral to the complaint and partially quoted therein may be incorporated by reference in full." *Id.*; *see also Bongiorno v. Baquet*, No. 20-cv-7288, 2021 WL 4311169, at *10 (S.D.N.Y. Sept. 20, 2021) ("A clever plaintiff cannot avoid the court's review of a communication 'as a whole' as required by the law by quoting only a portion of the communication and omitting the remainder."). District courts may also "take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents." *Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 582 n.2 (S.D.N.Y. 2022).

## II. CARTER FAILS TO STATE A CLAIM FOR MALICIOUS PROSECUTION

Carter's malicious prosecution claim is frivolous. New York recognizes six elements for malicious prosecution of a civil action: "(1) prosecution of a civil action against the plaintiff, (2) by or at the instance of the defendant, (3) without probable cause, (4) with malice, (5) which terminated in favor of the plaintiff, and (6) causing special injury." *Castro v. E. End Plastic, Reconstructive & Hand Surgery, P.C.*, 47 A.D.3d 608, 609 (2d Dep't 2008). The requisite elements are missing. *First,* the Buzbee Parties had probable cause to prosecute Doe's claims. The probable cause analysis is straightforward: they had a client who alleged that Carter raped her and, as Carter is forced to concede, she was willing to sign *multiple* affidavits and declarations to that effect. *Second,* there is nothing in Carter's pleading that reasonably supports the inference that Buzbee acted with malice or had any other purpose than prosecuting a legal claim. *Third,* Carter fails to allege special injury, which requires something in the nature of being subjected to a provisional remedy. A fourth defect – albeit not fully at issue in this Motion – is that the Underlying Action did not terminate in a manner reflective of the merits.

### A. The Buzbee Parties Had Probable Cause

The Buzbee Parties had probable cause to file and prosecute Doe's claims in the Underlying Action. The existence of probable cause is "a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). Probable cause exists when facts and circumstances are "strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant." *Burt v. Smith*, 181 N.Y. 1, 5–6 (1905). The absence of probable cause must be "patent," *Butler v. Ratner*, 210 A.D.2d 691, 693 (3d Dep't 1994), and "the burden of proof to establish a want of probable cause is on the plaintiffs," *Facebook, Inc. v. DLA Piper L.L.P.*, 134 A.D.3d 610, 614 (1st Dep't 2015). Allegations that are "entirely conclusory" are insufficient. *Id.*

Doe alleged that Carter was a perpetrator of sexual assault and executed multiple affidavits confirming her allegations. TAC ¶¶ 85, 100–102. The central thrust of her claim, as stated in the Doe Complaint, was that she was raped in a private bedroom by Combs (then under federal indictment) and Carter (a known associate of Combs), on a night when both men were in New York. There is nothing inherently improbable about such an allegation, and the only witnesses to the central event would be those directly involved in the rape – *i.e.*, Doe, and the adults allegedly responsible for her abuse. If Doe was prepared to make such an allegation and confirm its truth (which the TAC concedes she did repeatedly, in court filings, affidavits, and public statements), then the Buzbee Parties had a sufficient basis to proceed against Carter. It is well-established that "an attorney is entitled to rely on the objectively reasonable representations of the client." *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329-30 (2d Cir. 1995); *Jovanovic v. City of New York*, 486 Fed. App'x 149, 152 (2d Cir. 2012) ("The detailed account given by [an alleged victim of sexual assault]—without any obvious reason for skepticism—provided sufficient probable cause.").

That obvious reality is further bolstered by the fact that Judge Torres rejected Carter's attacks on the Doe Complaint in the Underlying Action, denying his motion to strike in the Order of December 26, 2024: "On the merits, Carter's motion to strike is denied." New York law generally recognizes that "prior judicial recognition of potential merit of the underlying case creates a presumption that it did not lack probable cause[.]" *Fink v. Shawangunk Conservancy, Inc.*, 15 A.D.3d 754, 755. The December 26, 2024 Order creates a presumption that probable cause existed, which Carter fails to overcome. Meyers-Decl. Ex. 2.

Indeed, had the Underlying Action proceeded, Carter would not have been able to obtain summary judgment, either. Triable issues of fact would have precluded summary judgment, since Doe continued to attest to the truthfulness of her account under oath after dismissal. Challenges to her credibility would be for the factfinder to weigh at trial, but would not establish that her claims lacked merit as a matter of law. *See Eckhart v. Fox News Network, LLC*, No. 20-CV-5593, 2025 WL 786536, at *12 (S.D.N.Y. Mar. 12, 2025) ("At this stage, the Court must accept Eckhart's testimony—that Henry forced her into sexual acts against her will—as true. . . . Eckhart's testimony 'make[s] it arguable that [her] claim has merit,' which precludes Henry's bid for summary judgment here."), *aff'd*, No. 25-1538, 2026 WL 1113472 (2d Cir. Apr. 24, 2026); *see also Gunn v. Milani*, No. 20-CV-2681, 2024 WL 4124319, at *6 (S.D.N.Y. Sept. 9, 2024) ("[E]ven if the non-movant's evidence is thin, a non-movant's own sworn statement is adequate to counter summary judgment."). A claim that would survive summary judgment cannot be deemed *patently* without probable cause. *Calhoun v. Cnty. of Herkimer*, 169 A.D.3d 1495, 1499 (4th Dep't 2019) ("[A] claim may not be deemed groundless where . . . the plaintiff has made a sufficient evidentiary showing to forestall summary judgment and has presented sufficient evidence at trial to prevent the entry of judgment against him or her as a matter of law"); *Black v. Green Harbor Homeowners'*

*Ass'n*, 37 A.D.3d 1013, 1014 (3d Dep't 2007) (malicious prosecution unavailable where "decisions partially denying summary judgment in the prior litigation, as well as Supreme Court's denial of plaintiffs' motion for a directed verdict … recognize the conflicting facts and issues in that litigation and the potential merit of at least some causes of action in the underlying complaint").

### B. Carter Fails To Overcome The Existence Of Probable Cause

In an effort to plead around the reality that lawyers whose client alleges a facially plausible sexual assault have probable cause to file suit, Carter argues in his TAC, alternately: (1) that Buzbee could not have adequately investigated Doe's claims because the Underlying Action was filed about a week after Doe was referred; (2) that various contextual details of Doe's story have been contradicted by Carter or other witnesses, or Internet research, and that Doe is unreliable and has mental health issues; and (3) that Doe "confessed" that her claims were false to Carter's investigators after the case was dismissed, so Buzbee must have known the claim was meritless. None of these arguments withstand scrutiny.

**Investigation.** As for Carter's argument that there was an inadequate investigation, Carter seems to assume, incorrectly, that a party bringing a claim must have complete proof before filing. Indeed, Carter appears to suggest that the Buzbee Parties were required to assume that their client was lying, do an in-depth psychological profile on her, interview all possible corroborating witnesses, and extensively research every tangential detail of Doe's movements on the date of the alleged assault two decades ago before filing her claim. But the law imposes no such requirement. "A plaintiff does not have to be prepared to meet a summary judgment motion as soon as the complaint is filed." *Oliveri v. Thompson*, 803 F.2d 1265, 1279 (2d Cir. 1986). An attorney's obligations when filing a case are governed by the Federal Rules of Civil Procedure, including Rule 11, none of which require absolute proof before filing. *See, e.g.*, *Samuels v. Wilder*, 906 F.2d

272, 274 (7th Cir. 1990) ("Counsel must investigate, but need not have in hand before filing enough proof to establish the case.").

Moreover, the TAC acknowledges that Doe executed declarations and that, according to the defendants, the Buzbee Law Firm "engaged in further rigorous due diligence to investigate the veracity and legal viability of [Doe]'s claim," that "[a]t least two attorneys interviewed the plaintiff and fact-checked various aspects of her account," and that the firm "also engaged a retired police detective to gather facts about elements of Jane Doe's claim." TAC ¶ 85. Of course, the TAC pronounces, without any basis, that these are "lies;" but, that is a speculative and conclusory assertion, not a properly pleaded fact, and need not be accepted. *Ashcroft*, 556 U.S. at 678. In any event, the inference Carter would have this Court draw is that a sufficient investigation could not have been concluded in six days. But that does not logically follow. Doe's claim involved a sexual assault that allegedly occurred in a private bedroom more than two decades ago, the only witnesses to which would be the victim and those responsible. The primary investigation needed to support probable cause for such an event would simply be a detailed interview of the alleged victim. A lawyer who interviews such a victim and finds her credible has probable cause if her claims are not inherently unbelievable. *Jeffreys v. Rossi*, 275 F.Supp.2d 463, 481 (S.D.N.Y. 2003) (holding "plaintiff's counsel is entitled to rely on the representations of their client, without having to assess his credibility" and noting that the mere existence of some evidence controverting a client's claims "does not conclusively rule out the possibility" of those claims being meritorious, "nor compel plaintiff's counsel to disbelieve their client"). The mere fact that aspects of a client's story are subsequently challenged by the other side does not negate probable cause.

<u>**Credibility.**</u> As for Carter's attacks on Doe's credibility and tangential details of her story, Carter falls woefully short of establishing a basis for malicious prosecution. Fundamentally,

Carter's position has always boiled down to a credibility contest between himself and Doe, and his emphatic assertions that she should not be believed. But the law requires "a malicious prosecution plaintiff to do more than simply prevail in a credibility contest with his accuser." *Rothstein v. Carriere*, 373 F.3d 275, 295 (2d Cir. 2004) ("If the criminal prosecution was otherwise supported by probable cause, for example, the malicious prosecution claim is unavailable, *even if the accuser lied"* (emphasis added)). Thus, attacks on Doe's account of the underlying events are not sufficient to show a want of probable cause. *See, e.g.*, *Covert v. County of Westchester*, 202 A.D.2d 384, 385 (2d Dep't 1994) ("The existence of conflicting evidence relating to the alleged assault did not negate a finding of probable cause"); *Brown v. City of New York*, 92 A.D.2d 15, 18 (1st Dep't 1983) ("the mere assertion of an alibi, and even the failure to investigate such an alibi to plaintiff's satisfaction, does not overcome the existence of probable cause to prosecute…. probable cause does not require a 'certitude' that a crime has been committed by the suspect").

And, even if Carter were right that Doe's allegations ultimately would be unpersuasive to the trier of fact, it would not follow that the Buzbee Parties *knew* them to be *patently* meritless when the Underlying Action was commenced. Carter would have been entitled in the Underlying Action to attempt to argue at trial that Doe should not be believed because she has a history of mental health issues or that some of the details of Doe's story were inconsistent. On the other hand, a jury might not find it surprising that a thirteen-year-old who was drugged and raped might get some tangential details wrong decades later, or suffer from mental health issues. It is not unheard of for victims of traumatic events to struggle to recount them effectively. *See, e.g., People v. Spicola*, 16 N.Y.3d 441, 465 (2011) ("we have 'long held' evidence of psychological syndromes affecting certain crime victims to be admissible for the purpose of explaining behavior that might be puzzling to a jury"). A jury in the Underlying Action could have considered Carter's arguments

in weighing Doe's credibility, but those arguments would not defeat Doe's claims as a matter of law. Lawyers are not required to assume that their client is lying just because her account of events is disputed. And Carter's self-serving denials of wrongdoing do not alter the analysis, since "protestations of innocence generally does not vitiate probable cause." *Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006).

**"<u>Confession.</u>"** Carter's reliance on Doe's purported "recantation" in an "interview" with his investigators is misguided for a multitude of reasons. First and most obviously, according to Carter's own allegations that "interview" (like many of Carter's attacks on details of Doe's account) *post-dated the termination of the Underlying Action* (TAC ¶¶ 28-29), so the Buzbee Parties could not have been aware of it at while pursuing the Underlying Action. As such, it is irrelevant. "In an action for malicious prosecution, '[t]he propriety of defendants' conduct ... is to be decided by the facts as they appeared to be *at the time the prosecution was instituted*,' not after the action has been determined." *Levitin v. Miller*, No. 92 Civ. 0520, 1994 WL 376078 at *5 (S.D.N.Y. 1994) (emphasis added). To the extent that Carter contends that Doe suggested in the "interview" that Buzbee conspired to invent a claim against Carter, such claim is not supported by the Transcript and is utterly irreconcilable with Carter's principle theory that the Buzbee Parties inadequately investigated Doe's claims. Any such contention lacks supporting *factual* allegations and is contradicted by Doe's actual words.[6]

The Transcript refutes Carter's claim of a "confession" and does not support any speculative contention that Buzbee manufactured Doe's claims. Asked whether "the whole story you gave is accurate," Doe answered: "Yes," adding that her story did *not* come from Buzbee,

[6] As noted above, the full transcription, as a document "integral to the complaint and partially quoted therein," can be considered here. *See Ark. Pub. Emps. Ret. Sys.*, 28 F.4th at 352 n.3; *see also Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 Fed. App'x 153, 156 (2d Cir. 2012).

and that "something actually happened when I was 13," which "involved Jay-Z and Diddy." The Transcript also reflects Doe confirming that Buzbee "asked if Jay-Z was there, I said, yes" and explaining: "'cause it started out, it was just Diddy… and then Jay-Z came in." To be sure, the Transcript reflects a pressured, ambiguous, and contradictory exchange, but it does not reflect that Doe clearly retracting her claim against Carter, much less that she had ever previously given Buzbee reason to doubt her claim. Quite the contrary, the Transcript reflects Doe affirming her claim that she was raped. The Court need not credit Carter's self-serving gloss. *See Wade Park Land Holdings, LLC v. Kalikow*, No. 21-CV-1657, 2023 WL 2614243, at *10 (S.D.N.Y. Mar. 23, 2023) ("A plaintiff cannot avoid dismissal by citing only to a portion of a document upon which it relies and which is integral to its complaint, but also prevent a defendant from challenging the reliance upon that document on a motion to dismiss by the expedience of simply not attaching the document to the complaint."), *aff'd*, No. 23-591-bk, 2024 WL 3024648 (2d Cir. June 17, 2024). And, as Carter concedes, Doe later affirmed her allegations again under oath. TAC ¶ 29.

### C. The TAC Fails To Plead Malice

The TAC also fails to plead malice. On a claim for malicious prosecution "the plaintiff must prove malice, or as the Restatement defines it, *a purpose other than the adjudication of a claim*, and must further prove an *entire lack* of probable cause in the prior proceeding" which "is no easy feat[.]" *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 205 (1999) (emphasis added). Malice requires "conscious falsity" and "more than conclusory, unsubstantiated allegations are necessary." *Hornstein v. Wolf*, 109 A.D.2d 129, 133 (2d Dep't 1985). Carter fails to adequately plead malice, and cannot point to facts that give rise to any reasonable inference that the Buzbee Parties commenced the Underlying Action for any purpose other than to adjudicate Doe's claims. That, after all, is precisely why Doe was referred to them. Carter's malice allegation (TAC ¶ 190) is a conclusory pronouncement that the Buzbee Parties were pursuing objectives other than litigating

a claim when they filed suit against him. But this unexplained pronouncement is a mere conclusion that need not be accepted, particularly where there is an obvious alternate explanation – *i.e.*, that the Buzbee Parties were filing a lawsuit on behalf of a client who alleged that she had been wronged. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) ("courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer").

### D. The TAC Fails To Plead Special Injury

Finally, the malicious prosecution claim fails because Carter has failed to properly plead special injury. Special injury requires "a highly substantial and identifiable interference with person, property, or business" such that "the defendant must abide some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit." *Engel*, 93 N.Y.2d at 205. The standard is equivalent to "those imposed by provisional remedies"—arrest, attachment, injunction, receivership, or notice of pendency. *Id.*; *Levin v. Epshteyn*, No. 503842/2012, 43 Misc. 3d 1211(A) (N.Y. Sup. Ct., Kings Cnty. 2014); *Bass Oil and Chemicals LLC v. Bass*, 43 Misc.3d 1217(A) (N.Y. Sup. Ct., Kings Cnty. 2014).

The TAC vaguely alleges "harm to [Carter's] personal and professional reputation," a purported lost contract for Roc Nation (an entity in which Carter alleges he indirectly holds a 50% equity interest, but that was not named in the Underlying Action and is not a plaintiff in this action), a denied personal credit line, and a denied loan to a company in which Carter owns an interest. TAC ¶¶ 170, 173–175. These allegations do not suffice. First, to the extent that Carter has alleged any identifiable damages at all, such damages were almost exclusively, according to his own allegations, to separate companies that were not named in the Underlying Action and are not parties to this action. Carter tries to plead his way around this by arguing that harm to his company is harm to him, but having chosen to use the corporate form, Carter must live with the consequences

– he and Roc Nation are separate entities. Harm to Roc Nation cannot be recovered by Carter in an action brought solely in his own name. Carter lacks standing to personally claim such purported damages. *Abrams v. Donati*, 66 N.Y.2d 951, 953 ("For a wrong against a corporation a shareholder has no individual cause of action, though he loses the value of his investment or incurs personal liability in an effort to maintain the solvency of the corporation."); *Fisher v. Big Squeeze (NY), Inc.*, 349 F.Supp.2d 483, 488 (E.D.N.Y. 2004) ("The damages… were incurred by the Corporation as an entity."); *Jones v. Niagara Frontier Transp. Authority (NFTA)*, 836 F.2d 731, 736 (2d Cir. 1987) ("A shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation."); *Wilhelmina Models, Inc. v. Fleisher*, 19 A.D.3d 267, 269 (1st Dep't 2005) ("As separate entities from the potential borrower, plaintiffs could not directly profit from the loan proceeds and therefore damages were insufficiently pleaded."). In any event, mere damage to credit or loan opportunities is generally insufficient to show the interference with property needed for special damages. *Lincoln First Bank of Rochester v. Siegel*, 60 A.D.2d 270, 280 (4th Dep't 1977) ("conclusory" allegation that plaintiff suffered "damage in obtaining financing and bonding for his various enterprises" held insufficient); *Wilhelmina Models Inc.,* 19 A.D.3d at 269 (allegation of lost loan insufficient); *Diamond v. Strassberg*, 751 F.Supp. 1152, 1153 (S.D.N.Y. 1990) (allegation of "a diminished credit rating after the commencement of the state action" did "not satisfy the standard under New York law").

Moreover, Carter seems to suggest that the mere fact of being accused of sexual assault is sufficient to constitute special damages, because it had a negative impact on his reputation and, in turn, had a negative impact on his business. But, such claims of reputational damages are generally insufficient. *Rubin v. Lutfy*, 25 Misc.3d 1242(A) (N.Y. Sup. Ct., N.Y. Cnty. 2009) ("The costs in defending a lawsuit and conclusory claim of reputational harm, given plaintiff's 50–year perfect

record is insufficient to assert a claim of special damages"). Carter's claimed damage is too far removed from litigation conduct and is untethered to any provisional remedy obtained in the litigation. *See Sankin v. Abeshouse*, 545 F. Supp. 2d 324, 328 (S.D.N.Y. 2008) (finding plaintiff failed to plead special damages with vague allegations that the underlying action damaged his relationship with the principal of his employer and resulted in his removal as officer). Furthermore, any reputational harm that Carter claims would be no different than what might be suffered by *any* person accused of serious sexual misconduct, and lacks the extreme, unusual quality of special damages. *Engel*, 93 N.Y.2d at 206-207 (finding the "loss of one client along with vague allegations of reputational loss" insufficient to establish special injury and observing that "nothing in the specific facts presented to us gives a basis for concluding that the burden, financial or otherwise, of strategizing around the conflict was *substantially beyond that which would be typical of similar litigation"* (emphasis added)).

Carter's claimed economic injuries related to the ordinary financial demands and reputational risks of defending a lawsuit over allegations of serious misconduct; they are not concrete, court-imposed constraints on Carter's person, property, or business. *Hornstein*, 109 A.D.2d at 132 (holding that "the mere bringing of a civil suit, even if groundless and ill motivated, does not result in special damage or injury sufficient to sustain an action for malicious prosecution"). Carter's special-injury allegations fail as a matter of law.

## III. CARTER'S SECTION 487 CLAIM ALSO FAILS

### A. Section 487 Does Not Reach Attorney Conduct in Federal Court

Section 487 does not apply to the attorney conduct alleged in the TAC. Carter's Section 487 claim is based on the Buzbee Parties' conduct in the Underlying Action, which was brought in federal court. TAC ¶¶ 1, 196-199, 201. Pursuant to well-reasoned authority from this District, a claim cannot be maintained under Section 487 for conduct in federal proceedings. *Delaney v.*

*HC2, Inc.*, 761 F. Supp. 3d 641, 669 (S.D.N.Y. 2025) aff'd 2026 WL 366443 (2d Cir. Feb. 10, 2026); *see also Amman v. Sharestates Inc.*, 21-cv-2766, 2026 WL 743267, at *10 n.10 (E.D.N.Y. Mar. 17, 2026). Section 487 does not reach conduct in federal courts for multiple reasons.

*First*, the legislative history of Section 487 reflects that the state judicial system, not federal, is the target. "In the context of the Judiciary Law, the purpose of 'safeguarding the integrity of the judicial system' . . . most naturally refers to the integrity of the state judicial system." *Delaney*, 761 F. Supp. 3d at 665. The statute dates to 1787—before the federal courts existed – and is placed in an article devoted to the organization of state courts—from their constitution and the appointment of judges to the selection of jurors. *Id.* at 664–66.

*Second*, Section 487 conflicts with the federal scheme for regulating attorney misconduct set forth in Rule 11 and 28 U.S.C. § 1927 such that "it is unreasonable to read [Section] 487 as a regulation on attorney deceit in federal court." *Id.* at 665. Federal courts use a "carefully-balanced" sanctions regime to deter attorney misconduct while "avoiding due process concerns and potential overdeterrence that could chill vigorous advocacy and flow from punitive regulation." *Id.* at 665–67. Section 487 imposes criminal sanctions and treble damages—"an approach which has expressly been avoided by the Federal Rules." *Id.* at 667. Accordingly, "[t]he logical way to construe [Section] 487 is that such law applies to fraud on a state court, and the federal scheme applies to fraud on a federal court. This is in keeping with the interest of each sovereign in creating its own scheme to 'safeguard[ ] the integrity of the judicial system' according to its own view of how to balance the value of vigorous advocacy against the need for protection of courts and litigants." *Id.*

*Third*, applying Section 487 to federal-court conduct would destroy uniformity among the federal courts and "lead to absurd results inconsistent with the federal judicial scheme." *Id.*

"'[O]ne of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts,' such that an attorney filing in one federal jurisdiction is not subject to different requirements from an attorney filing in another." *Id.* at 667–68 (quoting *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)). But if Section 487 applied to federal proceedings, then an attorney who filed a purportedly false pleading in the Southern District of New York "could be haled into state court on threat of criminal sanctions and treble damages, while an attorney who filed the same pleading in another state (or had his case transferred there) would be subject only to the standard sanctions of Rule 11." *Id.* at 668. "It cannot be assumed that ambiguous state legislation is intended to subvert a uniform federal scheme." *Id.*

*Finally*, Section 487 functions as a court-directed sanction, not a general tort—and federal courts control their own sanctioning authority. Section 487 "directly targets attorney deceit within a court proceeding" and is "much more akin to a sanction, aimed at punishing the attorney for misbehavior in court, than a tort." *Id.* at 668-69. The attorney-court relationship "closely implicates a court's inherent powers . . . to manage its own affairs." *Id.* at 669. General state-law torts—legal malpractice, abuse of process—regulate the attorney-public relationship, and may incidentally touch on conduct that also occurs in federal proceedings. *Id.* at 668–69. Section 487 does not. It "is specifically directed to misconduct in courts," placing it within the domain federal courts govern through inherent authority. *Id.* at 669. "Because Section 487 is specifically directed to misconduct in courts, and misconduct in federal courts is not within the reach of the statute, it must be directed towards misconduct in New York courts." *Id.*

Carter should not be able to maintain a Section 487 claim against the Buzbee Parties for conduct in federal court. Carter had the opportunity to – and did in fact – seek to challenge the Buzbee Parties' conduct under the federal scheme during the Underlying Action, by filing a Rule

11 sanctions motion. TAC ¶ 118; Meyers-Decl., ¶ 9. In addition to availing himself of the federal scheme, Carter expressly acknowledges that Rule 11, not Section 487, governs attorney conduct in the Underlying Action, alleging in the TAC that Buzbee "deliberately sought to evade . . . the constraints of Rule 11 and the Court's disciplinary authority over attorneys appearing before it" by filing the Doe Complaint under local counsel's ECF credentials. TAC ¶ 201. Having withdrawn his Rule 11 motion to procure Doe's dismissal of the Underlying Action, Carter should not get a second bite at the apple through a Section 487 claim.

### B. Carter Lacks Standing to Maintain a Section 487 Claim

Even if Section 487 applied to conduct in federal proceedings, Carter lacks standing to maintain such a claim against the Buzbee Parties because they did not share an attorney-client relationship. *See Rogath v. Koegel*, 96-cv-8729, 1998 WL 695668, at 4 n.10 (S.D.N.Y. Oct. 6, 1998) (dismissing Section 487 claim for lack of standing); *Lipin v. Hunt*, 14-cv-1081, 2015 WL 1344406, at *8-9 (S.D.N.Y. Mar. 20, 2015) (same). Indeed, Carter does not allege that the Buzbee Parties deceived *him* in any respect. Rather, he alleges they deceived *the Court*, by filing false allegations that Carter knew to be false and falsely representing Buzbee was authorized to appear in the S.D.N.Y., and Doe, by "baselessly [telling] her that she needed to dismiss the case because Carter threatened her life." TAC ¶¶ 197-202. Thus, even if Carter could maintain a Section 487 claim against the Buzbee Parties in the absence of an attorney-client relationship, he should not be permitted to maintain the Section 487 claim asserted in the TAC.

Carter's lack of standing is underscored by the fact that he has failed to allege any damages he suffered from the conduct he complains of. Carter, for instance, fails to allege how he was harmed by Buzbee's allegedly unauthorized appearance in the S.D.N.Y., where Doe had local counsel that provided her access to the court. The identity of the attorney who happens to sign is not a plausible cause of damages. Even more confounding is how Carter could have

possibly been harmed by the Buzbee Parties supposedly convincing Doe to dismiss her case against him with false claims that she was under threat. If anything, Carter *benefitted* from such alleged conduct.

**C. Carter Fails to Adequately Plead Intentional Deceit**

Finally, Carter has failed to adequately plead that the Buzbee Parties engaged in intentional deceit. Relief under Section 487 is not lightly given and requires "egregious conduct or a chronic and extreme pattern of behavior." *Savitt v. Greenberg Traurig, L.L.P.*, 126 A.D.3d 506, 507 (1st Dep't 2015). "By confining the reach of the statute to intentional egregious misconduct, this rigorous standard affords attorneys wide latitude in the course of litigation to engage in written and oral expression consistent with responsible, vigorous advocacy, thus excluding from liability statements to a court that fall 'well within the bounds of the adversarial proceeding.'" *O'Callaghan v. Sifre*, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008) (quoting *Lazich v. Vittoria & Parker*, 592 N.Y.S.2d 418, 419 (2d Dep't 1993)). "Under this threshold, an action grounded essentially on claims that an attorney made meritless or unfounded allegations in state court proceedings would not be sufficient to make out a violation of § 487." *Id.*

Yet, this is essentially what Carter alleges here: that the Buzbee Parties made "meritless or unfounded allegations" on behalf of Doe in the Underlying Action (notably, *not* in a "state court proceeding"). *See id.*; TAC ¶¶ 188, 198-99. While Carter makes the conclusory allegation that the Buzbee Parties made "knowingly false allegations that Carter raped a minor," the thrust of Carter's allegations is that the Buzbee Parties, rather, failed to sufficiently vet Doe and her claims before commencing the Underlying Action. *E.g.*, TAC ¶¶ 198-200. That is not enough.

Carter's allegations of intentional conduct fall far short. Allegations of that intent "must be stated with particularity;" conclusory and factually insufficient allegations require dismissal. *Facebook, Inc.*, 134 A.D.3d at 615. Courts will not "readily assume such intent from conduct

falling 'well within the bounds of the adversarial proceeding.'" *Haggerty v. Ciarelli & Dempsey*, 374 Fed. App'x 92, 93 (2d Cir. 2010) (quoting *Lazich*, 189 A.D.2d at 754). Carter has failed to allege any facts with specificity to support his conclusory assertion that the Buzbee Parties knew Doe's claims against Carter were false. For all the reasons stated *supra*, his allegations that Doe had a troubled past and that the Buzbee Parties could not have sufficiently investigated her claims before filing do not suffice; nor do his allegations that, after the fact, inconsistencies were revealed in Doe's story and she "recanted." Distilled, all Carter alleges is that the Buzbee Parties acted on behalf of a client whose credibility was disputed after commencing suit, but has always stood by her claims. This is not the type of conduct that will sustain a Section 487 claim. *See Haggerty*, 374 Fed. App'x at 93 (finding that attorneys who act "on behalf of their clients" cannot "fairly be considered as fraudulent, malicious, tortious, or the proximate cause of the plaintiffs' claimed damages"); *Facebook, Inc.*, 134 A.D.3d at 614 (dismissing Section 487 claim because plaintiff's "allegations that defendants knew of [their client's] fraud are conclusory and not supported by the record" where the client "consistently maintained" the veracity of his claims).

Finally, as to Buzbee's supposedly unauthorized appearance in the Underlying Action, Carter fails to allege how this was deceitful, let alone intentionally so. Whether an attorney is admitted to practice in a specific court and/or has applied for admission pro hac vice can be confirmed in the public record. An premature appearance before obtaining authorization is not a deceit on the court or any party.

**CONCLUSION**

For the foregoing reasons, the Buzbee Parties respectfully request that the Court dismiss the Third Amended Complaint with prejudice.

DATED: September 1, 2026

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

By: */s/ Jessica N. Meyers*

Jessica N. Meyers
George L. Frank
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone: 212.653.8700
jmeyers@sheppard.com
gfrank@sheppard.com

Camille M. Vasquez (*admitted PHV*)
Samuel A. Moniz (*admitted PHV*)
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone: 714.513.5100
cvasquez@sheppard.com
smoniz@sheppard.com

*Attorneys for Defendants Anthony Buzbee, David Fortney, and Anthony G. Buzbee LP (d/b/a The Buzbee Law Firm)*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and the Individual Rules and Practices in Civil Cases for The Honorable Dale E. Ho, the undersigned counsel certifies that the foregoing complies with the word-count limitation of Local Civil Rule 7.1(c) and the page limitation of the Individual Rules because it contains 8,668 words and 25 pages, excluding the caption, table of contents, table of authorities, signature block, and this certificate. In making this certification, undersigned counsel has relied on the word count of the word-processing program used to prepare this document, Microsoft Word.

Dated: September 1, 2026

*/s/ Jessica N. Meyers*
Jessica N. Meyers