**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHAWN COREY CARTER,<br><br>*Plaintiff*,<br><br>v.<br><br>ANTHONY BUZBEE, DAVID FORTNEY, ANTHONY G. BUZBEE LP (d/b/a THE BUZBEE LAW FIRM), ANTIGONE CURIS, CURIS LAW, PLLC and JANE DOE,<br><br>*Defendants*. | Case No. 1:26-cv-02775-DEH |

# PLAINTIFF SHAWN COREY CARTER'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE THIRD AMENDED COMPLAINT


Jordan W. Siev
Casey D. Laffey
Ian M. Turetsky
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
jsiev@reedsmith.com
claffey@reedsmith.com
ituretsky@reedsmith.com
212-205-6085

Roberta A. Kaplan
Ellen V. Holloman
Christopher R. Le Coney
KAPLAN MARTIN LLP
1133 Avenue of the Americas
New York, New York 10036
rkaplan@kaplanmartin.com
eholloman@kaplanmartin.com
cleconey@kaplanmartin.com
212-316-9500

Alejandro Brito
*(Admitted PHV)*
BRITO PLLC
2121 Ponce de Leon Blvd.
Coral Gables, Florida 33134
abrito@britopllc.com
305-614-4071

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ............................................................................................ 1

RELEVANT FACTUAL BACKGROUND .......................................................................... 4

I. The Buzbee Defendants Launch a Solicitation Campaign ....................................4

II. The Buzbee Defendants Solicit Jane Doe, File the Underlying Action, and Extort Carter ..........................................................................................5

III. The Claims Were Demonstrably False and Easily Refutable ..............................7

IV. Doe Appears on NBC News and is Confronted With Irrefutable Proof of Her Lies ...................................................................................................8

V. Doe Dismisses the Underlying Action and Confesses Falsity of Claims .........................................................................................................9

ARGUMENT ..................................................................................................................... 10

I. CARTER STATES A CLAIM FOR MALICIOUS PROSECUTION ...............................................................................................10

A. Defendants Lacked Probable Cause to Commence and Continue to Prosecute the Underlying Action ............................................... 11

1. Defendants Knowingly Prosecuted a False Accusation................ 11

2. Defendants Failed to Investigate Doe's Claims Before Filing ............................................................................................. 13

3. Defendants Lacked Probable Cause to Continue Pursuing the Claims ........................................................................... 16

B. Defendants Acted With Malice................................................................ 17

C. Defendants' Actions Caused Special Injuries to Carter........................... 19

II. CARTER STATES A CLAIM FOR VIOLATION OF N.Y. JUDICIARY LAW SECTION 487 ......................................................23

A. Section 487 Applies to the Defendants and the Conduct Alleged. ........... 23

1. Section 487 reaches attorney misconduct in federal court........... 23

2. Federal sanctions do not displace Section 487's independent civil remedy ............................................................................. 26

B. Carter Has Standing Under Section 487 ................................................. 28

C. The TAC Pleads Specific Acts of Intentional Deceit. .............................. 29

1. The TAC Alleges Egregious Deceit. ........................................... 29

2. The TAC Sufficiently Pleads Intent........................................... 30

3. Buzbee's Publicly Verifiable Admission Status Does Not Excuse His Attempted Deceit. .................................................... 33

CONCLUSION .................................................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Donati*,
66 N.Y.2d 951 (1985) ....................21

*Acito v. IMCERA Group, Inc.*,
47 F.3d 47 (2d Cir. 1995) ....................31

*Adelson v. Harris*,
876 F.3d 413 (2d Cir. 2017)....................28

*Amalfitano v. Rosenberg*,
12 N.Y.3d 8 (2009) ....................25, 26, 29, 33

*Amalfitano v. Rosenberg*,
572 F.3d 91 (2d Cir. 2009)....................29

*American Dental Association v. Cigna Corporation*,
605 F.3d 1283 (11th Cir. 2010) ....................18

*AML IP, LLC v. Aero Global, LLC*,
2025 WL 2673691 (S.D.N.Y. Sept. 18, 2025)....................24

*Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Tchrs. Ass'n, Inc.*,
38 N.Y.2d 397 (1975) ....................28

*Behrens v. Metropolitan Opera Ass'n, Inc.*,
18 A.D.3d 47 (1st Dep't 2005) ....................21

*Betz v. Blatt*,
160 A.D.3d 696 (2d Dep't 2018)....................33

*Bill Birds, Inc. v. Stein Law Firm, P.C.*,
35 N.Y.3d 173 (2020) ....................25, 26, 30

*Black v. Green Harbour Homeowners' Ass'n, Inc.*,
37 A.D.3d 1013 (3d Dep't 2007)....................15

*In re Blue Dog at 399 Inc.*,
2020 WL 6390674 (Bankr. S.D.N.Y. Oct. 30, 2020) ....................25

*Bryant v. Silverman*,
284 F. Supp. 3d 458 (S.D.N.Y. 2018)....................31

*Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
498 U.S. 533 (1991) .....27

*Cardoza v. City of N.Y.*,
139 A.D.3d 151 (1st Dep't 2016) .....18

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .....2

*Claude Mayo Construction Co., Inc. v. Barclay Damon LLP*,
239 A.D.3d 1430 (4th Dep't 2025) .....25

*Colon v. City of N.Y.*,
60 N.Y.2d 78 (1983) .....14

*Corona v. Lunn*,
2002 WL 550963 (S.D.N.Y. Apr. 11, 2002) .....14

*CSX Transp., Inc. v. Island Rail Terminal, Inc.*,
879 F.3d 462 (2d Cir. 2018) .....23, 24

*De la Roca v. Schacht*,
244 A.D.3d 1570 (3d Dep't 2025) .....15

*Delaney v. HC2, Inc.*,
761 F. Supp. 3d 641 (S.D.N.Y. 2025), *aff'd on other grounds*, 2026 WL 366443 (2d Cir. Feb. 10, 2026) ..... *passim*

*Diamond v. Strassberg*,
751 F. Supp. 1152 (S.D.N.Y. 1990) .....20

*Dudick v. Gulyas*,
277 A.D.2d 686 (3d Dep't 2000) .....22

*In re Eerie World Entm't, L.L.C.*,
2006 WL 1288578 (Bankr. S.D.N.Y. Apr. 28, 2006) .....20

*Emanuel v. Griffin*,
2013 WL 5477505 (S.D.N.Y. Oct. 2, 2013) .....18

*Engel v. CBS, Inc.*,
93 N.Y.2d 195 (1999) ..... *passim*

*Erbacci, Cerone & Moriarty, Ltd. v. United States*,
923 F. Supp. 482 (S.D.N.Y. 1996) .....33

*Erie Railroad Co. v. Tompkins*,
304 U.S. 64 (1938) .....23, 28

*Facebook, Inc. v. DLA Piper LLP (US)*,
134 A.D.3d 610 (1st Dep't 2015) ....................................................................................32

*Fink v. Shawangunk Conservancy, Inc.*,
15 A.D.3d 754 (3d Dep't 2005) ......................................................................................12

*Fisher v. Big Squeeze (NY), Inc.*,
349 F. Supp. 2d 483 (E.D.N.Y. 2004) ..........................................................................21

*Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*,
7 N.Y.3d 96 (2006) ........................................................................................................28

*Glob. Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006)....................................................................................10, 26

*Guliyev v. Banilov & Associates, P.C.*,
221 A.D.3d 589 (2d Dep't 2023) ....................................................................................33

*Hadges v. Yonkers Racing Corp.*,
48 F.3d 1320 (2d Cir. 1995)...........................................................................................15

*Haggerty v. Ciarelli & Dempsey*,
374 F. App'x 92 (2d Cir. 2010) ......................................................................................32

*Hanna v. Plumer*,
380 U.S. 460 (1965)........................................................................................................28

*Heilbut v. Cassava Scis., Inc.*,
778 F. Supp. 3d 551 (S.D.N.Y. 2025)......................................................................*passim*

*Hong v. Mommy's Jamaican Mkt. Corp.*,
2024 WL 3824394 (S.D.N.Y. Aug. 14, 2024).........................................................25, 27

*Honzawa v. Honzawa*,
268 A.D.2d 327 (1st Dep't 2000) ............................................................................*passim*

*Hornstein v. Wolf*,
109 A.D.2d 129 (2d Dep't 1985)...............................................................................17, 23

*I.M. by Hartmann v. DiCostanzo*,
2020 WL 1330241 (S.D.N.Y. Mar. 23, 2020) ................................................................24

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
140 F.3d 442 (2d Cir. 1998)............................................................................................24

*IUE AFL-CIO Pension Fund v. Herrmann*,
9 F.3d 1049 (2d Cir. 1993)..............................................................................................31

*Izko Sportswear Co. v. Flaum*,
25 A.D.3d 534 (2d Dep't 2006) ......25

*Jeffreys v. Rossi*,
275 F. Supp. 2d 463 (S.D.N.Y. 2003) ......15

*Johnson v. United States*,
759 F. Supp. 3d 425 (S.D.N.Y. 2024) ......13, 17

*Jones v. Niagara Frontier Transp. Auth.*,
836 F.2d 731 (2d Cir. 1987) ......21

*Jovanovic v. City of New York*,
486 F. App'x 149 (2d Cir. 2012) ......12

*Kimbrook Rte. 31, L.L.C. v. Bass*,
147 A.D.3d 1508 (4th Dep't 2017) ......29

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941) ......28

*Klein v. Aicher*,
2020 WL 4194823 (S.D.N.Y. July 21, 2020) ......14

*Knopf v. Dorsey & Whitney, LLP*,
2026 WL 2673667 (N.Y. Sup. Ct. Aug. 26, 2026) ......25

*Lateral Recovery LLC v. Funderz.net, LLC*,
2024 WL 4350369 (S.D.N.Y. Sept. 27, 2024) ......24

*Lawrence v. Richman Grp. of CT LLC*,
620 F.3d 153 (2d Cir. 2010) ......27

*Lazich v. Vittoria & Parker*,
592 N.Y.S.2d 418 (2d Dep't 1993) ......30

*Leis v. Flynt*,
439 U.S. 438 (1979) ......26

*Lincoln First Bank of Rochester v. Siegel*,
60 A.D.2d 270 (4th Dep't 1977) ......2, 20

*Lipin v. Hunt*,
2015 WL 1344406 (S.D.N.Y. Mar. 20, 2015) ......29

*Man Wei Shiu v. New Peking Taste Inc.*,
2013 WL 2351370 (E.D.N.Y. May 28, 2013) ......29

*Martin v. City of Albany*,
42 N.Y.2d 13 (1977) ....................18

*McCrary v. Combs*,
Case No. 24 Civ. 8054 (S.D.N.Y.),....................6, 9

*Muhammad v. Walmart Stores E., L.P.*,
732 F.3d 104 (2d Cir. 2013)....................27

*O'Callaghan v. Sifre*,
537 F. Supp. 2d 594 (S.D.N.Y. 2008)....................30

*Ostrander v. Mullen*,
233 A.D.3d 1484 (4th Dep't 2024)....................31

*Penhallow v. Doane's Administrators*,
3 U.S. (3 Dall.) 54 (1795) ....................26

*In re Pennie & Edmonds LLP*,
323 F.3d 86 (2d Cir. 2003)....................27

*People v. Roberts*,
31 N.Y.3d 406 (2018) ....................25

*Ramchandani v. CitiGroup, Inc.*,
2021 WL 930627 (S.D.N.Y. Mar. 11, 2021) ....................10, 12, 18

*Rivers v. Birnbaum*,
102 A.D.3d 26 (2d Dep't 2012) ....................24

*Rogath v. Koegel*,
1998 WL 695668 (S.D.N.Y. Oct. 6, 1998) ....................29

*Rothstein v. Carriere*,
373 F.3d 275 (2d Cir. 2004)....................15

*Rubin v. Lutfy*,
2009 WL 4878425 (N.Y. Sup. Ct. Nov. 23, 2009) ....................23

*Sankin v. Abeshouse*,
545 F. Supp. 2d 324 (S.D.N.Y. 2008)....................23

*Sapienza v. Notaro*,
172 A.D.3d 1418 (2d Dep't 2019)....................17, 20

*Savitt v. Greenberg Traurig, L.L.P.*,
126 A.D.3d 506 (1st Dep't 2015) ....................30

*Schindler v. Issler & Schrage, P.C.*,
262 A.D.2d 226 (1st Dep't 1999) ....................................................................................29

*Schnur v. Balestriere*,
208 A.D.3d 1117 (1st Dep't 2022) ...........................................................................25, 30

*Sparrow Fund Mgmt., LP v. Mimedx Grp., Inc.*,
2019 WL 8955307 (S.D.N.Y. Nov. 7, 2019).............................................11, 13, 16, 20

*Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*,
2020 WL 1330283 (S.D.N.Y. Mar. 22, 2020) ............................................................ *passim*

*Strumpf v. Asdourian*,
2006 WL 6348824 (N.Y. Sup. Ct. Dec. 12, 2006) ...............................................................20

*Suzuki v. Greenberg*,
220 A.D.3d 604 (1st Dep't 2023) ..........................................................................................30

*Thomas v. G2 FMV, LLC*,
2016 WL 320622 (N.Y. Sup. Ct. Jan. 27, 2016), *aff'd*, 147 A.D.3d 700 (1st Dep't 2017) ............................................................................................12, 15, 17, 20

*Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*,
2002 WL 737477 (S.D.N.Y. Apr. 25, 2002)..........................................................................18

*Trepel v. Dippold*,
2005 WL 1107010 (S.D.N.Y. May 9, 2005) ..........................................................................29

*U.S. Express Lines Ltd. v. Higgins*,
281 F.3d 383 (3d Cir. 2002)....................................................................................................27

*United States v. Gellene*,
182 F.3d 578 (7th Cir. 1999) ..................................................................................................33

*Urias v. Daniel P. Buttafuoco & Associates, PLLC*,
41 N.Y.3d 560 (2024) ..................................................................................................26, 28, 33

*Venture Grp. Enters., Inc. v. Vonage Bus. Inc.*,
750 F. Supp. 3d 260 (S.D.N.Y. 2024)......................................................................................25

*Virginia v. Am. Booksellers Ass'n*,
484 U.S. 383 (1988)....................................................................................................................23

*Wilhelmina Models, Inc. v. Fleisher*,
19 A.D.3d 267 (1st Dep't 2005) ..........................................................................................20, 21

*Wyeth v. Levine*,
555 U.S. 555 (2009)....................................................................................................................26

**Statutes**

28 U.S.C. § 1927 .....27

N.Y. Jud. Law § 470 .....24

N.Y. Jud. Law § 478 .....24

N.Y. Jud. Law § 486 .....24

N.Y. Jud. Law § 487(1) .....24

N.Y. Stat. Law § 94 .....24

**Rules**

CPLR 5015 .....28

CPLR 5222(b) .....24

Fed. R. Civ. P. 8(d)(2)-(3) .....13

Fed. R. Civ. P. 9(b) .....18, 31

Fed. R. Civ. P. 11 ..... *passim*

**Other Authorities**

Restatement (Second) of Torts § 676, cmt. c (Am. L. Inst. 1977) .....17

Plaintiff Shawn Corey Carter (professionally known as "JAŸ-Z") submits this Memorandum of Law in opposition to the motions to dismiss the Third Amended Complaint ("TAC") by Defendants Anthony Buzbee, David Fortney, and Anthony G. Buzbee LP (d/b/a The Buzbee Law Firm) (collectively, the "Buzbee Defendants") (ECF 158 ("Buzbee MOL")) and Antigone Curis and Curis Law PLLC (collectively, the "Curis Defendants") (ECF 155 ("Curis MOL")).[1]

## PRELIMINARY STATEMENT

Both of Defendants' Motions are futile attempts to escape the consequences of their lies, deceit, and gross misconduct arising from the proceeding they previously brought in this District.[2] The TAC alleges a simple scheme: Defendants sought to extract an eight-figure settlement from Carter by threatening to publicly accuse him of sexually assaulting a child—an accusation they knew to be false. Despite numerous glaring errors in Doe's story, Defendants never investigated or attempted to corroborate her claims before filing. Defendants' goal was not to advocate for their client, but rather to extort a windfall settlement for themselves by threatening to ruin Carter's reputation and livelihood through the assertion of unspeakable, false claims.

The TAC describes how Defendants failed to conduct even a cursory factual investigation into Doe's claims prior to filing; commenced proceedings on her behalf which contained pervasive (and easily discovered) errors—the most fundamental of which was the false accusation that Carter had raped a child—and manipulated Doe into signing false affidavits purporting to verify allegations in the complaint well ***after*** the Underlying Action had already been commenced. When Carter rejected Defendants' extortionate threats, Defendants doubled down and refused to

---

[1] Defendant Jane Doe ("Doe") was voluntarily dismissed from this action without prejudice on September 24, 2026. ECF 166. Accordingly, Carter does not address Doe's motion to dismiss.

[2] *Doe v. Combs*, No. 24 Civ. 7975 (S.D.N.Y.) (the "Underlying Action").

withdraw those claims, despite receiving further proof of their falsity. They ultimately only dismissed the action with prejudice after Judge Torres required Buzbee to file proof of his admission in this Court, which he could not do.[3]

Taking the TAC's allegations as true, as is required at this stage, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), Carter has adequately alleged both malicious prosecution and intentional attorney deceit.

*First*, the TAC pleads each element of malicious prosecution. It alleges lack of probable cause in three independent ways: Defendants helped manufacture the false accusation; they filed it despite obvious reasons to doubt Doe's account and without conducting a reasonable inquiry; and they continued prosecuting it after NBC News exposed contradictions in the basic facts that might have corroborated her story. Defendants incorrectly argue that they had no duties to inquire, investigate or corroborate their client's allegations before running to court, no matter how implausible or self-contradictory those claims might be. However, Federal Rule of Civil Procedure 11 does not permit attorneys to abdicate their duties of conducting a reasonable investigation and exercising a modicum of skepticism before commencing proceedings. Likewise, post-filing affidavits cannot retroactively establish probable cause to commence the action, and Judge Torres never found that Doe's allegations had merit. Malice is also plausibly inferred from the alleged purpose and sequence of events: Defendants (a) purposefully created a media spectacle through press conferences and a social media blitz announcing forthcoming claims against

[3] Although not before the Court for purposes of this motion, we note that Doe recently reaffirmed in a declaration that she was not sexually assaulted by Carter, she has never met Carter, she did not read or authorize the filing of the complaint against Carter, and, to the best of her knowledge, Defendants commenced the Underlying Action "without conducting any independent investigation." ECF 166-1 ¶¶ 1, 15, 16. Should the Court nonetheless grant the motions to dismiss, it should do so without prejudice and with leave to amend to incorporate the newly discovered facts set forth in Doe's declaration.

unidentified celebrities; (b) filed the Underlying Action concealing Carter's identity but dangling out there for the press and the public the unnamed "Celebrity A" and "Celebrity B" (instead of the much less enticing "Individual Doe[]" defendants as per the caption of the complaint); (c) continued to build up media and public attention to the already-filed lawsuit; (d) taking the extraordinary step of sending Carter a demand letter seeking "something of substance" under threat of filing a lawsuit *that had already been filed,* without providing any corroborating evidence; (e) continued to market and promote the already-filed lawsuit with the unnamed celebrities; and (f) when Carter refused to pay, publicly naming him in the existing lawsuit at a moment calculated to maximize the personal and business consequences.

The TAC also alleges special injury far beyond the ordinary burdens of defending a lawsuit. It identifies specific, quantifiable losses, including an abandoned sports-and-entertainment deal that would have paid Carter a substantial personal fee. It further alleges 1.3 million social-media mentions of the allegations as of May 5, 2025 (which translates to up to 15 billion views even before taking account of separate press articles and reach), widespread and international press coverage, threats to kill Carter and his wife, and profound harm to Carter and his family from being publicly accused of sexually assaulting a child. Those are not vague allegations of reputational harm, they are concrete details of special injuries.

*Second*, the TAC states a claim under New York Judiciary Law Section 487. The statute prohibits an attorney from acting "with intent to deceive the court or any party" and gives a civil remedy to "the party injured." Nothing in that language confines the statute to state-court proceedings. Other provisions of the same Article expressly refer to courts "of this state"; Section 487 does not. New York appellate courts have adjudicated Section 487 claims arising from federal proceedings, and federal sanctions—which serve a different purpose and provide different

relief—do not displace New York's independent civil remedy for attorney deceit. Nor is attorney-client privity required: the statute protects "any party," and an opposing litigant may recover the fees incurred because of opposing counsel's deceit.

The TAC also pleads the requisite intent with specificity. It alleges that Buzbee pushed Doe to accuse Carter; that Defendants filed allegations they knew were false; that they removed specific times from the amended complaint to conceal an impossibility in Doe's original account; that Curis supplied her filing credentials to unadmitted counsel for prosecuting the action; and that Fortney later fabricated a death threat from Carter to scare Doe. Those allegations describe intentional deceitful acts by the Defendants, not negligence or aggressive advocacy. A single act of intentional deceit is enough; here, the sustained course of deceitful (and outrageous) conduct alleged more than satisfies Section 487 at the pleading stage.

Defendants may dispute those allegations. What they cannot do is obtain dismissal by asking the Court to assume that the allegations are false and that their competing account is true. Taking the TAC's allegations as true and drawing all reasonable inferences in Carter's favor, as required, Carter has stated claims for malicious prosecution and intentional attorney deceit. Defendants' motions to dismiss should be denied.

## RELEVANT FACTUAL BACKGROUND

The following facts are drawn from Carter's TAC (ECF 145) to which Carter respectfully refers the Court for a full and complete statement of the allegations therein.

### I. The Buzbee Defendants Launch a Solicitation Campaign

Following Sean "Diddy" Combs's federal indictment in September 2024, the Buzbee Defendants partnered with AVA Law Group ("AVA Law") and legal marketing firm Reciprocity Industries ("Reciprocity") to recruit claimants through nationwide advertisements and a 1-800 hotline. TAC ¶¶ 50, 54, 57-61. Just six days after agreeing to work together, Buzbee and AVA

Law announced that they represented 120 "corroborated, vetted" clients. *Id.* ¶ 66. Buzbee warned that "many powerful people will be exposed" and that his targets "should just come forward now." *Id.* ¶¶ 67-68. He acknowledged that such accusations are "very hurtful to people if they're not true and very hurtful, frankly, if they are true." *Id.* ¶ 72. When asked whether threatening embarrassing allegations to force a settlement "becomes almost . . . the game," Buzbee did not flinch—he called it "a fair point" and described the system he was exploiting as "a gulag, if you will." *Id.* ¶ 74. He threatened that the targets would "shock" the public, and "raise some eyebrows," including "[h]ousehold names," "celebrities," and "[e]xecutives in the entertainment industry." *Id.* ¶¶ 70-72.

The Buzbee Defendants had no interest in the truth of the allegations. Their goal was to generate forced settlement leverage against potential defendants—and, failing that, create a public spectacle with civil claims not only against Combs, but against other high-profile individuals who attended the same events as Combs. *Id.* ¶¶ 18-19, 54, 57, 71-74. Indeed, a whistleblower has since come forward with an account of the Buzbee Law Firm's practices in encouraging the whistleblower to fabricate allegations against Combs, and how she was dropped as a client when she refused to do so. *Id.* ¶ 62.

## II. The Buzbee Defendants Solicit Jane Doe, File the Underlying Action, and Extort Carter

Shortly after the Buzbee Defendants launched their public threats, Defendants directed their conspiracy towards Carter. On or around October 14, 2024, Doe responded to a targeted Reciprocity Facebook ad and retained AVA Law Group to pursue claims against Combs. *Id.* ¶¶ 80-81. However, Doe did not herself seek out the Buzbee Defendants. *Id.* ¶¶ 81-82.

Within days, AVA Law Group sent a draft complaint to the Buzbee Defendants. *Id.* ¶ 84. Buzbee (falsely) claimed that he vetted the veracity of Doe's claims. *Id.* ¶¶ 85-86. But public records that were easily available to the Defendants prior to filing their action showed that Doe

was an unreliable witness and should have raised glaring red flags for the attorneys. Among numerous other things, Doe was suffering personal and financial hardships at the time and had a history of mental health and substance abuse issues. *Id.* ¶¶ 93-94. Doe had been in Mental Health Court 90 days before filing her lawsuit and had a record of making prior false allegations—including false sexual assault allegations. *Id.* ¶ 94. All of this information was available to Defendants via a simple Google or public records search and would have been caught as part of basic due diligence. *Id.*

Despite these obvious credibility issues, on October 20, 2024, merely six days after receiving the pre-packed complaint from AVA Law Group—during which time Defendants also purportedly "vetted" thirteen other lawsuits against Combs—Defendants filed the Underlying Action against Combs, his business entities, and "Does 1-10," with "Celebrity A" (later revealed to be Carter) as an unnamed defendant. *Id.* ¶¶ 97-99, 103. The complaint was based upon the false allegation that Doe was sexually assaulted at an afterparty following the 2000 MTV Video Music Awards ("VMAs"). *Id.* ¶ 100.

Neither Buzbee nor Fortney was admitted to practice in this District; they used Curis's ECF credentials to file the complaint. *Id.* ¶¶ 87-88, 98. This was not the first time the Buzbee Defendants made use of Curis's e-filing credentials in this Court. In fact, District Judge Mary Kay Vyskocil admonished Buzbee after finding he had "improperly filed numerous actions in this Court and scores of submissions in this case and other cases, using the ECF credentials of another attorney" and that Curis's "complicity" in Buzbee's conduct may be sanctionable. *Id.*; *see McCrary v. Combs et al.*, No. 24 Civ. 8054 (S.D.N.Y.), ECF 76. The TAC alleges that Curis "knowingly and intentionally filed a complaint against Carter which contained false allegations, in an effort to pressure him into settlement." TAC ¶ 92.

On November 5, 2024, the Buzbee Defendants sent Carter a demand letter threatening to publicly identify him unless the matter was resolved confidentially and Carter paid "something of substance." *Id.* ¶¶ 105-07. They gave him two weeks to agree to "confidential mediation," warning that otherwise they would "take a different course." *Id.* ¶ 107. Carter refused to pay, and on November 18, 2024, he sued Buzbee in California for extortion and intentional infliction of emotional distress. *Id.* ¶ 111. In retaliation, on December 8, 2024, the Buzbee Defendants—again using the Curis Defendants' ECF credentials—filed an amended complaint in the Underlying Action formally identifying Carter as defendant "Celebrity A." *Id.* ¶¶ 98, 112-114.

Understandably, the accusation of child sexual assault caused catastrophic harm to Carter's reputation and to his family. It also caused substantial harm to his financial interests: among other things, Carter lost out on a substantial fee he would have earned from a sports-and-entertainment deal. TAC ¶¶ 170, 174.

## III. The Claims Were Demonstrably False and Easily Refutable

A simple Google search or basic investigation would have revealed that Doe's allegations were physically, geographically, and temporally impossible, and therefore indisputably false. For example, Doe claimed the assault occurred at "a large white residence with a gated U-shaped driveway," but contemporaneous photographs prove Carter spent that evening at a nightclub in Manhattan. *Id.* ¶ 119. Similarly, while Doe alleged that she was driven "approximately twenty minutes" from Radio City Music Hall to the residence where the assault occurred, public records show that there were no houses matching Doe's description anywhere near Radio City Music Hall (and certainly not within a 20-minute drive). *Id.* ¶ 120. Next, despite claiming her father picked her up from a gas station after the assault—a drive of nearly six hours each way from Rochester, New York—her father told NBC News in the days following the filing of the amended complaint against Carter in December 2024 that he had no recollection of any such trip, calling it "something

that would definitely stick in my mind." *Id.* at ¶¶ 25, 122, 141. And despite claiming she watched the VMAs on a jumbotron outside Radio City Music Hall and "approached limousine drivers," publicly available videos of the event confirm there was no jumbotron and the limousine area was wholly inaccessible to fans. *Id.* ¶¶ 121, 123, 189. Further, although Doe claimed she spoke to Benji Madden of the band Good Charlotte at the VMAs afterparty, Madden was on tour in Chicago that evening and could not have attended the VMAs in New York. *Id.* ¶ 124.

Defendants, apparently recognizing the falsity of the allegations in the original complaint, amended the complaint by removing allegations of specific timeframes. *Id.* ¶¶ 126-28. Nevertheless, even the amended allegations were still factually implausible. *Id.* ¶ 129. Notably, as pled in the TAC, Buzbee and Doe first met in person to discuss the case only after: (a) Buzbee went on a public media crusade threatening anyone and everyone that attended a party that Combs also attended; (b) Defendants sued Carter as one of "Does 1-10" and Buzbee sent a demand letter to Carter; (c) Defendants filed an amended complaint naming Carter; and (d) Buzbee told TMZ that he had not ruled out filing a criminal complaint and that "[w]hat happens next is up to my client." *Id.* ¶ 131.

## IV. Doe Appears on NBC News and is Confronted With Irrefutable Proof of Her Lies

In mid-December 2024, the Buzbee Defendants arranged and paid for Doe to participate in an NBC News interview (the "NBC News Interview") to stir public outrage, further damage Carter's reputation and coerce a settlement. *Id.* ¶¶ 130, 132, 138-39. During the NBC News Interview, which aired on December 13, 2024, Doe, accompanied by Fortney, expanded on her false allegations against Carter to a global audience. *Id.* ¶¶ 132-36. Of course, basic investigation and media scrutiny by NBC News quickly uncovered numerous factual impossibilities and inconsistencies in Doe's story within days. *Id.* ¶ 141. When confronted with irrefutable proof of

her lies, Doe admitted she "made some mistakes," and disavowed the allegations in her complaint about the location of the alleged incident, admitting she was just "guessing." *Id.* ¶ 142.

Despite proof of its falsity, Defendants did not drop Doe's complaint. Buzbee, fully aware his client's story was collapsing, told TMZ on December 10, 2024 that Doe was "not ruling out filing rape charges" against Carter. *Id.* ¶ 148. Defendants and Doe continued to pursue the lawsuit and make false public statements regarding Carter in an attempt to bolster Doe's nonexistent credibility, going so far as to publicly commit Doe to taking a polygraph test (the results of which have never been released). *Id.* ¶ 143.

## V. Doe Dismisses the Underlying Action and Confesses Falsity of Claims

On January 28, 2025, Judge Analisa Torres, the judge presiding over the Underlying Action, ordered Buzbee to file proof of his admission to this District by February 14, 2025. Underlying Action, ECF 80; TAC ¶ 149. Buzbee scrambled to apply for such admission, but it was too late. TAC ¶ 150. On February 13, 2025, Buzbee's application was denied because he had already appeared in cases in this District without seeking admission and had filed pleadings in ***more than twenty cases*** using Curis's ECF credentials. *See McCrary v. Combs*, Case No. 24 Civ. 8054 (S.D.N.Y.), ECF 49-6; TAC ¶¶ 89, 150-52.

Buzbee sent Fortney to Alabama on February 13, 2025 to meet with Doe. *Id.* ¶ 153. During that meeting, Fortney told Doe that the case against Carter needed to be dismissed because Carter had made threats against Doe's life—another lie. *Id.* ¶ 155. As a result, on February 14, 2025, Defendants filed a voluntary dismissal of Doe's claims against Carter with prejudice and without any settlement. Underlying Action, ECF 91; TAC ¶ 157.

Subsequently, during an interview on February 21, 2025, Doe admitted that Carter had not sexually assaulted her and that the idea to include allegations against Carter had actually come from Buzbee. *Id.* ¶¶ 158-59. She admitted that Buzbee "pushed [her] towards going forward"

against Carter. *Id.* ¶ 82. As was corroborated by her father, Doe admitted that the Buzbee Defendants told Doe and her family (falsely) that Carter had threatened her life and that Carter could come after her if she said anything else. *Id.* ¶¶ 160-61.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ramchandani v. CitiGroup, Inc.*, 2021 WL 930627, at *6 (S.D.N.Y. Mar. 11, 2021). Plaintiff need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court must construe the complaint liberally and draw all reasonable inferences in the plaintiff's favor. *Id*.

### I. CARTER STATES A CLAIM FOR MALICIOUS PROSECUTION

To state a malicious prosecution claim, Carter need only plead that the Defendants initiated and/or continued to prosecute the Underlying Action (1) without probable cause and (2) with malice, (3) that the Underlying Action terminated in Carter's favor, and (4) that Carter suffered a special injury. *See Honzawa v. Honzawa*, 268 A.D.2d 327, 329 (1st Dep't 2000). Defendants concede that the TAC adequately alleges termination in Carter's favor.[4]

[4] (*See* Buzbee MOL at 6; Curis MOL at 3-4.) Despite waiving any challenge to the sufficiency of this element, the Buzbee Defendants invoke documents outside the pleadings to claim that the Underlying Action ended in settlement. (Buzbee MOL at 6 n.4.) That is not permitted under the applicable rules. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156-57 (2d Cir. 2006). The Court has already indicated that this "purported settlement" argument requires consideration of "materials outside of the complaint," making it "improper to decide the merits of those arguments at this stage of the litigation." ECF 148 at 21:16-22. But even Defendants' own exhibit refutes their claims: Spiro explained that, after being told Buzbee "was going to voluntarily dismiss the lawsuit," he would "hold in abeyance further pursuit of our motion, without prejudice, pending Mr. Buzbee's dismissal of the lawsuit." ECF 157 (Meyers Decl., Ex. 3 at 10).

### A. Defendants Lacked Probable Cause to Commence and Continue to Prosecute the Underlying Action

A malicious prosecution plaintiff is not required to plead "that the defendant had no cause to commence the prior action." *Heilbut v. Cassava Scis., Inc.*, 778 F. Supp. 3d 551, 572 (S.D.N.Y. 2025). Rather, Carter must only allege that Defendants accused him of sexually assaulting a child without "reasonable cause that would persuade a [person] of ordinary care and prudence to believe in the truth of the charge"—which he does. *Id.* Where, as here, the "parties dispute the facts or the reasonable inferences that may be drawn," probable cause "should be decided by the jury." *Sparrow Fund Mgmt., LP v. Mimedx Grp., Inc.*, 2019 WL 8955307, at *5 (S.D.N.Y. Nov. 7, 2019).

#### *1. Defendants Knowingly Prosecuted a False Accusation*

The TAC details how Defendants manufactured the false accusation against Carter. Defendants "shaped [Doe's] allegations," and "caused her to sign numerous knowingly false affidavits," even though the underlying facts were "blatantly contradicted by readily available records, witness accounts, and Doe's own later admissions." TAC ¶¶ 96, 158. They also revised her narrative to conceal its defects. For example, after initially alleging that the limousine driver told Doe to return after the VMAs around "9:30 or 10 p.m."—although the show ended at 11:11 p.m.—Defendants "attempted to mask the impossibility of their original allegations by removing any allegations of specific times," substituting "[l]ater that evening" in the amended complaint. *Id.* ¶¶ 126-28. The TAC likewise alleges that Curis "knowingly and intentionally filed a complaint against Carter which contained false allegations" to pressure him into settlement. *Id.* ¶ 92.[5]

[5] Curis's characterization of herself as minimally involved "local counsel" disregards the allegations concerning her own conduct. (Curis MOL at 4-5.) The TAC alleges that she supplied the filing credentials, filed accusations she knew were false to pressure a settlement, performed no vetting of Doe's account, and was ordered to show cause for "false" statements. TAC ¶¶ 36-37, 88, 90-92, 98. The public records contradicting that account existed before filing; NBC News's later discovery of them does not make them post-filing facts. *Id.* ¶¶ 94-95, 119-123.

Defendants cannot absolve themselves of their own misconduct by blaming Doe for first raising the false allegations. (*See* Buzbee MOL at 11, 13-14.) Counsel may not engage in "creating or using false evidence, or assisting a client with the aid of evidence he knows to be false." *Honzawa*, 268 A.D.2d at 331 (reinstating a malicious prosecution claim against attorneys); *see also Thomas v. G2 FMV, LLC*, 2016 WL 320622, at *6 (N.Y. Sup. Ct. Jan. 27, 2016) (no probable cause where emails indicated the underlying complaint may have contained false allegations), *aff'd*, 147 A.D.3d 700 (1st Dep't 2017).

Even Defendants' own cases confirm the point. In *Jovanovic v. City of New York*, this Court *refused* to dismiss the malicious prosecution claim "given the allegation of knowingly making false statements." 2006 WL 2411541, at *10 (S.D.N.Y. Aug. 17, 2006). The later appellate decision Defendants cite affirmed *summary judgment* based on an accuser's "detailed account" given "without any obvious reason for skepticism," while recognizing that probable cause may be absent when "circumstances raise doubt as to the [putative victim's] veracity." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012).[6]

Defendants' selective reading of Doe's interview, ignoring the express allegation quoting Doe's admission that Carter did not sexually assault her, confirms that it presents a fact question. (*See* Buzbee MOL at 16-17.) Defendants themselves describe the exchange as "ambiguous" and "contradictory." (*Id*. at 17.) Deciding which of Doe's statements to credit and what inferences to

[6] Defendants cannot rely on Judge Torres's rulings to suggest that the Underlying Action had merit or that they had probable cause to bring the action, as Judge Torres did not rule on the merits of Doe's claims. (Buzbee MOL at 12.) In denying Carter's motion to strike, Judge Torres found that he had not overcome the strong presumption against striking judicial pleadings. *See* Underlying Action, ECF 48 at 4 n.2; *Heilbut*, 778 F. Supp. 3d at 572-73 (order granting leave to amend did not create presumption of probable cause); *Ramchandani*, 2021 WL 930627, at *8. *Fink v. Shawangunk Conservancy, Inc.*, 15 A.D.3d 754, 755 (3d Dep't 2005), is not to the contrary. There, the court presumed probable cause because it had already found "triable questions of fact surrounding defendant's adverse possession claim" on a full evidentiary record.

draw from them is quintessentially a task reserved for the finder of fact. *Sparrow Fund*, 2019 WL 8955307, at *5; *see also Johnson v. United States*, 759 F. Supp. 3d 425, 446 (S.D.N.Y. 2024).

### 2. *Defendants Failed to Investigate Doe's Claims Before Filing*

Even apart from the allegations of fabrication, the TAC details the many reasons why Defendants lacked probable cause to file the Underlying Action accusing Carter of sexual assault just six days after Doe was referred to them as a client. TAC ¶ 97; *see Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, 2020 WL 1330283, at *4 (S.D.N.Y. Mar. 22, 2020) (lack of probable cause sufficiently alleged where existence and extent of pre-filing investigation are in dispute).[7]

Basic checks would have exposed glaring defects in Doe's account. She claimed the assault occurred at "a large white residence with a gated U-shaped driveway" approximately twenty minutes from Radio City Music Hall, although public records showed no matching Manhattan residence other than Gracie Mansion. TAC ¶¶ 119-120. Publicly available footage contradicted both her claim to have "watched the VMAs on a jumbotron" and her account of approaching limousine drivers. *Id.* ¶¶ 121, 123. And her father supposedly "arrived to pick her up shortly before dawn," requiring a nearly six-hour drive from Rochester, yet recalled no such trip. *Id.* ¶ 122.[8]

A simple internet search would have revealed additional reasons to question Doe's claims. The TAC alleges that publicly available records disclosed "three previous occasions" on which Doe had made "false sexual assault allegations against others which were either dropped by her or

[7] There is nothing inconsistent in alleging both deliberate fabrication and inadequate investigation. (Buzbee MOL at 16.) Rule 8 permits allegations in the alternative. Fed. R. Civ. P. 8(d)(2)-(3).

[8] Buzbee and Fortney admit that they never traveled to Alabama to meet with Doe before filing the lawsuit, before amending the complaint to name Carter, or before drafting or sending the extortionate demand letter, and that no investigator was hired to travel to Alabama to meet with Doe for any purpose related to Doe or the lawsuit. ECF 43-2 ¶¶ 10, 11, 13, 19; ECF 43-1 ¶¶ 10, 11, 13, 20. Tellingly, while Fortney claims to have reviewed the original complaint, Buzbee makes no such statement. ECF 43-2 ¶ 12; ECF 43-1 ¶ 12.

dismissed by courts." TAC ¶ 94. Those records also included her psychiatrist's public testimony describing a "history of hallucinations" and showed that Doe had been in Mental Health Court just "90 days before filing her lawsuit against Carter." *Id.*

Defendants dismiss these red flags as "tangential details" and characterize Carter's allegations as merely a "credibility contest." (Buzbee MOL at 14-16.) But these are core facts that are critical to the false allegations—where the assault occurred, how Doe reached that location, and how she returned home—that were easily verified, or in this case, refuted by publicly available information. TAC ¶¶ 119-123.

Defendants also invoke Doe's mental health challenges and the passage of decades. (Buzbee MOL at 15-16.) But that only proves the point: it was not reasonable to rely on Doe's decades-old recollection without any corroboration or investigation. TAC ¶¶ 94, 119-123; *see Honzawa*, 268 A.D.2d at 331 (reinstating a malicious prosecution claim against counsel who "knew or should have known that [their client] could not have had personal knowledge of the matters therein contained"); *cf. Corona v. Lunn*, 2002 WL 550963, at *6-7 (S.D.N.Y. Apr. 11, 2002) (although history of "psychiatric problems and substance abuse" was "certainly sufficient to call [complainant's] veracity into question," investigators "did not merely take her account at face value," but "independently sought to corroborate the essential details of her story" through records, witness interviews, and inspection of the premises).

"[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Colon v. City of N.Y.*, 60 N.Y.2d 78, 82 (1983); *see also Klein v. Aicher*, 2020 WL 4194823, at *9-10 (S.D.N.Y. July 21, 2020) (no reasonable inquiry where counsel based false complaint off of a single conversation and facts disproving allegations were easily available to claimant's counsel); *De la Roca v. Schacht*, 244 A.D.3d 1570, 1573

(3d Dep't 2025) (malicious prosecution claim stated where defendant commenced civil action based on an English-language statement and contract supposedly signed by the plaintiff, when "even a cursory inquiry would have revealed that plaintiff could not speak or read English"). Even Defendants' Rule 11 cases make clear that an attorney may rely only on "objectively reasonable representations of the client." *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329-30 (2d Cir. 1995); *see also Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 481 (S.D.N.Y. 2003) (denying sanctions because counsel conducted "an extensive investigation," including "review of medical and documentary evidence, non-client interviews, and a site inspection of the scene").[9] Likewise, the declarations and affidavits that Doe executed are irrelevant to whether probable cause existed at the time the complaint was filed, as the earliest of those declarations was executed on November 18, 2024—nearly a month *after* the Underlying Action was commenced. ECF 172-1 at Ex. A. And even if Defendants could retroactively manufacture probable cause, they were obligated to investigate the obvious flaws in Doe's account before proceeding. *See Honzawa*, 268 A.D.2d at 331; *Thomas*, 2016 WL 320622, at *6.[10]

Defendants object that they did not need "complete proof" or "an in-depth psychological profile" before filing. (Buzbee MOL at 13.) What the law actually requires in order to establish probable cause is a reasonable inquiry based on the particular circumstances of the claims, which

---

[9] Defendants rely on *Rothstein v. Carriere* (Buzbee MOL at 15), but that case involved a presumption of probable cause arising from a grand jury indictment and the false accuser's claims, unlike here, were supported by independent facts. 373 F.3d 275, 293 (2d Cir. 2004).

[10] Defendants' speculations concerning how the Underlying Action might have played out if Doe had not dismissed it (Buzbee MOL at 12) are irrelevant. *Black v. Green Harbour Homeowners' Ass'n, Inc.* relied on actual merits rulings and success on some underlying claims, not predictions about how an undeveloped record might have been adjudicated. 37 A.D.3d 1013, 1014 (3d Dep't 2007). Regardless, even if Doe "continued to attest to the truthfulness of her account" previously, she has subsequently admitted that Carter did not rape her when she was a child, and even the limited record based on widely available facts and statements by third parties contradicted Doe's claims regarding the night of the incident. TAC ¶¶ 4, 29, 159.

can and does require gathering evidentiary support and testing a client's allegations where they appear inconsistent with easily proven (and undisputed) facts—which Defendants failed entirely to do here. Defendants cannot rely on their self-serving and conclusory claims that they conducted "rigorous due diligence." (*Id*. at 14.) The TAC squarely disputes that account, identifying obvious contradictions in Doe's story that even a cursory investigation would have exposed. TAC ¶¶ 85-86, 119-123. In *Sparrow*, the defendant likewise relied on its attorney's declaration describing a pre-suit investigation to establish probable cause. Because the parties disputed whether that investigation actually occurred, the court held that "the issue of probable cause cannot be resolved as a matter of law at this stage of the proceedings." 2020 WL 1330283, at *5. In granting leave to amend, this Court likewise declined to resolve Defendants' malicious prosecution futility arguments that "rely largely on facts that are outside of the complaint." ECF 148 at 21:16-22.

*3. Defendants Lacked Probable Cause to Continue Pursuing the Claims*

Even assuming Defendants had probable cause to file the Underlying Action (which they did not), Defendants have no excuse for continuing to prosecute the claims after NBC News exposed the fundamental defects in Doe's account. *See Honzawa*, 268 A.D.2d at 329 (recognizing liability for "initiation or continuation of a proceeding despite the lack of probable cause"). In less than a week, NBC News uncovered evidence contradicting key parts of Doe's story. TAC ¶¶ 122, 124-125, 141. Confronted with that evidence, Doe admitted she "made some mistakes" and acknowledged that she had been guessing about the location of the alleged assault. *Id.* ¶ 142. However, Defendants continued to pursue their unfounded lawsuit for several months after being confronted with this evidence. *Id*. ¶ 143.

Defendants minimize these contradictions as peripheral details. (Buzbee MOL at 5, 14-16.) But those details included the location of the alleged assault, the people supposedly present, and Doe's account of returning home—the very facts that could have corroborated her accusation.

Whatever Defendants' explanation for failing to uncover those defects themselves, NBC News put them squarely on notice. *Honzawa*, 268 A.D.2d at 331; *Thomas*, 2016 WL 320622, at *6.

**B. Defendants Acted With Malice**

The TAC plausibly alleges that Defendants used false accusations of child sexual abuse for "the improper purpose of extorting a settlement." *Sapienza v. Notaro*, 172 A.D.3d 1418, 1419-20 (2d Dep't 2019); *accord* Restatement (Second) of Torts § 676, cmt. c (Am. L. Inst. 1977) (malice may also be established where a lawsuit is "initiated for the purpose of forcing a settlement that has no relation to the merits of the claim").[11] Far from "a conclusory pronouncement" (Buzbee MOL at 17), the TAC details that the Defendants created a media spectacle to build up attention to the false claims in advance of filing, and knowingly advanced false and sensational allegations of sexual assault, timed and publicized to inflict maximum reputational and economic harm, with the explicit goal of coercing Carter into paying "something of substance" to avoid public exposure and further damage. *See, e.g.*, TAC ¶¶ 17-21, 64-72, 105-10. When Carter refused, they named him on the eve of his daughter's film premiere and an NFL owners' meeting, maximizing the personal and business consequences. *Id.* ¶¶ 19-21. Buzbee then amplified the pressure by telling TMZ that Doe was "not ruling out filing rape charges." *Id.* ¶ 148; *see also id.* ¶¶ 67-74 (alleging Buzbee publicly advertised that he would pursue a settlement-pressure strategy and that "many powerful people will be exposed").

[11] Defendants' citation to *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 204 (1999), to imply a heightened pleading standard for the malice element is misplaced. *See Johnson*, 759 F. Supp. 3d at 446 (rejecting attempts to impose heightened pleading standards or summary judgment-level evidentiary requirements on malicious prosecution claim); *Sparrow Fund Mgmt.*, 2020 WL 1330283, at *5 (same). Indeed, *Engel* refused to "carve out a special rule for attorneys." 93 N.Y.2d at 205. Likewise, it is well established that the malice element does not require a showing of "conscious falsity" as Defendants' out-of-context quotation suggests (Buzbee MOL at 17) (*citing Hornstein v. Wolf*, 109 A.D.2d 129, 133 (2d Dep't 1985))—though, in any event, the TAC satisfies even that standard.

The existence of malice may also be inferred from the absence of probable cause. *Martin v. City of Albany*, 42 N.Y.2d 13, 17-18 (1977) (collecting cases); *Emanuel v. Griffin*, 2013 WL 5477505, at *8 (S.D.N.Y. Oct. 2, 2013); *Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*, 2002 WL 737477, at *11 (S.D.N.Y. Apr. 25, 2002) (collecting cases). Because the TAC adequately alleges that Defendants lacked probable cause to bring the Underlying Action (*supra* Part I(A)), Carter also met his burden at this stage to show that Defendants acted with malice in bringing and continuing to pursue the Underlying Action.

In arguing to the contrary, Defendants apply the wrong standard. (Buzbee MOL at 17.) In federal court, "malice may be averred generally." *Hilfiger*, 2002 WL 737477, at *10 (citing Fed. R. Civ. P. 9(b)). The question is not whether Defendants can supply an "alternative explanation" for their conduct (Buzbee MOL at 18); to the contrary, the Court is required to draw all reasonable inferences in favor of Plaintiff and accept the factual allegations in the TAC as true. *Heilbut*, 778 F. Supp. 3d at 564; *see also Cardoza v. City of N.Y.*, 139 A.D.3d 151, 164 (1st Dep't 2016) (malice "may be proven by circumstantial evidence" and "upon inferences to be reasonably drawn from the surrounding facts and circumstances" (internal quotation marks and citations omitted)); *Ramchandani*, 2021 WL 930627, at *6. Defendants' reliance on *American Dental Association v. Cigna Corporation*, 605 F.3d 1283, 1294 (11th Cir. 2010), is misplaced, as that case concerned RICO claims supported by only "bare assertion[s]" of conspiracy, unlike the TAC's detailed allegations. Defendants' proposed "obvious alternate explanation"—that they were simply representing a client who claimed to have been wronged—does not account for the allegations that they manufactured the accusation and procured knowingly false affidavits in order to support it. (Buzbee MOL at 18; TAC ¶¶ 82, 96.)

Moreover, New York law is unequivocal: zealous representation does not permit attorneys to manufacture or use false evidence, or to assist a client in advancing claims they know or should know to be false, as alleged here in the TAC. *See Honzawa*, 268 A.D.2d at 330-31.

**C. Defendants' Actions Caused Special Injuries to Carter**

The TAC alleges harm far beyond the ordinary burdens of defending a lawsuit. Defendants publicly accused an international celebrity of sexually assaulting a thirteen-year-old child, using the predictable devastation to his reputation and livelihood to demand payment. TAC ¶¶ 105-113. To plead special injury, a plaintiff must allege "a highly substantial and identifiable interference with person, property, or business." *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 205 (1999). The TAC satisfies this standard. As Buzbee himself acknowledged, accusations such as this are "very hurtful to people if they're not true and very hurtful, frankly, if they are true." TAC ¶ 72.

***Lost Opportunities***. The TAC details significant interferences with and damages to Carter's personal and business affairs flowing directly from Defendants' malicious prosecution and the resulting reputational harm. The TAC details how Carter was deprived of a $80 million business opportunity. *Id.* ¶¶ 170, 173. Specifically, immediately after Buzbee and his co-conspirators went public with Doe's false allegations, Roc Nation and Carter lost contracts in the sports and entertainment space that would have generated at least $20 million in revenue, representing a minimum fee guarantee, while the full fee would have been $80 million had the contract been performed. *Id*. That lost deal deprived Carter himself of "a substantial fee for his services associated with the deal." TAC ¶ 170. The loss of that fee is the type of "specific, verifiable loss of business" that *Engel* recognizes as special injury. 93 N.Y.2d at 207. In *Thomas v. G2 FMV, LLC*, the First Department held that special injury was adequately pleaded where the plaintiff lost a consulting arrangement "as a direct result of the allegations in the complaint" in the underlying action. 147 A.D.3d 700, 700 (1st Dep't 2017). Likewise, *Sapienza* sustained a

malicious prosecution claim against attorneys where the plaintiff's employer declined to renew his employment agreement solely because the employer had been named in the underlying lawsuit. 172 A.D.3d at 1420. And in *Heilbut*, the Court found special injury adequately pleaded where an employer terminated an agreement "expressly citing concerns about the attention and bad publicity caused by the [underlying action]." 778 F. Supp. 3d at 574-75.

Carter also lost out on a $55 million personal credit line, which is a concrete financing opportunity that alone is sufficient to plead special injury. TAC ¶ 174. In *Sparrow*, special injury was adequately pleaded where the plaintiff alleged "a specific causal relationship between the [underlying lawsuit] and its revenue losses and difficulty in raising capital." 2020 WL 1330283, at *6; *see also In re Eerie World Entm't, L.L.C.*, 2006 WL 1288578, at *8 (Bankr. S.D.N.Y. Apr. 28, 2006) (lost business opportunity after clients and financing sources refused to deal with plaintiff); *Strumpf v. Asdourian*, 2006 WL 6348824 (N.Y. Sup. Ct. Dec. 12, 2006) (loss of clients and increased insurance rates).[12]

The losses to Carter's businesses further support special injury. A consumer brand business in which Carter holds a 50% interest was also denied a $115 million loan, *id.* ¶ 175. Defendants cannot disregard Carter's business losses merely because he conducts business through corporate entities. (Buzbee MOL at 19.) Their own authority recognizes an individual claim where the wrongdoer breached "a duty owed to the shareholder independent of any duty owing to the

[12] While Defendants claim that "damage to credit or loan opportunities is generally insufficient," their cases do not establish that proposition and are distinguishable. (Buzbee MOL at 19.) *See Wilhelmina Models, Inc. v. Fleisher*, 19 A.D.3d 267, 269 (1st Dep't 2005) (rejecting financing injury because the plaintiffs were "separate entities from the potential borrower"); *Diamond v. Strassberg*, 751 F. Supp. 1152, 1153 (S.D.N.Y. 1990) (applying the pre-*Engel* standard in holding complaint lacked certainty as to causation of diminished credit rating); *Lincoln First Bank of Rochester v. Siegel*, 60 A.D.2d 270, 280 (4th Dep't 1977) (holding, at summary judgment stage, that plaintiff's allegations in support of prima facie tort claim lacked the details of the amounts of lost financing).

corporation wronged." *Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985). That happened here: Defendants maliciously prosecuted Carter himself, impairing the business opportunities dependent on his name and reputation. The TAC alleges that Carter's businesses are "inseparable from" his "personal brand and image," identifies lost contracts and financing caused by the accusations against him, and alleges that those losses "directly impacted him financially." TAC ¶¶ 173, 175-176. In *Heilbut*, this Court considered harm to an individual plaintiff's company in finding special injury, concluding that the underlying action "harmed his company and its relations with investors during the IPO process." 778 F. Supp. 3d at 575. And the First Department has recognized that corporate losses attributable to injury to an owner's personal earning capacity may be "relevant and admissible to assist the jury in determining plaintiff's lost earnings." *Behrens v. Metropolitan Opera Ass'n, Inc.*, 18 A.D.3d 47, 50-51 (1st Dep't 2005).[13] Here, too, the lost contracts and denied financing show how Defendants' prosecution of Carter personally impaired his earning capacity and business opportunities.

***Reputational & Emotional Harm.*** Although Carter's lost business opportunities alone are sufficient to satisfy the special-injury requirement, the extraordinary reputational and emotional harm Defendants inflicted on him provides an additional basis for that finding. TAC ¶¶ 171-78. Defendants claim that the reputational harm suffered by Carter was "no different than what might

[13] Defendants argue that "[h]arm to Roc Nation cannot be recovered" by Carter (Buzbee MOL at 19), but their cases all involved plaintiffs who asserted rights and claims that were not theirs *personally* but instead belonged to their company. *See Abrams*, 66 N.Y.2d at 953-54 (damages related to company and involved "charges of diversion of corporate assets"); *Fisher v. Big Squeeze (NY), Inc.*, 349 F. Supp. 2d 483, 487-88 (E.D.N.Y. 2004) (breach of fiduciary duty action involving mismanagement of the company); *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 736 (2d Cir. 1987) (claims "involved injuries to the Corporation," not "against [plaintiff] in his individual capacity"); *see also Wilhelmina Models*, 19 A.D.3d at 269 ("plaintiffs could not identify [in discovery] . . . entities that terminated their business relationships because of the allegations in the underlying action").

be suffered by *any* person." (Buzbee MOL at 20.) This blinks reality. The TAC describes how the false and malicious child sexual assault allegations were widely disseminated through court filings, media coverage, and a nationally televised interview, resulting in:

- A dramatic deterioration in Carter's public image, with negative sentiment toward him rising from 40-41% in 2022-2023 to 79% after the allegations, which generated approximately 1.3 million social media mentions, TAC ¶ 178;
- Widespread documented public contempt, including calls for Carter to be imprisoned, threats of violence, and accusations of being a "satanist," "trafficker," "terrorist," and "monster[,]" *id.* ¶ 177; and
- Emotional distress and humiliation, particularly from having to explain to his children and family that he had been accused of raping a child, *id.* ¶ 171.

The Court in *Heilbut* sustained similar allegations. There, a plaintiff alleged that thousands of online posts disclosed his home address and attacked his character, creating "fear and anxiety for Dr. Bredt and his family." 778 F. Supp. 3d at 575. The Court held: "This rises beyond the typical psychological burdens of defending a lawsuit." *Id.* The Court also rejected the argument that defendants could not be held responsible for their supporters' conduct, because those supporters echoed accusations in the underlying complaint that defendants amplified online and through other publications. *Id.*; *see Dudick v. Gulyas,* 277 A.D.2d 686, 688 (3d Dep't 2000) ("damages for harm to reputation are recoverable in a malicious prosecution action"). Here, the TAC likewise connects the public harassment to Defendants' accusations and publicity campaign, and identifies explicit threats to "kill" or "execute" Carter and his wife. TAC ¶ 177. Those allegations go well beyond the "vague allegations of reputational loss" in *Engel*, 93 N.Y.2d at 207.[14] Defendants' insistence that Carter must identify a court-imposed restraint conflicts with *Engel*, which holds "[a]ctual imposition of a provisional remedy need not occur." *Id.* at 205.

---

[14] Defendants' remaining cases are distinguishable. *See Rubin v. Lutfy*, 2009 WL 4878425, at *2 (N.Y. Sup. Ct. Nov. 23, 2009) (agreeing that "time and money spent in the litigation and vague assertions of damage to reputation do not constitute special damages"); *Hornstein v. Wolf,* 109 A.D.2d 129, 132 (2d Dep't 1985) (dismissed for failure to plead lack of probable cause and

## II. CARTER STATES A CLAIM FOR VIOLATION OF N.Y. JUDICIARY LAW SECTION 487

### A. Section 487 Applies to the Defendants and the Conduct Alleged.

#### *1. Section 487 reaches attorney misconduct in federal court.*

Whether Section 487 reaches attorney deceit in federal proceedings is a question of New York law governed by *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). This Court asked for "further development" of that question. ECF 148 at 24:4-9. Defendants offer none. They rest entirely on *Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 664 (S.D.N.Y. 2025), *aff'd on other grounds*, 2026 WL 366443 (2d Cir. Feb. 10, 2026), which narrowly construed Section 487 to avoid a "potential" conflict with federal law. In doing so, *Delaney* effectively found preemption without conducting the necessary analysis or addressing the presumption against it. *Cf. Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 397 (1988) (federal courts have no power to "rewrite a state law"). Under *Erie*, this Court must "carefully predict how the highest court of the state would resolve the uncertainty or ambiguity" by examining the statutory text, New York decisional law and the statute's place within the broader statutory scheme. *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 470-71 (2d Cir. 2018) (internal citations omitted).

Section 487 reaches attorney misconduct "with intent to deceive the court or any party." N.Y. Jud. Law § 487(1). The term "the court" identifies the particular court where the misconduct occurred, not the sovereign that created it. *See CSX Transp.*, 879 F.3d at 471 ("[t]he plain and unambiguous meaning" of "the court" in CPLR 5222(b) is that it "refers to the court out of which the restraining notice issued"—there, a federal district court); *see also* N.Y. Stat. Law § 94.

---

malice); *Sankin v. Abeshouse*, 545 F. Supp. 2d 324, 328 (S.D.N.Y. 2008) (vague allegations that arbitration hindered plaintiff's recovery from cancer and contributed to removal from company due to damaged relationship with the company's principal were insufficient).

Elsewhere in Article 15 of N.Y. Judiciary Law ("Article 15"), the Legislature expressly limited provisions to courts "of this state" or "in this state." *See, e.g.*, N.Y. Jud. Law §§ 470, 478, 486. No such limitation appears in Section 487. Where the Legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that the Legislature acts intentionally and purposely in the disparate inclusion or exclusion." *Rivers v. Birnbaum*, 102 A.D.3d 26, 36 (2d Dep't 2012) (internal quotation marks and citation omitted).

The statutory structure further reinforces that reading. Defendants incorrectly assert that Section 487 "is placed in an article devoted to the organization of state courts." (Buzbee MOL at 21.) But Article 15 is entitled "Attorneys and Counsellors," regulates attorneys, and is not confined to state-court practice. To the contrary, Article 15 contains numerous provisions that are regularly applied in federal proceedings.[15] Indeed, this Court has applied N.Y. Judiciary Law § 478 to reach federal courts, holding that "New York law prohibits the unauthorized practice of law in both New York State courts and federal courts in this state." *AML IP, LLC v. Aero Global, LLC*, 2025 WL 2673691, at *5 (S.D.N.Y. Sept. 18, 2025) (Ho, J.) (citing N.Y. Jud. Law §478).

Even Judge Liman, the author of *Delaney*, has noted that "New York state courts have entertained claims for § 487 violations based on conduct in federal court." *Hong v. Mommy's Jamaican Mkt. Corp.*, 2024 WL 3824394, at *22 (S.D.N.Y. Aug. 14, 2024) (collecting cases). In *Bill Birds, Inc. v. Stein Law Firm, P.C.*, 35 N.Y.3d 173, 176, 179-80 (2020), the New York Court of Appeals examined in detail a Section 487 claim arising from litigation in the Eastern District of New York and did not express any concern that the underlying litigation arose in federal, rather

[15] *See, e.g.*, § 489 (*Lateral Recovery LLC v. Funderz.net, LLC*, 2024 WL 4350369, at *16 (S.D.N.Y. Sept. 27, 2024) (champerty)); § 474 (*I.M. by Hartmann v. DiCostanzo*, 2020 WL 1330241, at *4 (S.D.N.Y. Mar. 23, 2020) (contingency fees)); and § 475 (*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998) (attorney charging liens)).

than state, court. *See In re Blue Dog at 399 Inc.*, 2020 WL 6390674, at *7 (Bankr. S.D.N.Y. Oct. 30, 2020) (analyzing *Bill Birds*). The Appellate Divisions too have applied the statute to federal-court deceit.[16] These decisions provide "helpful indicators" of how New York's highest court would answer whether Section 487 applies in federal court. *Venture Grp. Enters., Inc. v. Vonage Bus. Inc.*, 750 F. Supp. 3d 260, 270 (S.D.N.Y. 2024).

Defendants' reliance on Section 487's age is misplaced. (Buzbee MOL at 21.) The original 1787 enactment expressly addressed attorney deceit "in any court of justice," *Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 12 (2009)—a phrase that, as even the one New York court to accept Defendants' position has acknowledged, "did not refer to a specific category of court, but rather [served] as an umbrella term for courts generally." *Knopf v. Dorsey & Whitney, LLP*, 2026 WL 2673667, at *5 n.4 (N.Y. Sup. Ct. Aug. 26, 2026).[17] And the operative language on which Defendants' argument depends—"intent to deceive the court or any party"—dates to 1830 and has been reenacted four times since the federal court system was established. *Amalfitano*, 12 N.Y.3d at 12-14.[18]

---

[16] *See, e.g.*, *Schnur v. Balestriere*, 208 A.D.3d 1117, 1118 (1st Dep't 2022) (reinstating claim alleging that accusations in the underlying federal action were "not just unfounded but intentionally false."); *Izko Sportswear Co. v. Flaum*, 25 A.D.3d 534, 537 (2d Dep't 2006) (reinstating claim alleging deceit of a bankruptcy court). The Fourth Department recently noted *Delaney*'s reasoning but, like the Second Circuit, declined to endorse it. *Claude Mayo Construction Co., Inc. v. Barclay Damon LLP*, 239 A.D.3d 1430, 1431-32 (4th Dep't 2025).

[17] The recent trial-court decision in *Knopf* reinforces this reading. It acknowledged that the text "is not limited on its face" to New York courts, that the statute's purpose "would encompass the actions and statements of New York attorneys in federal-court litigation," and that this reading is "reasonable, even persuasive." *Id.* at *6-7 & n.7. Although *Knopf* ultimately chose the other reading under the rule of lenity, "[t]he mere possibility of articulating a narrower construction . . . does not by itself make the rule of lenity applicable." *People v. Roberts*, 31 N.Y.3d 406, 424 (2018). Tellingly, Defendants neither cite *Knopf* nor defend its reasoning.

[18] Furthermore, Section 487 does not pre-date the federal courts in *New York*, as Defendants claim. (Buzbee MOL at 21.) The Continental Congress established the Court of Appeals in Cases of Capture in 1780, and in June 1786 directed that court to assemble "at the city of New-York." *See*

Nor does the statute's purpose point to state courts alone. (Buzbee MOL at 21.) The Court of Appeals describes the statute's purpose in terms of the attorney who violated the statute, not the courthouse where he did that: Section 487 safeguards "an attorney's special obligation of honesty and fair dealing in the course of litigation," *Bill Birds*, 35 N.Y.3d at 178, and "the integrity of attorneys who fulfill the role of officers of the court," *Urias v. Daniel P. Buttafuoco & Associates, PLLC*, 41 N.Y.3d 560, 567 (2024).

2. *Federal sanctions do not displace Section 487's independent civil remedy*

Defendants argue that Section 487 "conflicts with the federal scheme for regulating attorney misconduct." (Buzbee MOL at 21.) But they neither acknowledge the presumption against preemption nor identify the "clear and manifest purpose of Congress" needed to overcome it. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).[19]

The federal sanctions scheme does not displace state-law remedies for attorney misconduct: (1) Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct," Fed. R. Civ. P. 11(c)(4), and are not "substitutes for tort damages," *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 553-54 (1991); [20] and (2) Section 1927

---

*Penhallow v. Doane's Administrators*, 3 U.S. (3 Dall.) 54, 62 (1795); 30 *Journals of the Continental Congress* 355-56 (June 27, 1786).

[19] Indeed, one of the flaws is *Delaney*'s premise that "[i]t cannot be assumed that ambiguous state legislation is intended to subvert a uniform federal scheme." 761 F. Supp. 3d at 668. That gets the presumption precisely backwards: it is federal law that is not presumed to displace state law. And that presumption has particular force here, given the States' traditional authority to prescribe "the standards of professional conduct." *Leis v. Flynt*, 439 U.S. 438, 442 (1979).

[20] Rule 11's own commentary rejects Defendants' argument, explaining that Rule 11 is "not the exclusive source for control of improper presentations" and preserves an "independent action for malicious prosecution or abuse of process." Fed. R. Civ. P. 11 Advisory Committee's Note to 1993 amendment. Moreover, as previously discussed with the court on July 29, 2026, Rule 11 is hardly a substitute for Section 487. ECF 148 (July 29, 2026 Tr. 12:8-22). The Second Circuit has repeatedly reversed or vacated sanctions imposed under that rule. *See, e.g.*, *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108-09 (2d Cir. 2013); *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 157-59 (2d Cir. 2010); *In re Pennie & Edmonds LLP*, 323 F.3d 86, 87 (2d Cir. 2003).

reaches only "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

The Third Circuit rejected the same displacement theory in *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 392-94 (3d Cir. 2002), holding that the Federal Rules "do not preempt claims for abuse of process and similar torts" arising from federal litigation. That conclusion extended to Pennsylvania's Dragonetti Act, which, like Section 487, authorizes punitive damages and other recovery beyond federal sanctions. *Id.* at 392. Indeed, the court considered the breadth of available remedies "a strong indication of [the Act's] substantive nature." *Id*.

Nor does Section 487 threaten "vigorous advocacy." *Delaney*, 761 F. Supp. 3d at 667. Defendants themselves argue that the statute "affords attorneys wide latitude" and reaches only intentional deceit. (Buzbee MOL at 24.) No attorney has a protected interest in lying to a court. And unlike a sanctions motion, a Section 487 claim "must be brought as an action, not by motion," affording the defendant "the full panoply of rights accorded parties to a civil litigation." *Hong*, 2024 WL 3824394, at *22.

There is nothing "absurd" about applying state substantive law to litigation activity in federal court. (Buzbee MOL at 21.) It is commonplace.[21] To the contrary, Defendants' proposed reading would create an incentive to select federal court to avoid Section 487, a result which conflicts with the twin aims of *Erie* identified in *Hanna v. Plumer*: "discouragement of forum-shopping and avoidance of inequitable administration of the laws." 380 U.S. 460, 468 (1965).

[21] For example, litigants who bring claims under Nevada law may find themselves subject to the Nevada Anti-SLAPP statute, while those who bring similar claims under the laws of another state are not. *See Adelson v. Harris*, 876 F.3d 413, 414-15 (2d Cir. 2017). "Whatever lack of uniformity this may produce between federal courts in different states is attributable to our federal system." *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Section 487 is not a "court-directed sanction" (Buzbee MOL at 22), it is a tort. The remedy runs to "the party injured" and is recovered "in a civil action." N.Y. Jud. Law § 487. Even *Delaney* acknowledges that the statute "provides a private cause of action." 761 F. Supp. 3d at 668-69;[22] *see also Urias*, 41 N.Y.3d at 568-69 ("we decline to confine a plaintiff alleging attorney deceit to the sole option of proceeding under CPLR 5015.").[23]

**B. Carter Has Standing Under Section 487**

Defendants' argument that Carter lacks standing because he was not their client (Buzbee MOL at 23; Curis MOL at 6) ignores Section 487(1)'s text, which prohibits intentional deceit directed at "the court or any party," awarding treble damages to "the party injured." By contrast, only subdivision (2) expressly refers to an attorney's "client." N.Y. Jud. Law § 487. Consistent with that distinction, the Second Circuit affirmed an award of treble damages under Section 487 to litigants injured by opposing counsel's deceit in *Amalfitano v. Rosenberg*, 572 F.3d 91, 92 (2d Cir. 2009).[24]

[22] *Delaney* distinguished other litigation torts because Section 487 "directly targets attorney deceit within a court proceeding." 761 F. Supp. 3d at 668-69. But malicious prosecution and abuse of process likewise impose liability for misuse of judicial proceedings. *Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Tchrs. Ass'n, Inc.*, 38 N.Y.2d 397, 400 (1975) (explaining that both torts share an "improper purpose in the use of legal process").

[23] Defendants' "second bite" argument rests on the same conflation. The TAC paragraph they cite acknowledges Rule 11's applicability, not its exclusivity. (Buzbee MOL at 23 (citing TAC ¶ 201).) Nor does withdrawing a Rule 11 motion establish waiver of an independent damages claim. *See Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (2006) (waiver "should not be lightly presumed" and requires "a clear manifestation of intent").

[24] This court also has expressly rejected Defendants' standing argument. *Trepel v. Dippold*, 2005 WL 1107010, at *5 (S.D.N.Y. May 9, 2005) (explaining that Section 487 claims have been "routinely upheld when brought against an adversary's counsel."); *see also Kimbrook Rte. 31, L.L.C. v. Bass*, 147 A.D.3d 1508, 1508 (4th Dep't 2017); *Schindler v. Issler & Schrage, P.C.*, 262 A.D.2d 226, 229 (1st Dep't 1999). Notably, the court in *Trepel* addressed Defendants' principal authority, *Rogath v. Koegel*, 1998 WL 695668, at *4 n.10 (S.D.N.Y. Oct. 6, 1998), explaining that *Rogath* grouped Section 487 with malpractice claims and dismissed them collectively without analyzing the statute's requirements. *Trepel*, 2005 WL 1107010, at *5. *Lipin v. Hunt*, 2015 WL 1344406, at *8 (S.D.N.Y. Mar. 20, 2015), merely repeated *Rogath*'s conclusion.

The TAC also specifically identifies injury proximately caused by Defendants' deceit: "the attorneys' fees and costs incurred in defending against the fraudulently filed and prosecuted claims." TAC ¶ 203. In *Amalfitano*, the Court of Appeals confirmed that these expenses may be recovered under Section 487 even if the court never believed the misrepresentation. 12 N.Y.3d at 15. Carter was also injured here by Buzbee's use of Curis's credentials, which allowed Buzbee to file suit, TAC ¶ 88, and enabled him to evade the Court's "gatekeeping function." TAC ¶¶ 87-92, 201; *cf. Man Wei Shiu v. New Peking Taste Inc.*, 2013 WL 2351370, at *5 (E.D.N.Y. May 28, 2013). While Defendants object that Carter was not harmed by Buzbee's false admission and fabricated death threat, TAC ¶¶ 87-92, 160-67, these episodes further establish a pattern of egregious conduct and deliberate deception. Indeed, their insistence that Carter "*benefitted*" when they allegedly fabricated a death threat in his name reveals why Section 487's treble damages are necessary. (Buzbee MOL at 24.) Falsely accusing Carter of threatening to kill his accuser is surely no favor to him.

### C. The TAC Pleads Specific Acts of Intentional Deceit.

#### *1. The TAC Alleges Egregious Deceit.*

Defendants downplay their intentional acts as "poor lawyering" (Curis MOL at 7), but not "egregious" enough to warrant the application of Section 487. (Buzbee MOL at 24.) But to establish liability, "a plaintiff need not demonstrate a chronic pattern of delinquency"; "a single egregious act . . . is sufficient." *Suzuki v. Greenberg*, 220 A.D.3d 604, 605 (1st Dep't 2023). As discussed above (Part I(A)(1)), the TAC alleges far more than that. The Defendants' alleged actions go beyond mere negligence or "vigorous advocacy"—they are intentional and deceitful misconduct. *See Schnur*, 208 A.D.3d at 1118 (reinstating § 487 claim where allegations "were not just unfounded but intentionally false"); *Bill Birds*, 35 N.Y.3d at 178 (distinguishing between "negligent acts" and deceit).

The Defendants' authorities fail to demonstrate that their actions were acceptable.[25] Carter alleges that counsel helped manufacture the factual accusation and procured knowingly false affidavits to support it. TAC ¶ 96. Moreover, even Defendants do not dispute that Buzbee's use of Fortney to induce Doe to dismiss the Underlying Action through a fabricated death threat from Carter satisfies even their own demanding conception of Section 487. TAC ¶¶ 153-55. That "calculated lie designed to manipulate Doe's decision-making and the trajectory of the litigation" cannot reasonably be considered as mere overzealous advocacy. *Id.* ¶ 202. Even if *Lazich* and *Savitt* mark the boundary, the TAC alleges that the Defendants definitely crossed it.

*2. The TAC Sufficiently Pleads Intent.*

Defendants next argue that Carter has inadequately pled intent. (Buzbee MOL at 24-25; Curis MOL at 7-8.) That argument again fails.[26] Here, the TAC identifies Defendants' conduct, the alleged misrepresentations, and the circumstances supporting the inference that these deceits were deliberate. TAC ¶¶ 82-98, 126-29, 153-61, 196-202.

---

[25] *See O'Callaghan v. Sifre*, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008) (mere assertion of malicious-prosecution counterclaims and accusations of harassing their client through frivolous litigation were insufficient to establish intentional deceit); *Lazich v. Vittoria & Parker*, 592 N.Y.S.2d 418, 419 (2d Dep't 1993) (statements by plaintiff's wife and her counsel were "well within the bounds of the adversarial proceeding" and "not outrageous or egregious in any way."); *Savitt v. Greenberg Traurig, L.L.P.*, 126 A.D.3d 506, 507 (1st Dep't 2015) (complaint offered only "bare legal conclusions" that the attorneys knowingly misled them).

[26] Defendants are incorrect that "allegations of intent must be stated with particularity." (Buzbee MOL at 24.) Rather, because we are in federal court, Rule 9(b) governs. *See Bryant v. Silverman*, 284 F. Supp. 3d 458, 469 (S.D.N.Y. 2018) ("Rule 9(b) also applies to plaintiff's Section 487 claim."). "Rule 9(b) permits '[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally.'" *Id.* at 470 (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)). To be sure, the complaint must nevertheless supply facts supporting the inference of intentional wrongdoing, rather than merely reciting the element. *See IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993) ("[C]onclusory allegations of scienter are sufficient 'if supported by facts giving rise to a "strong inference" of fraudulent intent.'").

Starting with Doe's own account of the Defendants' conduct, the TAC alleges that Doe admitted Carter had not assaulted her and identified Buzbee as the person who pushed her to proceed against him. TAC ¶¶ 29, 82, 96, 158-59. Buzbee's response that Carter alleges only representation of a client "whose credibility was disputed after commencing suit" ignores this admission and whitewashes Buzbee's role in shaping the accusation. (Buzbee MOL at 25.)

Moreover, as the TAC explains, the Underlying Action's pleadings themselves supply further grounds to infer deliberate concealment, including amending the complaint in the Underlying Action to remove specifics and render the claims more vague and less susceptible to challenge. TAC ¶¶ 127-28. The TAC expressly alleges that this change was intended to mask this temporal inconsistency in Doe's story. *Id.* ¶¶ 126, 128. That allegation supports an inference of awareness and concealment, not merely inadequate investigation. *See Ostrander v. Mullen*, 233 A.D.3d 1484, 1485-86 (4th Dep't 2024) (reinstating a Section 487 claim where counsel allegedly possessed and concealed evidence establishing a deed's falsity while continuing to rely on the deed in litigation). Likewise, as described above, Defendants' failure to investigate—or, at a minimum, decision to turn a blind eye to the adverse facts they uncovered—further supports an inference of deceit in bringing these claims on behalf of a plaintiff who had serious credibility issues.

Defendants' authorities are distinguishable and do not require a different result. *See Facebook, Inc. v. DLA Piper LLP (US)*, 134 A.D.3d 610, 614-15 (1st Dep't 2015) (notice of the client's forgery postdated the challenged pleading, and counsel had undertaken investigative efforts prior to filing); *Haggerty v. Ciarelli & Dempsey*, 374 F. App'x 92, 93-94 (2d Cir. 2010) (alleged deceitful conduct concerned counsel's attempts to clarify the plaintiff's claims and an allegedly unnecessary discovery conference).

The Curis Defendants' attempt to reduce the TAC's allegations to negligence fares no better. (Curis MOL at 7.) They insist that Carter alleges only what she "should have known," and is therefore "pleading negligence while claiming intent." (*Id*. at 8.) This ignores the extensive allegations of the TAC describing the Curis Defendants' active role in the deceitful conduct. TAC ¶ 92 (Curis "knowingly and intentionally filed a complaint against Carter which contained false allegations, in an effort to pressure him into settlement."); *see also id.* ¶¶ 36-37, 88, 92, 98, 196-201 (collectively describing her further participation in the deceit: supplying the filing credentials, submitting the challenged pleadings, and misrepresenting their investigative basis). Curis closes by taking issue with the "laundry list" of "overwhelming contemporary evidence" of what she "should have known based upon an investigation." (Curis MOL at 8.) This, however, is exactly the point. Had Curis conducted the investigation she represented when presenting the Underlying Action's pleadings, the readily available contradictions would have been obvious. Thus, there is a strong inference that Curis's deceit was intentional—either she knew the allegations about raping a child were false and verified the pleadings anyway, or she knew she had not conducted the reasonable investigation she represented she had. Regardless, her certification was knowingly false and deceitful. *See Betz v. Blatt*, 160 A.D.3d 696, 699 (2d Dep't 2018) (attorney who sought court approval based on information he "did not independently verify . . . did not eliminate triable issues of fact as to whether he acted with an intent to deceive").[27]

[27] The Curis Defendants' cases are distinguishable. *Guliyev v. Banilov & Associates, P.C.*, 221 A.D.3d 589, 590-91 (2d Dep't 2023) (plaintiff precluded by the doctrine of collateral estoppel from relitigating central issue and Section 487 allegations were "conclusory and factually insufficient"—unlike here where the TAC identifies Curis's participation in filing the false accusations and misrepresenting their investigative basis. TAC ¶¶ 92, 198-99); *Urias*, 41 N.Y.3d at 570-71 (plaintiff's dispute did not concern whether counsel knowingly fabricated facts).

### 3. *Buzbee's Publicly Verifiable Admission Status Does Not Excuse His Attempted Deceit.*

Buzbee argues that his admission status could have been discovered, but Section 487 "focuses on the attorney's intent to deceive, not the deceit's success." *Amalfitano*, 12 N.Y.3d at 14. Here, the TAC alleges that Buzbee repeatedly used Curis's credentials to conceal his unauthorized practice and evade the Court's "gatekeeping function." TAC ¶¶ 87-92, 201. Indeed, Judge Vyskocil found that Buzbee had used another attorney's ECF credentials to file "numerous actions" and "scores of submissions," without even applying for admission. *Id.* ¶ 89. The Curis Defendants' participation in the scheme does not render Buzbee's lack of admission superfluous. *See United States v. Gellene*, 182 F.3d 578, 595 (7th Cir. 1999) (attorney's false representations about bar membership were permissible evidence of intent because they tended to show "intentional dishonesty, absence of mistake, and a cavalier disregard for the truth in his dealings with tribunals"); *cf. Erbacci, Cerone & Moriarty, Ltd. v. United States*, 923 F. Supp. 482, 485 (S.D.N.Y. 1996) (denying a motion submitted by unadmitted counsel notwithstanding local counsel's participation).

## **CONCLUSION**

Based on the reasons stated herein, as well as the allegations set forth in the TAC, Carter respectfully requests that each of the Motions be denied in their entirety.

Dated: September 30, 2026
New York, New York

Respectfully submitted,

By: */s/ Jordan W. Siev*

Jordan W. Siev
Casey D. Laffey
Ian M. Turetsky
REED SMITH LLP
599 Lexington Ave., 22nd Floor
New York, New York 10022
Tel: (212) 205-6085
jsiev@reedsmith.com
claffey@reedsmith.com
ituretsky@reedsmith.com

By: */s/ Roberta A. Kaplan*

Roberta A. Kaplan
Ellen V. Holloman
Christopher R. Le Coney
KAPLAN MARTIN LLP
1133 Avenue of the Americas
Suite 1500
New York, NY 10036
Tel: (212) 316-9500
rkaplan@kaplanmartin.com
eholloman@kaplanmartin.com
cleconey@kaplanmartin.com

By: */s/ Alejandro Brito*

Alejandro Brito
*(Admitted PHV)*
BRITO PLLC
2121 Ponce de Leon Blvd.
Suite 650
Coral Gables, Florida 33134
Tel: (305) 614-4071
abrito@britopllc.com

*Counsel for Plaintiff*
*Shawn Corey Carter*

**PAGE COUNT CERTIFICATION**

I certify that the foregoing Memorandum of Law complies with the Court's Order, dated September 28, 2026 (ECF 176), that it was prepared using Microsoft Word and is thirty-three (33) pages in length, inclusive of headings and exclusive of the caption, title, table of contents, table of authorities, signature block, and certificate of compliance.

Dated: New York, New York
September 30, 2026

Respectfully submitted,

*/s/ Jordan W. Siev*___________
Jordan W. Siev, Esq.