**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHAWN COREY CARTER,<br>*Plaintiff*,<br>*v.*<br>ANTHONY BUZBEE, DAVID FORTNEY, ANTHONY G. BUZBEE LP (d/b/a THE BUZBEE LAW FIRM), ANTIGONE CURIS, CURIS LAW, PLLC and JANE DOE,<br>*Defendants.* | Case No. 26 Civ. 2775 (DEH) |

# PLAINTIFF SHAWN COREY CARTER'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE ALLEGATIONS PURSUANT TO FED. R. CIV. P. 12(f)


Jordan W. Siev
Casey D. Laffey
Ian M. Turetsky
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
jsiev@reedsmith.com
claffey@reedsmith.com
ituretsky@reedsmith.com
212-205-6085

Alejandro Brito
*(Admitted PHV)*
BRITO PLLC
2121 Ponce de Leon Blvd.
Coral Gables, Florida 33134
abrito@britopllc.com
305-614-4071

Roberta A. Kaplan
Ellen V. Holloman
Christopher R. Le Coney
KAPLAN MARTIN LLP
1133 Avenue of the Americas
New York, New York 10036
rkaplan@kaplanmartin.com
eholloman@kaplanmartin.com
cleconey@kaplanmartin.com
212-316-9500

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ..... 1
BACKGROUND ..... 3
LEGAL STANDARD ..... 4
ARGUMENT ..... 6
I. THE CHALLENGED ALLEGATIONS ARE CLEARLY RELEVANT ..... 6
  A. The Solicitation, Screening, and Publicity Allegations ..... 6
  B. The *Freeman*, *Haywood*, and *McCrary* Allegations ..... 10
  C. Public Records Concerning Doe's History ..... 12
  D. The "Conspiracy" Allegations ..... 13
II. THE MOTION TO STRIKE ALSO FAILS FOR LACK OF PREJUDICE AND BECAUSE EVIDENTIARY OBJECTIONS ARE PREMATURE ..... 14
CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acco, Ltd. v. Rich Kids Jean Corp.*,
2016 WL 3144053 (S.D.N.Y. Apr. 8, 2016) ... 12

*Alexander & Alexander of N.Y., Inc. v. Fritzen*,
68 N.Y.2d 968 (1986) ... 13

*In re Alstom SA Securities Litigation*,
454 F. Supp. 2d 187 (S.D.N.Y. 2006) ... 14

*Amalfitano v. Rosenberg*,
12 N.Y.3d 8 (2009) ... 6

*Amaya v. Ballyshear LLC*,
340 F. Supp. 3d 215 (E.D.N.Y. 2018) ... 14

*Brady v. Basic Research, L.L.C.*,
101 F. Supp. 3d 217 (E.D.N.Y. 2015) ... 10

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019) ... 6

*Cabble v. Rollieson*,
2006 WL 464078 (S.D.N.Y. Feb. 27, 2006) ... 8

*Carmona v. Spanish Broad. Sys., Inc.*,
2009 WL 890054 (S.D.N.Y. Mar. 30, 2009) ... 1

*Chigirinskiy v. Panchenkova*,
2015 WL 1454646 (S.D.N.Y. Mar. 31, 2015) ... 5

*Collins v. Pearson Educ., Inc.*,
721 F. Supp. 3d 274 (S.D.N.Y. 2024) ... 1, 4

*Dent v. U.S. Tennis Association, Inc.*,
2008 WL 2483288 (E.D.N.Y. June 17, 2008) ... 12, 15

*Engel v. CBS, Inc.*,
93 N.Y.2d 195 (1999) ... 6

*Eskofot A/S v. E.I. Du Pont De Nemours & Co.*,
872 F. Supp. 81 (S.D.N.Y. 1995) ... 15, 16

*G-I Holdings, Inc. v. Baron & Budd*,
238 F. Supp. 2d 521 (S.D.N.Y. 2002)....15

*Gregory Wayne Designs, LLC v. Lowry*,
2024 WL 3518584 (S.D.N.Y. July 24, 2024)....5

*Haynes v. City of New York*,
815 N.Y.S.2d 143 (2d Dep't 2006)....13

*Huddleston v. United States*,
485 U.S. 681 (1988)....16

*Kirch v. Liberty Media Corp.*,
449 F.3d 388 (2d Cir. 2006)....13

*Kounitz v. Slaatten*,
901 F. Supp. 650 (S.D.N.Y. 1995)....9

*Lehman Bros. Com. Corp. v. China Int'l United Petroleum & Chems. Co.*,
1995 WL 380106 (S.D.N.Y. June 26, 1995)....16

*Lipsky v. Commonwealth United Corp.*,
551 F.2d 887 (2d Cir. 1976)....15, 16

*Low v. Robb*,
2012 WL 173472 (S.D.N.Y. Jan. 20, 2012)....12

*Lynch v. Southampton Animal Shelter Found., Inc.*,
278 F.R.D. 55 (E.D.N.Y. 2011)....9

*McSpedon v. Levine*,
158 A.D.3d 618 (2d Dep't 2018)....14

*Nardelli v. Stamberg*,
44 N.Y.2d 500 (1978)....9

*Nat'l Council of Young Israel v. Wolf*,
963 F. Supp. 276 (S.D.N.Y. 1997)....14

*Parkin v. Cornell Univ., Inc.*,
78 N.Y.2d 523 (1991)....7

*Rastelli v. Goodyear Tire & Rubber Co.*,
79 N.Y.2d 289 (1992)....14

*Richard v. Glens Falls Nat'l Bank*,
2021 WL 810218 (N.D.N.Y. Mar. 3, 2021)....15

*Roe v. City of New York*,
151 F. Supp. 2d 495 (S.D.N.Y. 2001)....................9, 14

*Rounseville v. Zahl*,
13 F.3d 625 (2d Cir. 1994)....................7

*Schoolcraft v. City of New York*,
299 F.R.D. 65 (S.D.N.Y. 2014)....................5

*Trodale Holdings LLC v. Bristol Healthcare Invs., L.P.*,
2017 WL 5905574 (S.D.N.Y. Nov. 29, 2017)....................2, 4

*Velez v. Lisi*,
164 F.R.D. 165 (S.D.N.Y. 1995)....................5

*Zama Cap. Advisors LP v. Universal Ent. Corp.*,
2025 WL 968783 (S.D.N.Y. Mar. 31, 2025)....................4, 5

**Rules**

Fed. R. Civ. P. 7(b)(1)(B)-(C)....................4

Fed. R. Civ. P. 12(f)....................*passim*

Fed. R. Civ. P. 26(b)(1)....................15

Fed. R. Evid. 403....................15

Fed. R. Evid. 404....................15

Fed. R. Evid. 404(b)(2)....................15

Plaintiff Shawn Corey Carter (professionally known as "JAŸ-Z") ("Carter") submits this Memorandum of Law in opposition to the motion to strike allegations in the Third Amended Complaint ("Motion") by Defendants Anthony Buzbee ("Buzbee"), David Fortney ("Fortney"), and Anthony G. Buzbee LP (d/b/a The Buzbee Law Firm) (the "Buzbee Law Firm") (collectively, the "Buzbee Defendants") (ECF No. 161).

## PRELIMINARY STATEMENT

Successful motions to strike allegations from a complaint are exceedingly rare in this District, *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 289-90 (S.D.N.Y. 2024), since such motions are considered to be judicially-disfavored "time wasters," *Carmona v. Spanish Broad. Sys., Inc.*, 2009 WL 890054, at *10 (S.D.N.Y. Mar. 30, 2009). The instant Motion illustrates the many reasons why.

The Buzbee Defendants accuse Carter of filing a "hit piece masquerading as a complaint." Mot. at 2.[1] But what the Buzbee Defendants really object to is that Carter's complaint explains with specificity how the Buzbee Defendants are liable for the claims alleged and how their actions caused harm to Carter, his businesses, and his family. Through their Motion, the Buzbee Defendants seek to strike many allegations that help to prove Carter's claims—preferring to litigate Carter's malicious prosecution and Judiciary Law claims in a vacuum, stripped of the context necessary to understand what actually happened.

Carter alleges that the Buzbee Defendants knowingly weaponized false accusations of the sexual assault of a minor to wrongfully demand a multimillion-dollar settlement from him. ¶ 1. The allegations that the Buzbee Defendants seek to strike describe, among other things, how they

[1] Citations to "Mot." are to the Buzbee Defendants' Motion to Strike (ECF No. 161); to "¶" are to paragraphs of the Third Amended Complaint ("TAC") (ECF No. 145); and to "Tr." are to the transcript of the July 29, 2026 oral argument on Carter's motion for leave to amend (ECF No. 148).

accomplished that by: soliciting claimants through a 1-800 number and declaring 120 of them "corroborated, vetted" within a week (¶¶ 9, 11, 66), pressuring a prospective client to fabricate allegations that were "simply not true" (¶ 62), telling the press that "household names" would be "pursue[d] [] with aggression" (¶¶ 70, 74), filing a complaint just six days after Jane Doe's intake without doing the "simple Google search" that would have revealed that her story was untrue (¶¶ 94, 97), and using defendant Antigone Curis's ("Curis") ECF credentials to attempt to evade this District's admission rules (¶¶ 88-92, 201). The Buzbee Defendants dismiss these allegations as mere "character" attacks and "mudslinging" (Mot. at 4, 11), but the Buzbee Defendants do not—because they cannot—explain how their own public statements, their own litigation conduct, and findings by another judge in this Court are immaterial to Carter's claims. All of these allegations clearly bear directly on whether Defendants acted without probable cause, with an improper purpose, and with an intent to deceive.[2]

The fact that Defendants went ahead and filed this motion to strike reflects a significant degree of irony. After all, Defendants falsely accused Carter in a public complaint of sexually assaulting a minor, and they did so without conducting any due diligence. While Carter's allegations about the Defendants may be "unflattering," that is the consequence of Defendants' own actions, not a basis for a motion to strike. *Trodale Holdings LLC v. Bristol Healthcare Invs., L.P.*, 2017 WL 5905574, at *15 (S.D.N.Y. Nov. 29, 2017).

---

[2] Since the Buzbee Defendants filed this motion, Carter has dismissed his claims against Doe without prejudice. ECF No. 166 at 2. In a declaration filed with the notice of dismissal, Doe swore that she has never met or spoken to Carter and that her accusations against him were false. ECF No. 166-1 ¶¶ 1, 4. She also stated that she did not see the October complaint before it was filed and that, to her knowledge, the lawyers did not independently investigate or corroborate her allegations. *Id.* ¶¶ 15-17. Carter's claims against the Buzbee Defendants and other lawyers remain pending. ECF No. 166 at 2.

Not only is each of the challenged allegations clearly relevant, but the Buzbee Defendants cannot show prejudice from allegations that largely quote Buzbee's own statements to the press or judicial findings, nor is admissibility of such evidence an appropriate question now at the pleading stage. The Court should deny the Motion.

## BACKGROUND

The relevant factual and procedural background of this case is detailed in Carter's Motion for Leave to Amend (ECF No. 124) and Carter's Opposition to Defendants' Motions to Dismiss (ECF No. 179) and need not be repeated here.

Two months ago, when the Buzbee Defendants objected to the TAC's "over-the-top rhetoric," ECF No. 132 at 12-13 & 16 n.3, this Court carefully reviewed the TAC and granted Carter leave to amend after finding "no showing of bad faith," Tr. 20:20-21, and observing that the TAC "is largely similar to the currently operative complaint in the case," *id*. 21:3-5. By their own account, the Buzbee Defendants conceded at that time that the TAC is "not based on any new factual allegations." ECF No. 132 at 18. Yet they now move to strike thirty-one paragraphs in their entirety and portions of thirteen more, all while accusing Carter's counsel of wasting "judicial resources" by a "serial use of court filings." Mot. at 1-2.

The challenged allegations fall into four categories. The first describes how the Buzbee Defendants recruited and screened claimants through the campaign that brought Doe to them, and publicized claims against unnamed targets (¶¶ 7-9, 11, 50-51, 55-56, 62, 66, 69-72, 74, 104, 172, and the last sentence of ¶ 200) (the "Solicitation Allegations"). The second recounts judicial findings concerning Buzbee's and Curis's conduct in *Freeman v. Grain Processing Corp.*, *Haywood v. University of Pittsburgh*, and *McCrary v. Combs* (¶¶ 76-78, 89-92) (the "*Freeman*, *Haywood*, and *McCrary* Allegations"). The third category identifies publicly available information about Doe that, as the TAC alleges, even a cursory pre-suit search would have

uncovered (¶¶ 93-94) (the "Doe Allegations"). The fourth category consists of the portions of twelve paragraphs and one heading that describe Defendants' conduct as a "conspiracy," together with the TAC's "Conspiracy Allegations" section (¶¶ 5, 29, 35, 88, 99, 118, 140, 149, 154, 163, 164, 167, 179-183, and heading IV) (the "Conspiracy Allegations"). The Buzbee Defendants contend that each of these categories of allegations is irrelevant, prejudicial, and incapable of being proven with admissible proof. Mot. at 9-18.[3] But, as discussed below, those arguments lack merit.

## LEGAL STANDARD

As on a motion to dismiss, when resolving a motion to strike an allegation from a complaint, a court must view the allegations in the light most favorable to plaintiff, accept its factual allegations as true, and draw all reasonable inferences in plaintiff's favor. *Zama Cap. Advisors LP v. Universal Ent. Corp.*, 2025 WL 968783, at *9 (S.D.N.Y. Mar. 31, 2025). While Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," such motions are "viewed with disfavor and infrequently granted" in this District. *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 289 (S.D.N.Y. 2024) (internal citations omitted); *see also Trodale*, 2017 WL 5905574, at *15 ("Motions to strike are not to be granted 'unless there is a strong reason for so doing.'") (quoting *Nungesser v. Columbia Univ.*, 2017 WL 1102661, at *1 (S.D.N.Y. Mar. 23, 2017)).

[3] The precise identification of the Buzbee Defendants' challenged allegations confusingly changes throughout their brief. The Preliminary Statement identifies the "conspiracy" allegations as ¶¶ 5, 29, 35, 88, 99, 118, 140, 149, 154, 163, 164, 167, heading IV, and ¶¶ 179-183. Mot. at 2. The Background section of their brief omits ¶¶ 118 and 163 and heading IV, *id.* at 8; the Argument section omits ¶ 183 and heading IV, *id.* at 14. And although the Background section describes ¶ 10 as one of the offensive allegations, *id.* at 5, no version of the list includes it. A motion that cannot settle on the relief it seeks does not "state with particularity the grounds for seeking the order" or "the relief sought." Fed. R. Civ. P. 7(b)(1)(B)-(C). Carter, therefore, responds to the list at Mot. at 2.

Even allegations of an "inflammatory nature" should not be stricken if they "bear[] on relevant issues." *Gregory Wayne Designs, LLC v. Lowry*, 2024 WL 3518584, at *8 (S.D.N.Y. July 24, 2024); *see also Velez v. Lisi*, 164 F.R.D. 165, 167 (S.D.N.Y. 1995) (denying motion to strike allegations concerning perjury and criminal misconduct because they were "sufficiently related to the plaintiff's overall claim"). The Buzbee Defendants argue that the ordinary presumption against striking allegations in a pleading does not apply "in relation to scandalous matters." Mot. at 9 (citing *Wine Mkts. Int'l v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998)). But an allegation is only "scandalous" if it "reflects *unnecessarily* on the defendant's moral character." *Gregory Wayne Designs*, 2024 WL 3518584, at *8 (emphasis added). The challenged allegations in the TAC are not only necessary, but they are obviously relevant to Carter's claims. "[I]t is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." *Schoolcraft v. City of New York*, 299 F.R.D. 65, 67 (S.D.N.Y. 2014) (quoting 5C Wright & Miller, Federal Prac. & Proc. § 1382 (3d ed. 2011)); *see also Chigirinskiy v. Panchenkova*, 2015 WL 1454646, at *19 n.19 (S.D.N.Y. Mar. 31, 2015) (collecting cases).

For these reasons, "[t]he Second Circuit has warned that 'the courts should not tamper with the pleadings unless there is a strong reason for doing so.'" *Zama Cap. Advisors*, 2025 WL 968783, at *30 (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)). As a result, in order for a party to "prevail under Rule 12(f), the movant must demonstrate (1) the allegations do not bear on issues in the case, (2) no evidence in support of the allegations would be admissible, and (3) to permit the allegations to stand would result in prejudice to movant." *Id.* at *30 ("[A]llegations in the pleadings will not be stricken if they have some 'possible bearing on the subject matter of the plaintiff's claim.'") (quoting *Velez*, 164 F.R.D. at 167).

## ARGUMENT

### I. THE CHALLENGED ALLEGATIONS ARE CLEARLY RELEVANT

The TAC puts Defendants' abuse of the judicial process directly at issue. Carter's malicious prosecution claim requires, among other things, lack of probable cause and malice, *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 204 (1999), and his Judiciary Law Section 487 claim requires proof of intent to deceive, *Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 14 (2009). The challenged allegations speak directly to each of these issues: they explain why the Buzbee Defendants filed the original action against Carter, how they recruited and purportedly "screened" Doe, what any competent pre-suit investigation would have uncovered, and how their use of similar tactics elsewhere bears on their knowledge and intent here. While the Buzbee Defendants invoke *Brown v. Maxwell*'s warning against "bad actors" who use the judicial process to "defame opponents in court pleadings," that is exactly what they themselves did here. 929 F.3d 41, 47 (2d Cir. 2019); Mot. at 9-11. The challenged allegations simply explain how, why, and when they did it.

#### A. The Solicitation, Screening, and Publicity Allegations

The Buzbee Defendants begin by recasting the TAC as an attack on Buzbee for being "an aggressive litigator who zealously represents victims of sexual assault." Mot. at 10. But Carter here alleges something considerably different and more troubling than that: that Defendants knowingly threatened false accusations of sexual assault of a minor to extract a large payment from Carter. ¶¶ 1-3. The challenged Solicitation Allegations describe the methods they used to obtain, develop, and publicize the false accusations at the core of this case. The Buzbee Defendants attack the Solicitation Allegations by arguing that the scale and methods of the solicitation campaign "say nothing" about their representation of Doe. They also contend that the whistleblower accounts are unrelated "other litigation conduct." Mot. at 11-12. As explained below, none of these arguments work.

Carter alleges that Doe was recruited through the same mass-solicitation system described in the TAC and that that system failed to reliably screen and corroborate claims before filing them. ¶¶ 9, 55-62, 66, 79-81. That bears on probable cause, which concerns the facts known or apparent when the proceeding was initiated. *Rounseville v. Zahl*, 13 F.3d 625, 629-30 (2d Cir. 1994). Here, the TAC alleges specifically that the call-center vendor Reciprocity generated approximately 26,000 contacts, which roughly 70 call-center employees processed using a prepared script. ¶ 9. Yet only six days after Buzbee and Andrew Van Arsdale began working together, Buzbee announced that they represented 120 "corroborated, vetted" claimants. ¶ 66. The TAC further alleges that Reciprocity rewarded employees based on claimant volume, encouraging claim submission without claimants' signatures. ¶ 55. Reciprocity also retained claims after telling clients they had been withdrawn, and altered callers' accounts to make them "seem more viable." *Id*. These allegations concern not the "number of clients" in the abstract, Mot. at 11, but whether Defendants made "less than diligent efforts to investigate" potential cases before filing them. *Parkin v. Cornell Univ., Inc.*, 78 N.Y.2d 523, 529-30 (1991). Put simply, the Solicitation Allegations are not about the number of clients the Buzbee Defendants represented; they are about whether the Buzbee Defendants substituted volume for vetting, and favored their checking accounts over the rules, resulting here in the filing of knowingly false claims.

The Buzbee Law Firm's treatment of other prospective claimants is therefore directly relevant to this case. Although the TAC describes an incident where firm representatives pressed a prospective client to claim that she had been drugged, restrained, and assaulted—accusations that were "simply not true"—and dropped her when she refused to adopt their "false version of events," ¶ 62, the Buzbee Defendants somehow assert that allegations connecting their tactics to knowingly false claims are "conspicuously absent." Mot. at 10.

While the Buzbee Defendants cite *Cabble v. Rollieson* to characterize the allegations in this case as scandalous, the court in that case refused to strike an allegation that a law firm encouraged false criminal charges to bolster a civil action because, although the allegation was "not flattering," the court could not say that it had "no possible relation" to motive in a malicious-prosecution claim. 2006 WL 464078, at *10-11 (S.D.N.Y. Feb. 27, 2006); Mot. at 8. So too here. Allegations that the Buzbee Law Firm pressed prospective claimants to adopt or expand false accounts bear on whether Defendants had probable cause to file a complaint with Doe's false accusations.

In fact, Buzbee's carefully-curated public image played a key role in the solicitation campaign. Mot. at 10-11. He placed himself and his reputation at the center of a media tour and gave at least ten national interviews to publicize the hotline and pressure unnamed targets in just three weeks. ¶ 69. The references to "Lawsuit Air" and Buzbee's chosen shark motif are not included because aggressive advocacy is tortious, but because they show how Buzbee himself advertised a litigation style of, in his own words, "hit[ting] fast and exploit[ing] weaknesses." ¶ 51. For example, in an effort to make paragraph 172 of the TAC seem irrelevant to Carter's claims, the Buzbee Defendants omit from their quotation the allegation that "Buzbee directed his employees to edit Wikipedia pages to enhance Buzbee's image *and damage Carter's and Roc Nation's reputations*." ¶ 172 (emphasis added); *compare* Mot. at 5 (replacing the emphasized language with an ellipsis).

Indeed, Buzbee's own statements demonstrate why all of this is so relevant. Asked whether the threat of putting embarrassing allegations in a complaint can force a settlement, he conceded that that was "a fair point," noting that "the system is the system," and likening it to "a gulag." ¶ 74. He added that he "always" seeks a resolution before filing, but if "dialogue" fails, "we just

file a lawsuit" and "pursue it with aggression." *Id.* He warned that "household names" would be sued, invoked the threat of criminal exposure, and acknowledged that public accusations would be "very hurtful," whether true or false. *Id.* ¶¶ 70-72. Buzbee used the exact same strategy against Carter here: demand payment before naming Carter in a suit, then publicly name Carter when he refused to accede to Defendants' threats. *See* ¶¶ 7-8, 74. That conduct bears directly on whether Defendants filed the original Doe action to properly adjudicate Doe's claim or instead to obtain payment through the reputational cost of filing it. *See Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978) (evidence bearing on whether the proceeding was commenced for an improper purpose is relevant to malicious prosecution). The Buzbee Defendants cannot have it both ways. They cannot publicly boast about their aggressive litigation strategies—designed by their own admissions to leverage the reputational costs of filing suits—and then claim that allegations describing that very strategy are irrelevant to Carter's malicious prosecution and Judiciary Law claims here.

The Buzbee Defendants counter that these allegations, standing alone, do not establish that they knowingly pursued a false claim. Mot. at 10. But Rule 12(f) asks whether the allegations bear on a disputed issue, not whether each one independently proves the claim. *Roe v. City of New York,* 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001). At a minimum, how Buzbee described and deployed the same pressure strategy elsewhere "may have some bearing" on motive here. *Kounitz v. Slaatten*, 901 F. Supp. 650, 658 (S.D.N.Y. 1995).

To the extent that the Buzbee Defendants' concern is embarrassment in the "public eye," Mot. at 15, that ship sailed a long time ago. *Lynch v. Southampton Animal Shelter Found., Inc.*, 278 F.R.D. 55, 67 (E.D.N.Y. 2011) (allegations that are "part of the public record and generally available" are not prejudicial). Buzbee has done everything in his power to cultivate precisely the

image that we describe in the Complaint. *See, e.g.*, The Buzbee Law Firm (@BuzbeeLawFirm), X (August 29, 2026, 10:05 PM), https://x.com/BuzbeeLawFirm/status/2093882798750765087 ("One of the worst places in the world you could find yourself is opposite Tony Buzbee in a lawsuit."). The image of Buzbee on his private jet (¶ 51) was taken from his own public social media account, where he regularly posts similar photos and material he now contends is scandalous.[4] After all, one of Buzbee's most recent posts from September 16, 2026 (believe it or not) is a two-part video titled "Tony's Unforgettable Prostate Exam."[5] Having themselves placed many of these statements and images in the public domain, the Buzbee Defendants cannot credibly complain about their use here.

### B. The *Freeman*, *Haywood*, and *McCrary* Allegations

The Buzbee Defendants seek to strike the *Freeman*, *Haywood*, and *McCrary* Allegations as irrelevant "other litigation conduct." Mot. at 12-13. That again misses the point. Carter does not cite those matters to impugn Defendants' reputation; he cites them because the same lawyers used the same tactics they used here, and the resulting judicial findings bear on their knowledge of the applicable rules governing attorney admissions and their intent to circumvent those rules. Prior judicial findings involving "virtually identical" conduct bear on knowledge and intent. *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 226 (E.D.N.Y. 2015). And "allegations regarding

---

[4] Anthony Buzbee (@tonybuzbee), *Mexico is Calling My Name*, Instagram (January 15, 2026), https://www.instagram.com/p/DTigbBIEbb1/ (photo of him on his private jet); Anthony Buzbee (@tonybuzbee), *If It Gets Too Smoky Just Open the Window*, Instagram (March 2, 2026), https://www.instagram.com/p/DVZSm5mkqZy/ (photo of Buzbee lighting a cigar on his private jet); Anthony Buzbee (@tonybuzbee), *Palm Beach is One of the Most Beautiful Places in Florida. Great Place to Rest and Relax, Shop and Eat, and Smoke Cigars. That's my Next Stop*, Instagram (April 24, 2026), https://www.instagram.com/p/DXhhUlOEXCQ/?img_index=1 (photo of Buzbee on his private jet).

[5] Anthony Buzbee (@tonybuzbee), *Tony's Unforgettable Prostate Exam*, INSTAGRAM (Sept. 16, 2026), https://www.instagram.com/reel/DdY0mLKR_HZ/.

public record court rulings" are "a far cry from the truly extraneous scandalous or inflammatory material that Rule 12(f) permits to be struck." *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*, 2025 WL 2916153, at *12 (S.D.N.Y. Oct. 14, 2025) (internal citations omitted).

In *Freeman v. Grain Processing Corp.*, an Iowa state court revoked Buzbee's *pro hac vice* admission after finding a "pattern of ethical violations," including prohibited solicitation and public statements treating liability as a foregone conclusion. ¶ 77. The TAC alleges the same pattern here: Buzbee publicly promised "explosive" accusations, demanded a confidential eight-figure resolution, and threatened a public filing before Doe's accusation could be tested. ¶¶ 1, 7-8, 18-19, 70-74, 78. And in *Haywood*, Buzbee failed to disclose the *Freeman* revocation when seeking admission in federal court, prompting that court to refer the issue to the Chief Judge. ¶ 77. This episode, of course, closely mirrors Buzbee's misconduct here.

The *McCrary* allegations directly contradict the Buzbee Defendants' argument that Buzbee's failure to seek *pro hac vice* admission was "hardly deceitful," but merely an "open and obvious error." Mot. at 12. In *McCrary*, Judge Vyskocil found "scores of submissions" Buzbee filed through another lawyer's ECF account, identified Curis's apparent "complicity," and warned that further noncompliance would have "grave consequences." TAC ¶ 89. After Curis insisted that she had reviewed and approved every filing, the court ordered her to show cause for making "false or misleading representations." *Id.* ¶¶ 90-91. The TAC alleges that Curis played that same role here. *Id.* ¶ 92. Those allegations support Carter's claim that the use of Curis's credentials was not an isolated filing lapse or an "open and obvious error," but instead was deliberate. Mot. at 12.

It is not surprising that the cases cited in the Buzbee Defendants' brief are all distinguishable from the circumstances here. *Low v. Robb* struck allegations drawn from unrelated

disputes and complaints that had been "dismissed, settled, or otherwise not resolved." 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012). *Dent v. U.S. Tennis Association, Inc.* involved a discriminatory "legacy" theory built on a settlement and unproven accusations in another case. 2008 WL 2483288, at *3-4 (E.D.N.Y. June 17, 2008). Here, by contrast, Carter describes judicial findings and orders concerning the Buzbee Defendants' own misconduct—conduct that Carter alleges they repeated once again here. Rule 12(f) does not excise allegations of "a substantially similar scheme" merely because that scheme surfaced in another case. *Acco, Ltd. v. Rich Kids Jean Corp.*, 2016 WL 3144053, at *2 (S.D.N.Y. Apr. 8, 2016).

### C. Public Records Concerning Doe's History

The Doe Allegations are not, as the Buzbee Defendants argue, an "attack" on Jane Doe. Mot. at 13. They are evidence of the Buzbee Defendants' failure to conduct even the most basic due diligence before filing Doe's complaint. To establish his claims, Carter must show that the Buzbee Defendants acted without probable cause or with intent to deceive. The Doe Allegations identify specific, publicly available facts that, when viewed alongside the contradictions in Doe's account, clearly called for independent corroboration before Defendants accused Carter of one of the most heinous crimes imaginable. ¶¶ 93-96.

Paragraph 94 of the TAC, for example, explains that a "simple Google search or other public record search" would have revealed that Doe had recently appeared in Mental Health Court; had been charged with second-degree assault; had a documented history of hallucinations; had recently filed for bankruptcy protection; and had made three unrelated false sexual-assault allegations, each of which she dropped or a court dismissed. ¶ 94. None of the Doe Allegations were first made public by the TAC; each was drawn from public records or from Doe's social media accounts. Nor do the allegations threaten anyone's anonymity: the TAC identifies Doe only

as "Doe" and recounts details—such as her head injury and medical treatment—that Doe herself volunteered when she spoke in a nationally televised interview with Fortney at her side. ¶ 135.

The TAC does not suggest, as the Buzbee Defendants contend, that "anyone who has experienced financial hardship and mental health issues is a liar." Mot. at 13. What it does suggest is that a simple and basic public-record or social-media search would have uncovered information calling this client's account into question. A failure to make further inquiry when a reasonable person would have done so may itself "be evidence of lack of probable cause." *Haynes v. City of New York*, 815 N.Y.S.2d 143, 146 (2d Dep't 2006). The uncomfortable truth for the Buzbee Defendants is not that these facts are alleged in the TAC, but that they never even bothered to look for them.

**D. The "Conspiracy" Allegations**

The Buzbee Defendants seek to strike the Conspiracy Allegations on the ground that Carter withdrew his conspiracy cause of action. Mot. at 14. But while Carter did withdraw his standalone civil-conspiracy claim, he did not withdraw allegations that Defendants agreed and acted together to commit the remaining torts as a basis for joint and several liability. ¶ 180. And New York law permits conspiracy allegations "to connect the actions of separate defendants with an otherwise actionable tort." *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986); *see also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006).

The Buzbee Defendants contend that Carter's use of the word "conspiracy" in the TAC somehow improperly casts a dark shadow over ordinary attorney-client and co-counsel interactions. Mot. at 14. But paragraphs 180 through 183 of the TAC identify the agreement between the Defendants and what each Defendant allegedly did to carry out that scheme. Those include the fact that Buzbee filed and continued Doe's action despite evidence of falsity, Fortney helped pursue it and plan the Texas Interview, and Curis supplied the ECF access needed to file in

this District. ¶ 182. These allegations supply the factual basis for holding each Defendant responsible for the torts they carried out together. *See Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 295 (1992) (concerted action provides for joint and several liability where defendants share an understanding to participate in a common plan to commit a tortious act).

Although the Buzbee Defendants cite *Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 224 (E.D.N.Y. 2018), and *In re Alstom SA Securities Litigation*, 454 F. Supp. 2d 187, 216-17 (S.D.N.Y. 2006), both are again inapposite. Mot. at 14. *Amaya* struck facts added solely to support claims that the court had dismissed for lack of jurisdiction, where the plaintiff did not contend that those facts were relevant to the remaining claims. 340 F. Supp. 3d at 224. *In re Alstom* struck allegations tied to "previously dismissed claims and parties." 454 F. Supp. 2d at 216-17. Here, by contrast, the Conspiracy Allegations remain relevant to this case because of Carter's request for the imposition of joint and several liability. *See McSpedon v. Levine*, 158 A.D.3d 618, 621 (2d Dep't 2018) (conspiracy allegations are permitted "to connect the actions of the individual defendants with an actionable, underlying tort, and establish that those actions were part of a common scheme").

## II. THE MOTION TO STRIKE ALSO FAILS FOR LACK OF PREJUDICE AND BECAUSE EVIDENTIARY OBJECTIONS ARE PREMATURE

Even assuming the challenged allegations were irrelevant (and they are not), the Buzbee Defendants would still not be entitled to strike them for two reasons.

*First*, the Buzbee Defendants have not shown prejudice—a necessary element of any motion to strike. *Roe*, 151 F. Supp. 2d at 510. While they claim the allegations may influence or confuse prospective jury members, Mot. at 15, courts do "not submit pleadings to the jury in civil cases," so "it is difficult to see how a defendant is prejudiced by the presence in the complaint of material such as that at issue here." *Nat'l Council of Young Israel v. Wolf*, 963 F. Supp. 276, 282

(S.D.N.Y. 1997). As a result, there is no risk that the challenged allegations may create a "misapprehension that ordinary litigation conduct is wrongful or nefarious in some way." Mot. at 15.

The Buzbee Defendants' concern that the allegations will give Carter license to "seek broad, invasive discovery," Mot. at 16, is premature. *Richard v. Glens Falls Nat'l Bank*, 2021 WL 810218, at *19 (N.D.N.Y. Mar. 3, 2021). The Court has ample authority to control discovery should Carter seek evidence that is not "relevant to any party's claim or defense" or "proportional to the needs of the case" following an orderly meet-and-confer process. Fed. R. Civ. P. 26(b)(1). The cases the Buzbee Defendants cite to demonstrate prejudice are merely examples of those rare occasions when allegations have been prejudicial. *See G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 555-56 (S.D.N.Y. 2002) (allegation about sexual impropriety with several female employees "has no real bearing" on whether defendants breached their Futures Agreement); *Dent*, 2008 WL 2483288, at *2 (striking references to settlement agreements and consent decrees "because they were not the product of adjudications on the merits and thus could not be used as substantive evidence of previous wrongdoing in a subsequent litigation").

*Second*, the Buzbee Defendants' evidentiary objections do not warrant striking allegations now at the pleading stage—admissibility is a question for trial, not for Rule 12(f). *Lipsky*, 551 F.2d at 893 ("[Q]uestions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided."). The question at this point is "whether there is any possibility that the pleading could form the basis for admissible evidence." *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 94 (S.D.N.Y. 1995). Rule 404 permits evidence of other acts for purposes including motive, intent, knowledge, and absence of mistake. Fed. R. Evid. 404(b)(2). And the Court will still be required to conduct a Rule 403

analysis in any event. *Huddleston v. United States*, 485 U.S. 681, 691 (1988). The admissibility of any particular piece of evidence will therefore depend, as it should, on the purpose for which it is offered and whether its probative value is substantially outweighed by a danger of unfair prejudice—questions that are better resolved prior to or during trial on a far more developed record. *See Eskofot*, 872 F. Supp. at 94. As the Second Circuit has observed, "ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." *Lipsky*, 551 F.2d at 893; *see also Lehman Bros. Com. Corp. v. China Int'l United Petroleum & Chems. Co.*, 1995 WL 380106, at *3 (S.D.N.Y. June 26, 1995) ("It is not appropriate for the Court to declare evidence of such discussions inadmissible at this time.").

## **CONCLUSION**

For all of the foregoing reasons, the Court should deny the Buzbee Defendants' Motion.

Dated: September 30, 2026
New York, New York

Respectfully submitted,

By: */s/ Jordan W. Siev*

Jordan W. Siev
Casey D. Laffey
Ian M. Turetsky
REED SMITH LLP
599 Lexington Ave., 22nd Floor
New York, New York 10022
Tel: (212) 205-6085
jsiev@reedsmith.com
claffey@reedsmith.com
ituretsky@reedsmith.com

By: */s/ Roberta A. Kaplan*

Roberta A. Kaplan
Ellen V. Holloman
Christopher R. Le Coney
KAPLAN MARTIN LLP
1133 Avenue of the Americas
Suite 1500
New York, NY 10036
Tel: (212) 316-9500
rkaplan@kaplanmartin.com
eholloman@kaplanmartin.com
cleconey@kaplanmartin.com

By: */s/ Alejandro Brito*

Alejandro Brito
*(Admitted PHV)*
BRITO PLLC
2121 Ponce de Leon Blvd.
Suite 650
Coral Gables, Florida 33134
Tel: (305) 614-4071
abrito@britopllc.com

*Counsel for Plaintiff*
*Shawn Corey Carter*

**WORD AND PAGE COUNT CERTIFICATION**

I certify that the foregoing Memorandum of Law complies with Local Civil Rule 7.1(c) and the Court's Individual Rule 4(c), that it was prepared using Microsoft Word and it includes 5,130 words and is sixteen (16) pages in length, inclusive of headings and exclusive of the caption, title, table of contents, table of authorities, signature block, and certificate of compliance.

Dated: New York, New York
September 30, 2026

Respectfully submitted,

*/s/ Jordan W. Siev*__________
Jordan W. Siev, Esq.