UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAWN COREY CARTER,

Plaintiff,

-against-

ANTHONY BUZBEE, DAVID FORTNEY, ANTHONY G. BUZBEE, LP (d/b/a THE BUZBEE LAW FIRM), ANTIGONE CURIS, CURIS LAW, PLLC, and JANE DOE,

Defendants.

Case No.: 1:26-cv-02775-DEH

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTIONS TO DISMISS
PLAINTIFF SHAWN CARTER'S THIRD AMENDED COMPLAINT**

# TABLE OF CONTENTS


Page

PRELIMINARY STATEMENT ... 1

ARGUMENT ... 2

I. Carter Fails to Adequately Allege Malicious Prosecution ... 2

- A. Defendants Had Probable Cause to Both Commence and Continue Prosecuting the Underlying Action ... 2
- B. Carter Fails to Adequately Allege Malice ... 8
- C. Carter Fails to Adequately Plead the Special Injury Element of His Malicious Prosecution Claim ... 9
  - 1. Carter's Pleading of Lost Opportunity is Insufficient ... 10
  - 2. Carter's Pleading of Reputational and Emotional Harm is Insufficient to Constitute Special Injury ... 11

II. Carter Fails to State a Claim for Violation of New York Judiciary Law § 487 ... 12

## TABLE OF AUTHORITIES

Page(s)

Cases

*347 Central Park Assocs., LLC v. Pine Top Assocs., LLC*
144 A.D.3d 785 (2d Dep't 2016) .......... 3

*Angevin v. City of New York*
204 F. Supp. 3d 469 (E.D.N.Y. 2016) .......... 2

*Arista Records, LLC v. Doe 3*
604 F.3d 110 (2d Cir. 2010) .......... 16

*Betz v. Blatt*
160 A.D.3d 696 (2d Dep't 2018) .......... 15

*Brown v. Brown*
343 F. Supp. 2d 195 (E.D.N.Y. 2004) .......... 11

*Butler v. Ratner*
210 A.D.2d 691 (3d Dep't 1994) .......... 3

*Casler v. State*
33 A.D.2d 305 (4th Dep't 1970) .......... 8

*Colon v. City of N.Y.*
60 N.Y.2d 78 (1983) .......... 6

*De la Rosa v. Schacht*
244 A.D.3d 1570 (3d Dep't 2025) .......... 7

*Delaney v. HC2, Inc.*
761 F. Supp. 3d 641 (S.D.N.Y. 2025) .......... 13, 14, 15

*Diamond v. Strassberg*
751 F. Supp. 1152 (S.D.N.Y. 1990) .......... 11

*Edmondson v. Raniere*
751 F. Supp. 3d 136 (E.D.N.Y. 2024) .......... 9, 10

*Engel v. CBS, Inc.*
93 N.Y.2d 195 (1999) .......... 12

*Gilman v. Marsh & McLennan Cos., Inc.*
868 F. Supp. 2d 118 (S.D.N.Y. 2012) .......... 6

*Goodyear Tire & Rubber Co. v. Haeger*
581 U.S. 101 (2017) .......... 13

*Guliyev v. Banilov & Assocs., P.C.*
221 A.D.3d 589 (2d Dep't 2023) .......... 15

*Hadges v. Yonkers Racing Corp.*
48 F.3d 1320 (2d Cir. 1995) .......... 5

*Honzawa v. Honzawa*
268 A.D.2d 327 (1st Dep't 2000) .......... 11, 12

*Hornstein v. Wolf*
109 A.D.2d 129 (2d Dep't 1985) .......... 8

*Jeffreys v. Rossi*
275 F. Supp. 2d 463 (S.D.N.Y. 2003) .......... 5

*Klein v. Aicher*
2020 WL 4194823 (S.D.N.Y. July 21, 2020) .......... 6, 7

*Kurtz v. Hansell*
664 F. Supp. 3d 438 (S.D.N.Y. 2023) .......... 2

*Levitin v. Miller*
1994 WL 376078 (S.D.N.Y. July 15, 1994) .......... 3, 4, 5

*Liberty Synergistics, Inc. v. Microflo Ltd.*
50 F. Supp. 3d 267 (E.D.N.Y. 2014) .......... 10, 11

*Michael N. v. Montgomery Cnty. Dep't of Social Servs.*
78 Misc. 3d 171 (N.Y. Sup. Ct., Montgomery Cnty. 2022) .......... 6

*Mondello v. Mondello*
161 A.D.2d 690 (2d Dep't 1990) .......... 8

*Moore v. City of N.Y.*
219 F. Supp. 2d 335 (E.D.N.Y. 2002) .......... 8

*Mura v. Erie Cnty. Sheriff Dep't*
2005 WL 615754 (W.D.N.Y. Mar. 16, 2005) .......... 4

*In re Nicholas*
457 B.R. 202 (Bankr. E.D.N.Y. 2011) .......... 11

*Perryman v. Vill. of Saranac Lake*
41 A.D.3d 1080 (3d Dep't 2007) .......... 3

*Pirro v. Bd. of Trustees of Vill. of Groton*
203 A.D.3d 1263 (3d Dep't 2022) .......... 3

*Robin v. Lutfy*
25 Misc. 3d 1242(A), 2009 WL 4878425 (N.Y. Sup. Ct. N.Y. Cnty. Nov. 23, 2009)............12

*Rush v. County of Nassau*
51 A.D.3d 762 (2d Dep't 2008)..........................................................................................2

*Sapienza v. Notaro*
172 A.D.3d 1418 (2d Dep't 2019)......................................................................................9

*Schinella v. Salem*
2024 WL 643169 (S.D.N.Y. 2024).....................................................................................11

*SGM Holdings LLC v. Andrews*
743 F. Supp. 3d 545 (S.D.N.Y. 2024)................................................................................13

*Sparrow Fund Mgmt. v. MiMedx Grp., Inc.*
2020 WL 1330283 (S.D.N.Y. Mar. 22, 2020).....................................................................6

*Sussman v. Bank of Israel*
56 F.3d 450 (2d Cir. 1995)...................................................................................................8

Statutes

28 U.S.C. § 1927.................................................................................................................13

New York Judiciary Law § 487.....................................................................2, 12, 13, 14

Other Authorities

Rule 11.....................................................................................................................6, 13, 15

## **PRELIMINARY STATEMENT**

Do lawyers who have a client that swears under oath that she was raped have a sufficient basis to civilly sue her rapist, even if he denies it and challenges her story? *Of course.* Any other outcome would be contrary to basic law and significantly chill the pursuit of justice by sexual assault survivors. Because they know full well that they have no claim, Carter and his attorneys resort to muddying the waters. They wildly overstate what they have properly alleged, and attempt to portray normal litigation conduct as something sinister. Worse, they engage in outright misrepresentations of the record. For instance, they assert Carter was sued as an "unnamed defendant" on October 20, 2024, *before* the Defendants obtained affidavits from Doe and could have properly vetted her claims. *That is false.* As reflected by his own submissions, Carter was not named as a defendant in the Underlying Action until Doe filed her First Amended Complaint on December 8, 2024—at which point, even Carter acknowledges, Doe had affirmed her allegations against Carter to her attorneys under oath. Indeed, it should be obvious to anyone—including Carter and his attorneys—that Defendants prosecuted the Underlying Action in good faith. They had a client willing to swear under oath that Carter raped her. That is self-evident probable cause and negates any suggestion of malice or deceptive intent. If probable cause could be negated and nefarious intent established merely because the alleged perpetrator denies wrongdoing and challenges his accuser's credibility, then representing sexual assault survivors would become a dangerous business. Thankfully, the law is otherwise.

Notably, Carter's opposition [ECF No. 179] (the "Opposition" or "Opp.") treats the Curis Defendants as an afterthought, underscoring precisely why his claims against them should be dismissed. Despite withdrawing his conspiracy claim, Carter continues to group plead about "Defendants" conduct, when referring to conduct that is not and cannot be attributed to the Curis Defendants. As to the Curis Defendants, the TAC alleges only that they acted as local counsel,

their ECF credentials were used to file pleadings signed by Buzbee in the Underlying Action, and "on information and belief" she did not vet or meet Doe. This is not enough for a claim. Carter has failed to sufficiently allege conduct that could support his malicious prosecution or Section 487 claim against any of the Defendants. The Court should dismiss the TAC, with prejudice and not permit Carter yet another attempt to plead his demonstrably baseless claims.

## ARGUMENT

### I. Carter Fails to Adequately Allege Malicious Prosecution

As Carter concedes in his Opposition, the elements of malicious prosecution are conjunctive (Opp. at 10)—each element must be independently satisfied and failure to adequately plead any single element is fatal to the claim. *See Angevin v. City of New York*, 204 F. Supp. 3d 469, 480 (E.D.N.Y. 2016); *Rush v. County of Nassau*, 51 A.D.3d 762, 763 (2d Dep't 2008). Here, Carter fails to adequately plead *any* of the requisite elements.

#### A. Defendants Had Probable Cause to Both Commence and Continue Prosecuting the Underlying Action

Carter's Opposition advances three theories to support his argument that probable cause did not exist to file the Underlying Action: (1) prosecution of a knowingly false accusation, (2) failure to investigate, and (3) continued prosecution notwithstanding alleged lack of probable cause. Opp. at 11-17. Each of these theories fail.

As a preliminary matter Carter's theories rests upon a flawed construction of the standard for probable cause, which is lower than in criminal proceedings. *See Kurtz v. Hansell*, 664 F. Supp. 3d 438, 452 (S.D.N.Y. 2023) ("obviously less in the way of grounds for belief will be required to justify a reasonable [person] in bringing a civil rather than a criminal suit" (internal quotations and citations omitted)); *Butler v. Ratner*, 210 A.D.2d 691, 693 (3d Dep't 1994) (same). Even if some aspects of the underlying claim are later found to be unsupported, probable cause for the

proceeding as a whole defeats the malicious prosecution claim. *See Perryman v. Vill. of Saranac Lake*, 41 A.D.3d 1080, 1082 (3d Dep't 2007); *347 Central Park Assocs., LLC v. Pine Top Assocs., LLC*, 144 A.D.3d 785, 786 (2d Dep't 2016). The probable cause standard is, therefore, exacting because a plaintiff in a malicious prosecution action must show an *entire and patent lack of probable cause* for the underlying claims. *See Pirro v. Bd. of Trustees of Vill. of Groton*, 203 A.D.3d 1263, 1264 (3d Dep't 2022). The Court's holding in *Levitin v. Miller*, 1994 WL 376078, at *4 (S.D.N.Y. July 15, 1994), is instructive with respect to the standard for probable cause here:

> In determining whether a defendant in a malicious prosecution action had probable cause to bring a lawsuit, the question is not whether the evidence available to the defendant is susceptible to a different interpretation than the one defendant chooses to adopt; rather, the question is whether defendant is aware of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of ….. One may act upon what appears to be true, even if it turns out to be false, provided [one] believes it to be true, and the appearances are sufficient to justify the belief as reasonable.

All three of Carter's theories are easily disposed of under this standard. Carter's theory that the Defendants prosecuted knowingly false claims against him is based solely on that conclusory allegation,[1] which is tellingly unsupported by any alleged *facts* suggesting that Defendants knew Doe's claim that Carter raped her—a claim that Carter acknowledges Doe was willing to affirm under oath multiple times (*see* TAC ¶¶ 29, 96)—was false.[2] Carter argues that

---

[1] Incidentally, Carter is now fully on notice that this allegation is false and he should have withdrawn it prior to filing his Opposition, as discovery and the new declaration of Doe that *he submitted* to this Court flatly contradict any such notion. ECF No. 166-1. His request that the Court grant him leave to replead, yet again, to "incorporate the newly discovered facts set forth in Doe's declaration" (Opp. at 2 n.3) is, thus, ridiculous—Doe's declaration, if any, *confirms* the Defendants had probable cause during the pendency of the Underlying Action. ECF No. 166-1 ¶ 36 (confirming Doe signed a declaration on 12/8/24 affirming allegations against Carter).

[2] Further, as to the Curis Defendants, Carter fails to allege, even in conclusory fashion, that they specifically procured, knew of, or used any purportedly false statements.

Doe's claim was "blatantly contradicted by readily available records, witness accounts, and Doe's own later admissions." Opp. at 11 (citing TAC ¶¶ 96, 158)). Setting aside that these "readily available records" and "witness accounts" are not specified, Carter does not allege that the Defendants were actually aware of any of this evidence at the time they commenced the Underlying Action—indeed, Doe's "later admissions" were made after the Underlying Action was dismissed. *See* TAC ¶¶ 96, 158.[3] These allegations describe, at most, a failure to investigate every aspect of Doe's claim rather than the knowing pursuit of a false claim.

But, Carter's failure-to-investigate theory also fails as a matter of law. As reflected by the standard set out in *Levitin*, the relevant inquiry for probable cause is what facts the defendant was *actually aware of* to justify the prosecution of a claim, not whether there are other facts out there that may ultimately show the claim to be false. *Levitin*, 1994 WL 376078, at *4; *see also Mura v. Erie Cnty. Sheriff Dep't*, 2005 WL 615754, at *4 (W.D.N.Y. Mar. 16, 2005) (finding that, because probable cause does not require certainty that the prosecution will be successful, it is "of no consequence that a more thorough or more probing investigation might have cast doubt upon the situation"). Counsel—and particularly local counsel presented with pleadings prepared by lead counsel, supported by the client's sworn account—"is entitled to rely on the objectively reasonable representation of the client," *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329-30 (2d Cir. 1995), and need not assess the client's credibility or disbelieve the client because some evidence controverts her, *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 481 (S.D.N.Y. 2003).

---

[3] Carter's allegation that Defendants "attempted to mask the impossibility of their original allegations by removing any allegations of specific times" in Doe's amended complaint (Opp. at 11 (citing TAC ¶¶ 126-28)), likewise reflects, at most, the *subsequent identification* of information that *may* undermine Doe's claims. "[T[he question is not whether the evidence available to the defendant is susceptible to a different interpretation than the one defendant chooses to adopt" and a defendant "may act upon what appears to be true, even if it turns out to be false." *Levitin*, 1994 WL 376078, at *4.

Even if the law was otherwise, Carter does not even allege a deficient investigation. Carter's only factual bases for alleging Defendants did not sufficiently investigate Doe's claim are: (1) Defendants commenced the Underlying Action only six days after Doe retained AVA Law, leaving insufficient time for a thorough investigation; and (2) "[a] simple Google search or other investigation would have revealed" evidence rebutting Doe's claims. *See* TAC ¶¶ 102-103, 117-125. As to the first, Carter is mistaken, or intentionally misleading: while the Underlying Action was commenced on October 20, 2024, six days after Doe retained AVA Law, Carter's own filings in this action reflect that he was not named as a defendant—*i.e.*, he was not the subject of an allegedly malicious prosecution—until Doe filed her First Amended Complaint on December 8, 2024.[4] Thus, the Defendants, actually, had *almost two months* to investigate Doe's claims against Carter before they sued him. As to the second, the "public information" rebutting Doe's claims that Carter identifies is, for the most part, evidence that was only highlighted publicly after Doe's interview with NBC. *See* TAC ¶¶ 117-125. To state the obvious, an attorney need not anticipate and investigate every detail of a client's story that his adversary may quibble with, and a claim need not be unrebuttable for there to be probable cause. *See Levitin*, 1994 WL 376078, at *4.

Perhaps recognizing this axiom, Carter alternatively argues probable cause dissipated and Defendants should have dismissed the Underlying Action sooner than they did. Again, Carter points to nothing that the Defendants subsequently learned that would negate a reasonable belief in the veracity of Doe's allegations. He cites only to unverified hearsay evidence that, at most,

[4] Carter filed both Doe's original Complaint and First Amended Complaint as exhibits to his original complaint in this action. ECF No. 1-6 (original Complaint), 1-7 (First Amended Complaint). A comparison of the complaints' captions and sections listing the parties reveals that Carter was a *newly-added defendant* in the First Amended Complaint and was *not*, as Doe testifies, one of the "Doe" defendants in the original Complaint. *See* ECF No. 166-1 ¶ 14.

created a factual dispute as to tangential details of Doe's story. *See* TAC ¶¶ 117-125.[5] If this were enough to vitiate probable cause, most civil actions could not proceed past the discovery phase. Under New York law, "[t]he existence of probable cause is measured as of the time the prosecution was initiated and is based on facts known to or believed to be true by the [civil] defendant at that time." *Gilman v. Marsh & McLennan Cos., Inc.*, 868 F. Supp. 2d 118, 130 (S.D.N.Y. 2012). "The final outcome of an action is not the measure of whether the action had merit. The question of merit is whether there was probable cause to file and pursue the matter to conclusion." *Michael N. v. Montgomery Cnty. Dep't of Social Servs.*, 78 Misc. 3d 171, 245 (N.Y. Sup. Ct., Montgomery Cnty. 2022). Carter has alleged nothing to suggest the answer to this question is "no."

The cases Carter cites in support of his contention that he satisfied the probable cause element of his malicious prosecution claim are inapposite. In *Sparrow Fund Mgmt. v. MiMedx Grp., Inc.*, 2020 WL 1330283 (S.D.N.Y. Mar. 22, 2020), the underlying action was based entirely on defendant's inference that plaintiff was an anonymous blogger. *Id.* at *2-6. Here, by contrast, Defendants had a client with personal knowledge of her own alleged assault, who repeatedly affirmed under oath that Carter was her abuser. In *Colon v. City of N.Y.*, 60 N.Y.2d 78 (1983), the plaintiff's malicious prosecution claim was *dismissed because there was probable cause*. *Id.* at 78-83 (finding that investigative gaps did not defeat probable cause once the police had an objectively reasonable basis to believe the plaintiff was guilty). The "failure to make further inquiry" line cited by Carter is *dicta* describing a general principle relevant to a situation of inferential identification, not the basis for the actual result. *Id.* at 82. And *Klein v. Aicher*, 2020 WL 4194823 (S.D.N.Y. July 21, 2020) involved a request for Rule 11 sanctions where plaintiff

---

[5] Carter alleges no acts by the Curis Defendants continuing the prosecution; he alleges only that they "became aware" of certain admissions on February 28, 2025—*after* the Underlying Action was dismissed. TAC ¶ 164.

based his entire theory that the defendant accessed his medical records and leaked them on an inference drawn from a single phone call between opposing counsel, combined with the fact that the defendant's employer and the plaintiff's own hospital shared an electronic records system. *Id.* at *4-5. There, the court emphasized that the plaintiff could have exercised his statutory right under HIPAA to request a Patient Account Access Log that would have definitively shown who accessed his records, and that opposing counsel had explicitly told him about this avenue in writing before he filed suit. *Id.* at *11. This does not support Carter's apparent position that Defendants cannot rely on a direct, sworn accusation from a client with personal knowledge of an alleged assault. Finally, in *De la Rosa v. Schacht*, 244 A.D.3d 1570 (3d Dep't 2025), a malicious prosecution claim was found to exist where the defendant commenced a civil action based on an English-language statement and contract supposedly signed by the plaintiff, despite the fact that "even a cursory inquiry would have revealed that plaintiff could not speak or read English." *Id.* at 1573. Apparently, counsel never had any contact with her purported client and relied entirely on secondhand representations without ever verifying the client's identity, language ability, or actual assent. *Id.* The defendant even admitted that she had no contact with the plaintiff and did not witness him sign anything. *Id.* This is a far cry from the circumstances here.

Carter's own allegations and submissions in this action reflect that: (1) the Defendants were engaged to represent Doe to pursue sexual assault claims against Combs and others (TAC ¶¶ 79-80; ECF No. 1-6); (2) when the Defendants filed suit against Carter on December 8, 2024, Doe had executed affidavits affirming that Carter sexually assaulted her (TAC ¶¶ 27, 96; Meyers Decl., Ex. 1); and (3) Doe continued to maintain the veracity of her claim that Carter assaulted throughout and after she voluntarily dismissed the Underlying Action (TAC ¶¶ 29, 135-136). On this record, Defendants had probable cause and Carter has failed to allege any fact rebutting it.

### B. Carter Fails to Adequately Allege Malice

Carter's argument that the Defendants acted with malice in bringing the Underlying Action is, fatally, predicated on nothing more than conclusory allegations and impermissible conjecture. These types of malice allegations are insufficient to sustain a claim for malicious prosecution. *See Mondello v. Mondello*, 161 A.D.2d 690, 691 (2d Dep't 1990) ("the plaintiff's unsubstantiated and conclusory allegations of malice were insufficient to sustain his cause of action"); *Hornstein v. Wolf*, 109 A.D.2d 129, 133 (2d Dep't 1985) ("While the complaint alleged, in conclusory fashion, that defendants acted with malice, neither the pleadings nor the moving papers set forth the factual basis for such an allegation."). The determination of malice is fact-based. *See, e.g., Moore v. City of N.Y.*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002). Again, Carter fails to allege *facts* necessary to support this element of malicious prosecution.

With respect to the Buzbee Defendants, his approach is two-pronged: (1) the Buzbee Defendants allegedly "created a media spectacle to build up attention to the false claims" of child sexual abuse timed to inflict maximal reputational harm on Carter; and (2) "the existence of malice may also be inferred from the absence of probable cause." Opp. at 17-18. Both prongs fail.

Carter's contention that the Buzbee Defendants demonstrated malice by bringing Doe's claims to the attention of the media is insufficient to establish malice as a matter of law. New York courts presume publicizing a lawsuit serves a legitimate, as opposed to improper, purpose, so such conduct cannot support a finding of malice. *See Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) ("[m]ere warnings by a party of its intention to assert nonfrivolous claims, with predictions of those claims' likely public reception, are not improper"). Nor can Carter establish malice by relying on an alleged lack of probable cause. For all the reasons stated above, Carter has not adequately alleged the Buzbee Defendants lacked probable cause. Even if he had, a lack of probable cause is not dispositive of malice. *See Casler v. State*, 33 A.D.2d 305, 309 (4th Dep't

1970) (affirming dismissal of malicious prosecution claim where, notwithstanding the lack of probable cause, there was no showing of malice).

Carter's malice argument is even weaker—if not nonexistent—with respect to the Curis Defendants. The TAC attributes to the Curis Defendants no communication with Carter, no media statement, no settlement demand, and no financial stake in any recovery. Malice cannot be inferred from the absence of probable cause, for all the reasons already stated. And, because Carter withdrew his conspiracy claim, he may not impute any alleged motives of the Buzbee Defendants—which are insufficient for malice—to the Curis Defendants.

To argue he has adequately alleged malice, Carter relies on case law that is wholly unavailing. Carter cites *Sapienza v. Notaro*, 172 A.D.3d 1418 (2d Dep't 2019) for the proposition that malice may be established where a lawsuit is "initiated for the purpose of forcing a settlement that has no relation to the merits of the claim." Opp. at 17. However, the court's finding of malice in *Sapienza* rested on allegations that the defendants continued litigating claims that were barred by res judicata. *See Sapienza*, 172 A.D.3d at 1419. The defendants knew the claims had already been fully litigated and lost, and kept pursuing the lawsuit anyway with the specific, documented purpose of extorting a settlement from a plaintiff who had a complete legal defense available. *Id.* at 1419-20. The Underlying Action, by contrast, was based on a first-person accusation of sexual assault from a complainant who had not had her claims previously adjudicated on the merits.

### C. Carter Fails to Adequately Plead the Special Injury Element of His Malicious Prosecution Claim

Carter's argument that he adequately pleads special injury is predicated on alleged lost opportunities and reputational and emotional harm. Neither is sufficiently pleaded in the TAC, as Carter's allegations for both lack requisite specificity. *See Edmondson v. Raniere*, 751 F. Supp. 3d 136, 191 (E.D.N.Y. 2024) ("A plaintiff must . . . plead special damages with specificity." (internal

quotations and citations omitted)). Furthermore, New York law requires that "[s]pecial damages . . . entail some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit, and must amount to a specific and measurable loss." *Id.* at 191-92. Carter does not meet these requirements.

*1. Carter's Pleading of Lost Opportunity is Insufficient*

In his Opposition, Carter cites two lost business opportunities to support his claim of special damages: (1) the alleged loss of an $80 million business opportunity based on lost contracts in the sports and entertainment space; and (2) allegedly losing out on a $55 million personal credit line. Opp. at 19-20. Neither of these alleged losses are pleaded with the requisite particularity or causally linked to the Underlying Action. *See Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 294 (E.D.N.Y. 2014) ("To meet the special injury requirement, the injury must have resulted because of the [underlying litigation]." (internal quotations and citation omitted)); *see also id.* at 295 ("In order to meet the special injury element, a lost business claim must be specific and verifiable."). The TAC and Opposition only contend that "immediately after Buzbee and his co-conspirators went public with Doe's false allegations, Roc Nation and Carter lost contracts . . . that would have generated at least $20 million in revenue . . . while the full fee would have been $80 million had the contract been performed." TAC ¶¶ 170, 173; Opp. at 19. Nowhere does Carter specify the date he lost these contracts or identify any facts that show the Underlying Action was the cause of the loss. His reliance on the temporal proximity between the commencement of the Underlying Action and his allegedly lost business opportunity is insufficient, especially because Carter was not even named as a defendant when Doe's allegations initially "went public."

Similarly, neither the TAC nor Opposition elucidate the timing or circumstances under which Carter was denied a $55 million personal credit line. Even where a plaintiff identifies specific business losses, those losses must be causally linked to the underlying litigation rather

than to the defendant's own conduct generally or to independent market forces. *See Liberty Synergistics, Inc.*, 50 F. Supp. 3d at 294. Furthermore, the mere allegation that a plaintiff was denied a personal credit line after the commencement of the underlying litigation does not satisfy the standard for special injury under New York law. *See Diamond v. Strassberg*, 751 F. Supp. 1152, 1153 (S.D.N.Y. 1990) (dismissing malicious prosecution claim and finding that the plaintiff's allegation that he suffered a diminished credit rating after the commencement of the underlying action failed to satisfy the standard under New York law). Carter's alleged business losses do not satisfy the special injury element of his malicious prosecution claim.

*2. Carter's Pleading of Reputational and Emotional Harm is Insufficient to Constitute Special Injury*

It is well settled under New York law that neither emotional distress, including shame and humiliation, nor reputational harm are forms of special injury. *See Schinella v. Salem*, 2024 WL 643169, at *7 (S.D.N.Y. 2024); *see also Brown v. Brown*, 343 F. Supp. 2d 195, 198 (E.D.N.Y. 2004) (bare allegations of emotional distress, pain, and suffering are insufficient to satisfy the special injury requirement). Carter's allegation that he suffered a deterioration in his public image and overall humiliation are, thus, also inadequate to satisfy the special injury requirement for malicious prosecution. *See In re Nicholas*, 457 B.R. 202, 216 (Bankr. E.D.N.Y. 2011) (finding special injury requirement was not satisfied where the party only "asserts that the alleged malicious prosecution caused immense grief, worry, expense, injury health, and wasted time …" (internal quotations and citation omitted)).

Carter relies heavily on *Honzawa v. Honzawa*, 268 A.D.2d 327 (1st Dep't 2000) throughout his Opposition. That reliance is misplaced because *Honzawa* is fundamentally distinguishable from the allegations in this matter. In *Honzawa*, the First Department held that the elements of malicious prosecution had been satisfied because: (i) the "defendants initiated and continued the

underlying action" accusing the plaintiff of converting corporate funds, which was concluded in the plaintiff's favor; (ii) "malice [could be] inferred from the history of bitter relations between the parties[;]" and (iii) "special injury [could] be traced to the attachment of [the plaintiff]'s bank accounts, both [in New York] and Liechtenstein." *Id*. at 329. None of these facts apply to the instant matter. First, the Underlying Action was not decided on the merits.[6] Second, there is no history, documented or otherwise, of bitter relations between Carter and Defendants. Lastly, there was no attachment of Carter's bank accounts or other property in the Underlying Action.

Carter also misstates the Buzbee Defendants' application of *Engel v. CBS, Inc.*, 93 N.Y.2d 195 (1999). The Buzbee Defendants never argued that *Engel* stood for the proposition "that Carter must identify a court-imposed restraint." *Cf.* Opp. at 22. Rather, consistent with the holding of *Engel*, the Buzbee Defendants argued that "Carter fails to allege special injury, which requires *something in the nature of being subjected to a provisional remedy*," and that "[t]he standard [for special injury] is equivalent to those imposed by provisional remedies." ECF No. 158 ("Buzbee Motion") (emphasis added) at 10, 18. Carter's TAC comes nowhere near alleging any such injury.

## II. Carter Fails to State a Claim for Violation of New York Judiciary Law § 487

In his attempt to save his Section 487 claim, Carter proffers a tortured and unsustainable reading of the statute. In the first instance, Carter's preemption analysis is flawed. He repeatedly argues that the courts recognize a presumption against preemption. Opp. at 23, 26. However, after conducting a thorough preemption analysis, this Court concluded that New York Judiciary Law

---

[6] Although Carter alleges Doe's dismissal was "without any settlement," the TAC itself reflects this is, at least, disputed. *See* TAC ¶ 166. As set forth in the Buzbee Motion, the TAC cites to a declaration by Carter's former counsel, Alex Spiro, wherein he concedes there was an agreed exchange in connection with the dismissal of the Underlying Action. Buzbee Motion at 6 n.4 (citing Meyers Decl., Ex. 3 ¶ 10). It is well-settled under New York law that an action terminated by settlement cannot sustain a malicious prosecution claim. *See, e.g.*, *Robin v. Lutfy*, 25 Misc. 3d 1242(A), 2009 WL 4878425, at *8 (N.Y. Sup. Ct., N.Y. Cnty. Nov. 23, 2009).

§ 487 is preempted by both preemption and conflict preemption doctrines when applied to attorney conduct in federal court in *SGM Holdings LLC v. Andrews*, 743 F. Supp. 3d 545 (S.D.N.Y. 2024). Specifically, the Court held that Rule 11, 28 U.S.C. § 1927, and the inherent power of federal courts to sanction attorneys together constitute a pervasive framework of regulation that excludes New York from regulating—via tort law, procedural law, or otherwise—the conduct before federal courts of attorneys who are not admitted to the New York Bar and who have not practiced before the New York state courts. *Id*. at 566, 582.

With respect to the conflict preemption analysis, *SGM Holdings*, citing to the Supreme Court's decision in *Haeger*, found that the punitive nature of Section 487's treble damages provision conflicts with federal law because fee awards "'under a court's inherent sanctioning authority have to be compensatory rather than punitive when civil litigation procedures are used.'" *Id*. at 569 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 111 (2017)). In *Haeger*, the Supreme Court held "the fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's behavior." *Id*. at 108. This conflict makes clear that the statutory intent underlying Section 487 was that it would apply exclusively to attorney conduct in state court proceedings.

In *Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 664 (S.D.N.Y. 2025), the Court adopted the holding of *SGM Holdings*, finding that "because application of Judiciary Law § 487 creates the potential for conflict with the already robust regulatory regime that governs attorney conduct in federal court, the most reasonable interpretation of Judiciary Law § 487 is that it applies only to state court proceedings." Carter's argument that "*Delaney* effectively found preemption without conducting the necessary analysis or addressing the presumption against it" omits that *Delaney*

effectively adopted the comprehensive preemption analysis set forth in *SGM Holdings*. *See Delaney*, 761 F. Supp. 3d at 668 n.18.

Because Section 487 does not apply to the Defendants' conduct in the Underlying Action, the Court can dismiss this claim without reaching the adequacy of Carter's pleadings. However, Carter has also failed to adequately plead his claim. In his Opposition, Carter does not dispute that he did not suffer any cognizable harm from Buzbee's violation of pro hac requirements or the allegedly fabricated death threat, arguing only that "these episode further establish a pattern of egregious conduct and deliberate deception." Opp. at 29. Carter tries to turn the tables, claiming "Defendants do not dispute that Buzbee's use of Fortney to induce Doe to dismiss the Underlying Action through a fabricated death threat from Carter satisfies their own demanding conception of Section 487." *Id.* at 30. But, that is not so: Defendants expressly argued that these allegations cannot sustain Carter's Section 487 claim. *See* Buzbee Motion at 23-24.

Further, Carter declaring conduct "egregious" and "deceitful" does not make it so. What he actually alleges and the fair inferences drawn therefrom do not establish the requisite intent to deceive. Again, Carter has not alleged any *facts* to support his conclusory assertion that the Defendants manufactured and filed knowingly false claims against him. Carter leans on Doe's supposed admissions to investigators that ambushed her at her home; but the transcript of her statements, which is incorporated by reference into the TAC, reveals no admissions supporting Carter's conclusory allegations that the Buzbee Defendants pushed Doe into making false allegations against Carter. Opp. at 30-31; Buzbee Motion at 6-8 (citing Meyers Decl., Ex. 4). Carter also cites to amendments made to Doe's complaint to make it more vague and "mask temporal inconsistencies in Doe's story" as supporting "an inference of awareness and concealment." Opp. at 31. This does not follow: amending a pleadings to align with newly-

elucidated facts to address mere "inconsistencies" in a story does not raise a reasonable inference of deceitful intent. Finally, Carter returns to Buzbee's alleged failure to seek pro hac vice admission. Opp. at 33. Glossing over the fact that Buzbee's admission status is no secret, Carter focuses on a judicial finding regarding Buzbee's failure to abide by attorney admissions requirements in a separate action, after the Underlying Action was dismissed. *Id.* (citing TAC ¶ 89). How this reflects deceitful conduct and intent months earlier is a logical leap Carter fails to explain—because he cannot.

Notably, none of these "supporting factual allegations" pertain to the Curis Defendants. There are no facts pleaded to support Carter's speculation that the Curis Defendants knew Doe's allegations were false; and, Carter's theory that the Curis Defendants should have known, again, describes negligence rather than deceit. Further, his Rule 11 "certification" theory fails because, by his own account, Buzbee—not Curis—signed the pleadings. TAC ¶ 182(d). To accept this theory would convert every alleged Rule 11 violation by local counsel into a treble-damages claim—a result *Delaney* found incompatible with the federal sanctions scheme. The sole case Carter can cite for this position does not hold that a conclusory allegation of knowledge is enough to get past a motion to dismiss. *See Betz v. Blatt*, 160 A.D.3d 696, 697-98 (2d Dep't 2018). And *Guliyev v. Banilov & Assocs., P.C.*, 221 A.D.3d 589, 591 (2d Dep't 2023), which plaintiff distinguishes only on collateral-estoppel grounds, independently held that allegations that defendants "hid true facts" were "conclusory and factually insufficient"—exactly the defect here.

Indeed, when the TAC is stripped of conclusions and group pleading, it alleges only that the Curis Defendants performed routine local-counsel functions, which is not tortious. Tellingly, Carter's description of what the Curis Defendants actually did is reduced to a footnote and it is not until page 32 of his 33-page Opposition that Carter bothers provide a single-paragraph response to

the Curis Defendants' motion. Opp. at 11 n.5, 32. Looking beyond Carter's incredible claim of "extensive allegations" concerning Curis' role, Carter can cite to only a handful of conclusory or entirely innocuous allegations. *See id. First*, filing papers through an admitted attorney (*id.* at 11 n.5) is precisely what local counsel does, and the TAC does not allege any deceit on the part of Curis in this regard. *Second*, the allegation that Curis knowingly filed false allegations is a conclusory assertion unsupported by a single fact that need not be credited and, ironically, is inconsistent with the allegation that Curis "never even met Doe." *Id.* (citing TAC ¶ 92).[7] *Third*, Carter's allegation that the Curis Defendants performed no vetting of Doe's claims (*id.* (citing TAC ¶¶ 36-37, 92)) are, fatally, pleaded "on information and belief" without any facts upon which the belief is founded. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("Because the *Twombly* complaint's factual allegations described only actions that were parallel, and were doctrinally consistent with lawful conduct, the conclusory allegation on information and belief that the observed conduct was the product of an unlawful agreement was insufficient to make the claim plausible."). Even accepted as true, a failure to vet is negligence, not knowledge or intent. *Finally*, the allegation that Curis was ordered to show cause for "false" statements (Opp. at 11 n.5 (citing TAC ¶¶ 89-91)) refers to an order entered on March 28, 2025, in a different case, post-dating the dismissal of the Underlying Action. It, thus, says nothing about what Curis, or any Defendant for that matter, knew about any party to the Underlying Action or intended in October and December 2024. Carter's focus on Curis' statement that she "reviewed all document in this case" (TAC ¶ 90) also refers to a different case, and does not suggest she knew any of Doe's pleadings to be false.

The Defendants' Motions to dismiss should be granted in their entirety.

[7] Carter does not, for instance, allege Curis drafted pleadings, interviewed Doe, spoke with witnesses, participated in a demand letter or any media appearances, or communicated with anyone other than the Buzbee Defendants.

Dated: October 19, 2026

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

By: /s/ Jessica N. Meyers

Jessica N. Meyers
Stephanie P. Calnan (*admitted PHV*)
Matthew Tharp
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone: 212.653.8700
jmeyers@sheppard.com
scalnan@sheppard.com
mtharp@sheppard.com

Camille M. Vasquez (*admitted PHV*)
Samuel A. Moniz (*admitted PHV*)
J. Randall Boyer (*admitted PHV*)
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone: 714.513.5100
cvasquez@sheppard.com
smoniz@sheppard.com
jboyer@sheppard.com

*Attorneys for Defendants Anthony Buzbee, David Fortney, and Anthony G. Buzbee LP (d/b/a The Buzbee Law Firm)*

**MORRISON MAHONEY LLP**

By: /s/ Christopher P. Keenoy

Christopher P. Keenoy
Brian Heermance
Wall Street Plaza
88 Pine Street, Suite 1900
New York, New York 1005
Telephone: 212.825.1212
ckeenoy@morrisonmahoney.com
bheermance@morrisonmahoney.com

*Attorneys for Defendants Antigone Curis and Curis Law, PLLC*

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Individual Rules and Practices in Civil Cases for The Honorable Dale E. Ho, the undersigned counsel certifies that the foregoing complies with the page limitation of the Individual Rules, as modified by the Honorable Dale E. Ho's Order, dated October 15, 2026 [ECF No. 184], because it contains 16 pages, excluding the caption, table of contents, table of authorities, signature block, and this certificate..

Dated: October 19, 2026

*/s/ Jessica N. Meyers*
Jessica N. Meyers